UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DERRICK WILSON,

                                        Plaintiff,

                                                              5:20-CV-1489
v.                                                            (DNH/TWD)

COUNTY OF ONONDAGA, et al.,

                                        Defendants.

_____

APPEARANCES:

DERRICK WILSON
Plaintiff, *pro se*
21481-052
Yazoo City Medium
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 5000
Yazoo City, MS 39194

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**REPORT-RECOMMENDATION AND ORDER**

## I.    INTRODUCTION

Derrick Wilson ("Plaintiff") initiated this action *pro se* on December 4, 2020, asserting

claims under 42 U.S.C. § 1983 against various law enforcement officials, prosecutors, and

forensic analysts alleging that all defendants engaged in a seventeen-year-long conspiracy to

fabricate evidence and frame him for murder.  (Dkt. No. 1.[1])  On April 21, 2021, Plaintiff's

---

[1]  Plaintiff's original complaint names the following defendants: County of Onondaga; City of
Syracuse; Onondaga County District Attorney William J. Fitzpatrick; former Onondaga County
Assistant District Attorneys Stephen Dougherty, Matthew Doran, and Michael Ferrante;
Assistant United States Attorney Carla Freedman; current and former members of the City of
Syracuse Police Department David Proud, Christopher Lundborg, John Nolan, Daniel Babbage,

application to proceed *in forma pauperis* was granted.  (Dkt. No. 10.)  This Court proceeded to

consider the sufficiency of the allegations set forth in the complaint under 28 U.S.C. § 1915(e)

and 28 U.S.C. § 1915A.  On April 21, 2021, this Court recommended that certain of Plaintiff's

claims be dismissed with prejudice based on absolute prosecutorial immunity, certain of the

claims survive the Court's initial review and require a response, and that the complaint otherwise

be dismissed without prejudice and with leave to amend.  (Dkt. No. 10, the "April 2021 R&R".)

Plaintiff filed objections.  (Dkt. No. 11.)

On December 16, 2021, the Hon. David N. Hurd, U.S. District Court Judge, accepted the

April 2021 R&R and ordered that Plaintiff's complaint be dismissed in its entirety against

defendants Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman; Plaintiff's § 1983

fabrication-of-evidence claim against defendants Proud, Lundborg, Nolan, Babbage, Collins,

Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso, and Kurimsky in their individual

capacities survived initial review and required a response; and otherwise dismissed the complaint

without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e) and § 1915A for

failure to state a claim upon which relief may be granted.  (Dkt. No. 15, the "December 2021

Order".)

On January 31, 2022, Plaintiff filed an amended complaint reasserting the same claims

against the same defendants, including the prosecutors, as set forth in footnote 1 herein.  (Dkt.

No. 25.)  The factual allegations in the amended complaint are virtually identical to the original

complaint.  (*Compare* Dkt. No. 25 *with* Dkt. No. 1.)  Like the original complaint, the amended

---

Randy Collins, Timothy Galineu, Mary Ellen Gossin, William Kittel, Don Hilton, and James
Quatrone; Onondaga County's Wallie Howard Jr., Center for Forensic Science ("CFS") Interim
Director Kathleen Corrado, CFS Firearms Analyst Justine Kreso and CFS Forensic Analyst
Matthew Kurimsky; and independent firearms analyst Joseph Cominolli.  (Dkt. No. 1 at ¶¶ 8-33.)

complaint alleges all defendants conspired to fabricate evidence to frame Plaintiff for murder. (Dkt. No. 25 at ¶¶ 116-131.)  Plaintiff reasserts municipal liability claims against the City of Syracuse and County of Onondaga.  *Id*. at ¶¶ 132-155.  The amended complaint also adds a new "supervisory liability" claim.  *Id*. at ¶¶ 156-164.

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

Having previously found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the amended complaint.  28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government).

When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous.  *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  "A claim is

based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.    DISCUSSION

As noted, Plaintiff's amended complaint, like his original complaint, alleges that the law enforcement officials, prosecutors, and forensic analysts engaged in a seventeen-year-long conspiracy to fabricate evidence and frame him for murder.  (Dkt. No. 25 at ¶¶ 1-5.)  Plaintiff purports to sue the prosecutors "only" during the "investigative and administrative phase" and excluding the "advocacy phase."  *Id*. at ¶¶ 10-14.  The amended complaint list five causes of action: (1) evidence manufacturing claim against all defendants, *id*. at ¶¶ 116-124; (2) conspiracy claim against all defendants, *id*. at ¶¶ 125-131; (3) *Monell* claim against the City of Syracuse, *id*. at ¶¶ 132-142; (4) *Monell* claim against the County of Onondaga, *id*. at ¶¶ 143-155; and (5) "supervisory liability" claims against Fitzpatrick, Proud, and Corrado, *id*. at ¶¶ 156-164.

### A.    Prosecutorial Immunity

The original complaint was dismissed in its entirety against Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman.  (Dkt. No. 15 at 2.)  Plaintiff was not granted leave to amend his § 1983 claims against the prosecutors.  *See id*. at 3.

Insofar as Plaintiff reasserts § 1983 claims against Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman in their individual capacities, the Court recommends dismissing the amended complaint for the same reasons set forth in the April 2021 R&R.  (Dkt. No. 10 at 12-15.[2])  To that end, prosecutors are immune from civil suit for damages in their individual

---

[2]  As set forth in the April 2021 R&R, Freedman is an official of the federal government and, as such, is not deemed a person acting under color of state law pursuant to § 1983.  (Dkt. No. 10 at 15-16.)  For the same reasons discussed in the April 2021 R&R and herein, Freedman is entitled to absolute prosecutorial immunity with respect to the claims in this action.  *See Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (noting that absolute prosecutorial immunity protects federal prosecutors facing *Bivens* actions).  Further *Bivens* claims are available only against federal government officers in their individual capacities.  The federal government itself and its agencies are immune from suit absent a waiver of sovereign immunity, and the Supreme Court

capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citation omitted).  In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273.  This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)).  Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431

---

has specifically declined to waive such immunity to allow a claim against a federal agency under *Bivens*.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 486 (1994).

n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also see also Verbeek v. Teller*, 158 F. Supp. 2d 267, 282 (E.D.N.Y. 2001) (granting motion to dismiss claims against prosecutorial official because conspiracy allegation does not "negate her entitlement to absolute immunity") (citing *Dory*, 25 F.3d at 83).

Here, Plaintiff's claims against Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman emanate from their alleged conduct in prosecuting Plaintiff for the 2000 homicide of Waliek Hamer, including interacting with potential witnesses in the case, discussing reduced sentences for witnesses and offering agreements, convening a grand jury, and presenting evidence to a grand jury. (*See, e.g.*, Dkt. No. 24 at ¶¶ 59-66, 72, 79, 86-88.) Because each of these functions is quintessentially prosecutorial in nature and was performed in connection with their roles as prosecutors, the Court again recommends finding that the prosecutors are entitled to absolute immunity from suit notwithstanding Plaintiff's labeling of such activity as "investigative and administrative in nature."[3] *See id.* at ¶¶ 10-14.

Moreover, the Eleventh Amendment protects states against suits brought in federal court. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. *See Woods v. Rondout Valley Cent. School Dist. Bd. of*

---

[3] Investigatory functions have been found to include such things as involvement by a prosecutor in "[i]nvestigation, arrest, and detention [that] have historically and by precedent been regarded as the work of police, not prosecutors . . . ." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 495, 502 (2d Cir. 2004); *see, e.g.*, *Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 385 (W.D.N.Y. 2012) (listing activities such as orchestrating a sting operation, authorizing wiretaps, and assisting in the execution of a warrant as investigative or administrative that do not deserve absolute prosecutorial immunity).

*Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").  As discussed in the April 2021 R&R, a district attorney or assistant district attorney is acting as a state official when he or she acts as a prosecutor.  *See D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity.").  Similarly, "because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived." *Coon v. Trustco Bank Corp.*, No. 07-CV-1115, 2007 WL 4118938, at *2 (N.D.N.Y. Nov. 16, 2007) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484–86 (1994)).  Thus, insofar as Plaintiff purports to sue Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman in their official capacities, such claims also fail.

Therefore, the Court recommends dismissing the amended complaint in its entirety with prejudice against Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) under the doctrines of prosecutorial, Eleventh Amendment, and sovereign immunity, and as frivolous.  *See also Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011) (claims dismissed for prosecutorial immunity are frivolous under the *in forma pauperis* statute).

## B.     Fabrication-of-Evidence

In the amended pleading, Plaintiff reasserts his § 1983 fabrication-of-evidence claim against defendants Proud, Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton,

Quatrone, Corrado, Kreso, and Kurimsky in their individual and official capacities.  (Dkt. No. 25 at ¶¶ 15-27, 116-124.)  The law related to a fabrication-of-evidence claim was discussed in the April 2021 R&R and will not be restated herein.  (*See* Dkt. No. 10 at 16-17.)  Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that Plaintiff's § 1983 fabrication-of-evidence claim against defendants Proud, Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso, and Kurimsky in their individual capacities is sufficiently plead and requires a response.  The Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

A different conclusion is reached, however, with respect to Plaintiff's § 1983 fabrication-of-evidence claim against these defendants in their "official capacity" as current or former employees of the Syracuse Police Department or CFS.  As discussed in the April 2021 R&R, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."  *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)).  Accordingly, the Court recommends dismissing Plaintiff's § 1983 fabrication-of-evidence claim against these defendants in their "official capacity" as redundant and duplicative of any claim asserted against the City of Syracuse and/or the County of Onondaga, which the Court addresses below.

## C.    Conspiracy

Plaintiff was granted leave to replead his conspiracy claim.  (Dkt. No. 15 at 2.)  A conspiracy claim under § 1983 must allege that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal.  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25

(2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy, like the ones offered in Plaintiff's amended complaint, do not suffice. *Ciambriello*, 292 F.3d at 325; *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sept. 23, 2008) (quoting *Twombly*, 550 U.S. at 555). Here, Plaintiff claims are impermissibly vague and conclusory to plausibly suggest a conspiracy. (*See, e.g.*, Dkt. No. 25 at ¶¶ 56 (Quatrone, Proud, and unknown members of the SPD "agreed to bribe" Witness Doe #1 into falsely implicating Plaintiff for the Hamer homicide), 59 (Quatrone, Proud, and Dougherty "met and agreed to bribe" Witness Doe 1), 79 (Proud, Freedman, Doran, Ferrante, Fitzpatrick, Nola, Galineu, Gossin, and Kittle "met and agreed to bribe" Jamal Harris into falsely implication Plaintiff in the Hamer homicide), 90 (Freedman, Doran, Ferrante, Proud, Galineu, Babbage, Gossin, Kittel, Collins "agreed to falsely identify a photograph of a 9mm Lorcin . . . as the weapon Plaintiff used to murder Hamer"), 93 (Freedman, Doran, Ferrante, Hilton, Collis, Corrado, Kreso, and Kurimsky "agreed to falsify ballistic reports and ballistic evidence"); 114 (Cominolli, an independent forensic analyst in private practice "communicated and agreed with Quatrone to not conduct the court ordered microscopic analysis and comparison").

Accordingly, the Court recommends that Plaintiff's conspiracy claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### D.    State Action

As set forth in the April 2021 R&R, § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted).  A plaintiff, however, can establish that a private actor was acting under color of state law by proving either: "(1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor." *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013).

"To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quotation marks and citation omitted)).  Alternatively, as set forth above, to show that there was a conspiracy between a private actor and the state or its agents, a plaintiff must provide evidence of "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25 (2d Cir. 2002).  These two methods of demonstrating state action – "joint action" and "conspiracy with" – are "intertwined" and overlap in significant respects. *Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) (quotation marks and citation omitted).

Here, Plaintiff reasserts in wholly conclusory fashion that Cominolli, an independent forensic analyst, conspired with Quatrone to prevent Plaintiff from conducting his own microscopic ballistic analysis and comparison.  (Dkt. No. 25 at ¶¶ 28, 110-115.)  Plaintiff has not alleged any facts from which the Court could reasonably construe a plausible § 1983 conspiracy

or joint actor claim.  Therefore, the Court recommends dismissing Plaintiff's § 1983 claims

against Cominolli pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim upon which relief may be granted.

### E.   Municipal Liability

Plaintiff was granted leave to replead municipal liability claims against the City of

Syracuse and County of Onondaga.  (Dkt. No. 15 at 3.)  Upon review, Plaintiff's amended

complaint fails to allege facts meeting the standard for establishing municipality liability as laid

out in *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead

and prove that a deprivation of his constitutional rights "was caused by a governmental custom,

policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012)

(citing *Monell*, 436 U.S. at 690-91); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d

Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order

to show that the municipality took some action that caused his injuries beyond merely employing

the misbehaving officer.  Second, the plaintiff must establish a causal connection–an 'affirmative

link'–between the policy and the deprivation of his constitutional rights.") (citing *City of

Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985)).  Indeed, municipalities may only be held

liable when the municipality itself deprives an individual of a constitutional right; it "may not be

held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

An "official policy or custom" can be shown in several ways: "(1) a formal policy

officially endorsed by the municipality; (2) actions taken by government officials responsible for

establishing municipal policies related to the particular deprivation in question; (3) a practice so

consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive

knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (internal citations omitted). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

### 1.    City of Syracuse

Plaintiff fails to identify or plausibly allege any facts showing the existence of an official policy or custom of the City of Syracuse that resulted in the deprivation of his constitutional rights.  The amended complaint states that the City of Syracuse maintains:

> a policy, practice or custom of conducting constitutionally inadequate investigations and fabricating police reports; fabricating inculpatory evidence, including coercement (sic) of witnesses to fabricate and change their testimony; falsification of ballistic evidence and laboratory reports; obstructing criminal defendants ability to mount a defense; perpetuating perjury by knowingly providing false testimony in both the grand jury and/or criminal trial setting; failing to obtain probable cause to ensure that suspects would not be falsely arrested; suppressing from prosecutors material information favorable to criminal defendants; an failing to follow the duties imposed by *Brady v. Maryland*.

(Dkt. No. 25 at ¶ 133.)  Plaintiff alleges the City of Syracuse "systemically failed to adequately train its police officers and investigators to conduct constitutionally adequate investigations . . . ."  *Id*. at ¶ 134.  He claims the City of Syracuse "failed to adequately supervise its police officers, detectives and investigators to ensure that they're conducting constitutionally adequate investigations . . . ."  *Id*. at ¶ 135.  Plaintiff also contends the City of Syracuse failed to

adequately discipline their police officers, detectives and investigators . . . ."  *Id*. at ¶ 136.  He

maintains the City of Syracuse had "actual or constructive notice" of the foregoing and that the

City's failure to train, supervise, and discipline, along with its custom, practices, and policies,

"amounted to deliberate indifference to the constitutional rights of criminal defendants like

Plaintiff, and were the moving force behind the false and fabricated evidence that defendants

relied upon in causing his arrest and prosecution as well as all the ongoing injuries and damages"

as set forth in the amended complaint.  *Id*. at ¶¶ 137-38 (capitalization omitted).

However, "*Monell* does not provide a separate cause of action for the failure by the

government to train its employees; it *extends* liability to a municipal organization where that

organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.

2006) (emphasis in original).

Here, Plaintiff's conclusory allegations that the City of Syracuse failed to properly hire,

supervise, and train subordinates, "without supporting factual allegations of, among other things,

a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim

against those municipalities that is plausible on its face."  *Gray-Davis v. New York*, No. 5:14-

CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015); *see Hawthorne v.*

*City of Albany*, No. 17-CV-0716 (GTS), 2017 WL 6520774, at *5 (N.D.N.Y. Nov. 14, 2017)

(same).  Plaintiff has not alleged any nonconclusory facts about the City of Syracuse.  *See Zahra*,

48 F.3d at 685 ("[T]he mere assertion . . . that a municipality has such a custom or policy is

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such

an inference.") (second alteration in original) (internal quotation marks omitted); *Turczyn ex rel.*

*McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *6 (N.D.N.Y. Nov. 26,

2014) (municipal liability insufficiently pleaded where complaint used label "deliberate indifference" and generically referenced failure to train, but did not "allege facts that support either conclusory notion"); *Guerrero v. City of N.Y.*, No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do not rise to the level of plausibility required to state a viable *Monell* claim.") (internal quotation marks omitted); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency, and contained only legal conclusions and boilerplate), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).

Therefore, the Court recommends that the amended complaint be dismissed against the City of Syracuse for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard[.]"); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality"); *Irvine v. City of Syracuse*, No. 14-CV-1565 (TJM), 2015 WL 2401722, at *6-7 (N.D.N.Y. May 19, 2015) (dismissing *Monell* claim pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim); *Santagata v. City of New York*, No. 17-CV-3053, 2017 WL 2963453, at *2 (E.D.N.Y. July 11, 2017) (same).

### 2.    County of Onondaga

Similarly, Plaintiff seeks to hold the County of Onondaga liable for failing to supervise or discipline its employees. (Dkt. No. 25 at ¶¶ 143-155.) Specifically, Plaintiff claims Fitzpatrick,

acting on behalf of Onondaga County, had "actual and constructive' knowledge that Dougherty,

Doran, and Ferrante "had regular meetings" to "review facts relating to their investigations,"

"authorize prosecutions", and "to discuss the status and progress of cases brought by that office."

*Id*. at ¶ 144.  Plaintiff claims Fitzpatrick "knowingly relied and acted upon fabricated and

coerced testimony and evidence while investigating" Plaintiff.  *Id*. at ¶ 145.  He further alleges

the County of Onondaga displayed "deliberate indifference to their obligation to properly

instruct, train, supervise and discipline their employees" including Dougherty, Doran, and

Ferrante and "other ADAs" involved in the prosecution of Plaintiff.  *Id*. at ¶ 146.  Plaintiff claims

the "unlawful policies, procedures, regulations, practices and/or customs (including the failure to

properly instruct, train, supervise, and/or discipline employees with regard thereto) were

implemented or tolerated by policymaking officials for defendant County of Onondaga,

including but not limited to, DA Fitzpatrick . . . ."  *Id*. at ¶ 147 (capitalization omitted).  Plaintiff

further alleges that the County of Onondaga's

> failures to train, supervise, and discipline . . . amounted to
> deliberate indifference to the constitutional rights of criminal
> defendants like Plaintiff and were the moving force behind the
> coercement (sic) of witnesses to fabricate and change their
> testimony, falsification of ballistic evidence and laboratory reports;
> perpetuation of perjury by knowingly relying upon false testimony
> throughout the investigation and prosecution, and withholding
> exculpatory evidence.

*Id*. at ¶ 151.

Initially, for the same reasons discussed above, Plaintiff's conclusory allegations that the

County of Onondaga failed to properly hire, supervise, and train "without supporting factual

allegations of, among other things, a policy or custom pursuant to which the alleged action was

undertaken, fails to state a claim against those municipalities that is plausible on its face."  *Gray-*

*Davis*, 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015).  Additionally, as previously discussed,

where, as in this case, the district attorneys are acting in a quasi-judicial capacity, they represent

the State, not the County.  *Hasan v. Onondaga Cty.*, No. 5:18-CV-806 (GLS/ATB), 2018 WL

4055296, at *9 (N.D.N.Y. Aug. 2, 2018) (citing, *inter alia*, *Baez v. Hennessy*, 853 F.2d 73, 77

(2d Cir. 1988)).  It is only where claims center on the administration or management of the

district attorney's office that a district attorney may be found to have acted as a "policy maker"

for purposes of § 1983 liability.  *Id.* at *9 n.14 (citing *Ying Jing Gan*, 996 F.2d at 536); *see also*

*Miller v. Cty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) ("In this Circuit, a county

may be liable pursuant to § 1983 for the actions of the district attorney in limited

circumstances.") (internal citation and quotation marks omitted); *Walker v. City of New York*,

974 F.2d 293, 301 (2d Cir. 1992) ("Where a district attorney acts as the manager of the district

attorney's office, the district attorney acts as a county policymaker.").  In this case, however,

Plaintiff takes issues with the district attorney's decisions regarding the prosecution of Plaintiff's

criminal case and, therefore, the district attorney is not an Onondaga County policy maker.

Even if *Monell* liability potentially could extend to the County of Onondaga based on

Fitzpatrick's role as a policymaker and his failure to train, supervise, or discipline assistant

district attorneys, Plaintiff has not plausibly alleged a municipal policy or custom sufficient to

state a claim.  *See Vann v. City of Rochester*, No. 6:18-CV-06464, 2019 WL 2646616, at *7

(W.D.N.Y. June 27, 2019) (dismissing municipal liability against the County of Monroe for

failure to state a claim based on the district attorney's failure to train, supervise, or discipline

prosecutors for violating defendants' constitutional rights).  Like his *Monell* claim against the

City of Syracuse, other than conclusory references to "unlawful policies, procedures, regulations,

practices and/or customs", (Dkt. No. 25 at ¶ 147), Plaintiff fails to identify any policy, practice or

custom adopted by the County of Onondaga.  *See id*. at ¶¶ 143-155.  In short, the amended

complaint fails to state a *Monell* claim against the County of Onondaga. Plaintiff has not

identified any specific municipal policy or custom that caused his injuries or provided any

allegations supporting a plausible inference of a pattern and practice through a failure to train or

supervise. Moreover, "conclusory allegations that a municipality failed to train and supervise its

employees" are insufficient to state a *Monell* claim absent supporting factual allegations. *Davis*

*v. City of New York*, No. 07 Civ. 1395, 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008).

Therefore, the Court recommends that Plaintiff's *Monell* claim against the County of

Onondaga be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state

a claim upon which relief may be granted.

### F.    Supervisory Liability

In the amended complaint, Plaintiff has added a "supervisory liability" claim against

Fitzpatrick, Proud, and Corrado. (Dkt. No. 25 at ¶¶ 156-164.) Liberally construed, Plaintiff

alleges that Fitzpatrick, Proud, and Corrado, with oversight responsibility for training, hiring,

screening, instruction, supervision, and discipline of the Onondaga County District's Attorney's

Office, Syracuse Police Department, and CFS, respectively, were "personally involved in both

the depravation of Plaintiff's constitutional rights and in creating or condoning the policy or

custom of failing to take preventative and remedial measures to guard against such constitutional

deprivations." *Id*. at ¶¶ 157-158. Plaintiff further claims Fitzpatrick, Proud, and Corrado were

"reckless in their failure to supervise their respective subordinates" and failed to "train, supervise

and discipline" their subordinates. *Id*. at ¶¶ 159-60.

However, Plaintiff's "supervisory liability" claim is not viable following the Second

Circuit's decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). In *Tangreti*, the

Second Circuit clarified how the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662

(2009) affected the five factors for assessing a defendant's personal involvement, which were previously set forth in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). The Second Circuit found the *Colon* factors are no longer all viable and articulated the proper standard for the courts in this Circuit to utilize when determining personal involvement or supervisory liability: "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id*.

"'[A]fter *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges.'" *Tangreti*, 983 F.3d at 618 (alterations in original) (citations omitted). The supervisor must have committed the violation himself or herself, not by the supervision of others who committed the violation. *See id*. Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *See id*.

Here, Plaintiff's conclusory allegations of negligent and/or reckless supervision of subordinates and/or failure to train fail to state a claim that these defendants violated Plaintiff's constitutional rights by their own conduct. *Tangreti*, 983 F.3d at 619. Accordingly, the Court recommends dismissing Plaintiff's "supervisory liability" claim for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

### G.    Doe Defendants

Plaintiff also names "Does 1 through 100" as defendants.  (Dkt. No. 25 at ¶ 31.)

However, there are no allegations against any Doe defendant in the body of the amended

complaint.  In the absence of factual allegations sufficient to plausibly suggest that these

unidentified defendants were personally involved in conduct that violated Plaintiff's

constitutional rights, the amended complaint fails to state a cognizable claim against them.  *See*

*Cipriani v. Buffardi*, No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20,

2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the

complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also*

*Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing

complaint since the plaintiff had not adequately pled the defendant's personal involvement in

any of the constitutional deprivations alleged in the amended complaint).

Accordingly, the Court recommends dismissing the amended complaint against Does 1-

100 without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and

1915A(b).

### IV.    CONCLUSION

For the foregoing reasons, this Court recommends that Plaintiff's amended complaint be

dismissed in its entirety with prejudice against Fitzpatrick, Dougherty, Doran, Ferrante, and

Freedman pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  The Court further

recommends that only Plaintiff's § 1983 fabrication-of-evidence claim against defendants Proud,

Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso,

and Kurimsky in their individual capacities survives initial review and requires a response, and

that the amended complaint otherwise be dismissed without further leave to amend pursuant to

28 U.S.C. § 1915(e) and § 1915A for failure to state a claim upon which relief may be granted. *See Abascal v. Hilton*, No. 04-CV-1401 (GTS/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x 388 (2d Cir. 2009); *accord Diaz v. Henley*, No. 9:19-CV-1611 (GLS/DJS), 2020 WL 1849454 (N.D.N.Y. Apr. 13, 2020); *Bivona v. McLean*, No. 9:19-CV-0303 (MAD/TWD), 2019 WL 2250553, at *6 (N.D.N.Y. May 24, 2019) (denying further leave to amend where the plaintiff has already been afforded an opportunity to amend his complaint and was specifically advised of the deficiencies in his original complaint). Lastly, this Court recommends that the following defendants be terminated from this action: County of Onondaga, City of Syracuse, Joseph Cominolli, and Does 1-100.[4]

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** against defendants Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman; and it is further

**RECOMMENDED** that Plaintiff's § 1983 fabrication-of-evidence claim against defendants Proud, Lundborg, Nolan, Babbage, Collins, Galineu, Gossin, Kittel, Hilton, Quatrone, Corrado, Kreso, and Kurimsky in their individual capacities **SURVIVES** initial review and requires a response; and it is further

---

[4] On December 16, 2021, Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman were terminated as defendants from this action. (Dkt. No. 16.)

**RECOMMENDED** that Plaintiff's amended complaint be otherwise **DISMISSED WITHOUT FURTHER LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e) and § 1915A for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the following defendants be **TERMINATED** from this action: County of Onondaga, City of Syracuse, Joseph Cominolli, and Does 1-100;[5] and it if further

**RECOMMENDED** that a response to the amended complaint be filed by the remaining defendants, or his/her counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

---

[5] On December 16, 2021, Fitzpatrick, Dougherty, Doran, Ferrante, and Freedman were terminated as defendants from this action. (Dkt. No. 16.)

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: April 21, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. [*]

[*]    Judge John G. Koeltl of the United States District
Court for the Southern District of New York, sitting
by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing
him to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns,*
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal,* 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro,* 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee,* 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

2021 WL 4472667

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### *MEMORANDUM OPINION & ORDER*

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the City of New York, former New York County Assistant District Attorney Dustin Chao, and eight members of the New York City Police Department ("NYPD") under 42 U.S.C. § 1983 and state law. Moye claims that Chao is liable for damages under Section 1983 and state law for malicious prosecution, abuse of process, denial of a fair trial, fabrication of evidence, conspiracy "to inflict an unconstitutional injury," and intentional and negligent infliction of emotional distress. (Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Claims) Chao has moved to dismiss the Amended Complaint on grounds of absolute immunity. For the reasons stated below, Chao's motion to dismiss will be granted.

### *BACKGROUND*

For purposes of deciding Defendant Chao's motion to dismiss, the Court has assumed that the following facts presented in the Amended Complaint are true.

### I. *MOYE'S ARREST*

On or about March 12, 2002, at approximately 8:00 p.m., NYPD officers Paul Jeselson and Tawaina O'Neal were stationed on the rooftop of an apartment building on the south side of West 118th Street near the corner of Morningside Avenue conducting nighttime narcotics surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located on the north side of West 118th Street, near Manhattan Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed Plaintiff "extend his hand from the driver's side window and hand a small glassine" to another individual—later arrested —who, in turn, handed it to an unapprehended customer. (*Id.* ¶ 20) The Defendant officers moved in and arrested Moye in the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the officers searched Moye and his car and found United States currency, both in Moye's possession and inside the vehicle. (*Id.* ¶ 27) The Defendant officers unnecessarily grabbed Moye, pushed him, and placed excessively tight handcuffs on him (*id.* ¶ 30), causing him to suffer bruises to and numbness in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal Possession of a Controlled Substance in the Third Degree. (Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that the police officer defendants "conspired [to give] and gave false testimony and intentionally placed false evidence before the grand jury." [1] (Am.Cmplt.¶ 35)

[1]    The Amended Complaint does not disclose what false testimony or other false evidence was laid before the grand jury. Moreover, there is no suggestion that Chao was involved in presenting false testimony or false evidence to the grand jury.

### II. *MOYE'S FIRST TRIAL*

Moye's first trial began on January 14, 2003. (Schwartz Decl., Ex. B) A.D.A. Chao introduced photographs at trial which he claimed showed the position of Plaintiff s car as it was parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer Jeselson, and Officer Papa were present when a District Attorney's office photographer took these photos in June 2002 from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42, 44) Although the photographs were intended to convey the vantage point of the officers on the night of the arrest, they did not replicate the "nighttime conditions." (*Id.* ¶ 45) According to Moye, these photographs nonetheless showed that the officers could not have seen Plaintiff extend his hand from the driver's side window and pass a small glassine to another individual, because the driver's side could not be seen from the vantage point of the rooftop observation post, even with binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*

**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

**\*3** "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

## IV. *THE CHARGES AGAINST MOYE ARE DISMISSED*

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Move,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id.* at 6. The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Move,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

## *DISCUSSION*

### I. *IMMUNITY*

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]     Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d

75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4** As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

Case 5:20-cv-01489-DNH-TWD Document 31 Filed 04/21/22 Page 29 of 170
Moye v. City of New York, Not Reported in F.Supp.2d (2012)
2012 WL 2569085

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler*, 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A. *Legal Standard for Absolute Prosecutorial Immunity***
A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint"). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]      District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83.[4]

[4]
> By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at \*4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

2012 WL 2569085

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7** In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

> [5]
>
> Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony...." ' ") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard.* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express[ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10** In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**                © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 1335865

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant District
Attorney Robert Henoch, Captain of Corrections Martin,
Corrections Officer Schmidt, Corrections Officer Brown
and Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant to 42
U.S.C. § 1983 seeking monetary damages on the grounds that
the defendants—the City of New York, an Assistant District
Attorney, and certain Corrections Officers—violated his
constitutional rights under the Fourth, Eighth and Fourteenth
Amendments to the U.S. Constitution by failing to protect
him from an attack by fellow inmates against whom he had
arranged to testify. Johnson also asserts two tort claims. The
Assistant District Attorney moves to dismiss the complaint
as it pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for
failure to state a claim upon which relief can be granted and
pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter
jurisdiction. For the following reasons, the motion is granted
and the complaint is dismissed as to ADA Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are assumed
to be true for purpose of this motion. In May of 1998 Johnson
was arrested for allegedly selling crack cocaine. Complaint
at 4. Shortly after his arrest, he entered into a cooperation
agreement with ADA Henoch to testify against several of
his co-defendants. [1] *Id.* ADA Henoch allegedly "assured"
plaintiff at that time that he "would protect him[ ]" from
possible retaliation by his co-defendants. *Id.* Johnson claims
that he was being held in Beacon, a housing area on Rikers
Island, which was in "the same general area" as where the

people against whom he was to testify were held and that he
alerted ADA Henoch of this fact. *Id.* ADA Henoch "explicitly
assured [him] that he would be safe" and that "he would be
placed in protective custody." *Id.* at 4–5. Plaintiff also alerted
defendant Corrections Officers Martin, Schmidt, Brown and
"Unidentified Correction Officers" to his danger. *Id.* at 5.

[1]     The complaint states that plaintiff entered into the
        cooperation agreement with ADA Henoch on June
        18, 1999. Complaint at 4. Plaintiff's opposition,
        however, states the cooperation agreement was
        entered into in "June of 1998". Opposition at
        2. In addition, plaintiff has recently sought—
        successfully—to amend the complaint to allege
        that the agreement was made in June of 1998.
        Accordingly, this Court will assume that plaintiff
        entered into the cooperation agreement with
        defendant in June, 1998.

On February 24, 1999, plaintiff was attacked by fellow
inmates "who called him a snitch as they beat and kicked
him." *Id.* As a result of the beating, Johnson suffered a
fractured ankle, injuries to his head, neck and legs, and
damage to his retina that required surgery. *Id.* ADA Henoch,
after learning of the attack on plaintiff, "acknowledged [his]
prior request for protection." *Id.*

As noted above, Johnson has filed this action against the City
of New York, Correction Officers Martin, Schmidt, Brown,
and ADA Henoch and the ADA has moved to dismiss the
complaint on the grounds that it fails to state a constitutional
claim for which relief may be granted and that he is entitled
to either absolute or qualified prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept as
true the factual allegations of the complaint and must view
the pleadings in the light most favorable to and draw all
reasonable inferences in favor of the non-moving party. *See
Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27, 2000)
(citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d
Cir.1993)). Dismissal of the complaint is only proper when "it
appears beyond doubt that plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
*Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

I. *Absolute Immunity*

**\*2** It is well-established that prosecutors are absolutely immune from suits for damages arising from actions which are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

## II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818.) To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v.. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Serves,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d

249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson.[2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, \*3 (S.D.N.Y. Nov. 6, 1995)

(citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

2      Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control

and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

### III. *The Pendent State Claims*

**\*5**  The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

### IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4118938
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Donald J. COON, Jr., Plaintiff,

v.

TRUSTCO BANK CORP.; TD-Banknorth, Inc.;
and Social Security Administration, Defendants.

No. 1:07-CV-1115 (GLS)(RFT).
|
Nov. 16, 2007.

**Attorneys and Law Firms**

Donald J. Coon, Jr. [1], pro se.

[1]     The Court notes that Coon has filed numerous
        prior actions in this Court. *See, e.g.,* 1:96-
        CV-1230, 1:96-CV-1251, 1:98-CV-0066, 1:00-
        CV-1158, 7:01-CV-1459, 7:02-CV-0089, 7:02-
        CV-0177, 1:03-CV-228, 1:03-CV-777, 1:05-
        CV-767, and 1:06-CV-925.

**DECISION and ORDER**

GARY L. SHARPE, District Judge.

**I. Background**

 *1 Presently before the Court is a *pro se* complaint filed
by plaintiff Donald J. Coon, Jr., together with an *in forma
pauperis* application. [2] Dkt. Nos. 1-2. In his *pro se* complaint,
Coon claims that, after he directed the Social Security
Administration to stop direct deposits of all of his Social
Security checks into Trustco Bank Corp., it "negligently"
failed to do so. Dkt. No. 2 at 3-4. Coon alleges that Trustco
Bank Corp. improperly levied fees against Coon's exempt
social security funds. *Id.* at 2-3. Finally, Coon alleges that
TD-Banknorth, Inc. accepted for deposit a post-dated check
written on Coon's account one week before the check was
dated, resulting in Coon's bank account being overdrawn. *Id.*
at 4-5. Plaintiff seeks monetary damages. For a more complete
statement of Coon's claims, refer to the complaint.

[2]     The complaint was transferred to this District from
        the Southern District of New York by Order of

United States District Judge Kimba M. Wood. Dkt.
No. 3.

**II. Discussion**

Turning to Coon's *in forma pauperis* application, the Court
finds that Coon may properly commence this action *in forma
pauperis* because Coon sets forth sufficient economic need.
Dkt. No. 1.

Since the Court has found that Coon meets the financial
criteria for commencing this action *in forma pauperis,* the
Court must now consider the sufficiency of the allegations
set forth in the complaint in light of 28 U.S.C. § 1915(e).
Section 1915(e) directs that, when a plaintiff seeks to proceed
*in forma pauperis,* "(2) ... the court shall dismiss the case
at any time if the court determines that-... (B) the action ...
(I) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). [3] Thus, the court has a responsibility
to determine that a complaint may be properly maintained in
this district before it may permit a plaintiff to proceed with
an action *in forma pauperis.* [4] *See id.* Although the court
has a duty to show liberality towards *pro se* litigants, *Nance
v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and
extreme caution should be exercised in ordering *sua sponte*
dismissal of a *pro se* complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983),
there is a responsibility on the court to determine that a claim
is not frivolous before permitting a plaintiff to proceed. *See
Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d
362, 363 (2d Cir.2000) (District Court may dismiss frivolous
complaint *sua sponte* notwithstanding fact the plaintiff has
paid statutory filing fee); *Wachtler v. Herkimer County,* 35
F.3d 77, 82 (2d Cir.1994) (District Court has power to dismiss
case sua *sponte* for failure to state a claim).

[3]     In determining whether an action is frivolous, the
        court must look to see whether the complaint lacks
        an arguable basis either in law or in fact. *Neitzke v.
        Williams,* 490 U.S. 319, 325 (1989).

[4]     Dismissal of frivolous actions pursuant to 28
        U.S.C. § 1915(e) is appropriate to prevent abuses
        of the process of the court, *Harkins v. Eldredge,*
        505 F.2d 802, 804 (8th Cir.1974), as well as to

Coon v. Trustco Bank Corp., Not Reported in F.Supp.2d (2007)

2007 WL 4118938

discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327.

### A. Social Security Administration

Coon's complaint against the Social Security Administration may, in part, be filed pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens,* the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights. *See Corr. Servs. Corp. v. Malesko,* 534 U .S. 61, 66-67 (2001) (discussing the origin of *Bivens* claims). However, a plaintiff must assert a *Bivens* claim against an officer individually, not against the agency itself or the United States. *See Carlson v. Green,* 446 U.S. 14, 21 (citations and footnote omitted). A "Bivens action may not be brought against the United States or agencies of the United States." *Saber v. Social Security* Administration, No. CV 05-373-HU, 2005 WL1566645, at *3 (D.Ore. June 23, 2005) (dismissing *Bivens* action against the Social Security Administration) (*citing FDIC v. Meyer,* 510 U.S. 471, 486 (1994) (no *Bivens* cause of action for damages against federal agencies); *Cato v. United States,* 70 F.3d 1103, 1110 (9th Cir.1995) (no *Bivens*-type claim exists against the United States). Thus, Coon's *Bivens* claims against the Social Security Administration must be dismissed.

**\*2** Even if Coon had named an individual federal official as a defendant herein, Coon's action would still be dismissed. Courts are generally hesitant to extend the reach of *Bivens* actions when "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration...." *Schweiker v. Chilicky,* 487 U.S. 412, 423. (1988).

The Social Security Act sets forth an elaborate scheme of remedial mechanisms. The Social Security Act makes no provisions for remedies in money damages from officials whose conduct leads to wrongful denial of benefits. *Chilicky,* 487 U.S. at 424. In *Chilicky,* the Supreme Court concluded that because the Congressional scheme for dealing with social security disability claims provides comprehensive safeguards and remedies to claimants under the system, an implied *Bivens* action for further damages should not lie. *Chilicky,* 497 U.S. at 425-27.

Moreover, Coon is advised that because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484-86 (1994); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."); *see also Schweiker v. Chilicky,* 487 U.S. 412, 421 (1988) ("the purpose of Bivens is to deter the officer" and "[a]n extension of Bivens to agencies of the Federal Government is not supported by the logic of Bivens"). Coon has not established that sovereign immunity has been in any way waived for this defendant.

For all of the foregoing reasons, Coon's complaint fails to state a claim against the Social Security Administration upon which relief may be granted. The Social Security Administration is therefore dismissed as a defendant.

### B. TD-Banknorth, Inc.

Coon's only claim against TD-Banknorth, Inc. is that it paid a post-dated check one week early, resulting in Coon's account being overdrawn. [5] Dkt. No. 2 at 4-5. Although plaintiff may have a claim to assert in state court, a review of this claim reveals no basis for federal court jurisdiction. Coon has not raised a federal question with respect to TD-Banknorth, Inc., nor is there diversity jurisdiction in this action. [6] Defendant TD-Banknorth, Inc. is not a state actor which might give rise to jurisdiction under 42 U.S .C. § 1983. Accordingly, TD-Banknorth, Inc. is dismissed as a defendant.

5    The check was written by Coon payable to David and Annette Loomis, and was dated July 1, 2007. Dkt. No. 2 at 4. Coon alleges that TD Banknorth, Inc. paid the check one week early, on June 24, 2007. *Id.*

6    Diversity jurisdiction requires that "all of the adverse parties in a suit ... be completely diverse with regard to citizenship." *Handelsman v. Bedford Village Associates Limited Partnership,* 213 F.3d 48, 51 (2d Cir.2000) (citing *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 930 (2d Cir.1998) (other citations omitted). "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens

of the same State." *Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 388 (1998) (internal quotation marks omitted).

WHEREFORE, it is hereby

ORDERED, that the Social Security Administration and TDBanknorth, Inc. are **DISMISSED** as a defendants to this action for the reasons stated above, and it is further

**\*3** ORDERED, that Coon's *in forma pauperis* application (Dkt. No. 1) is **GRANTED.**[7] The Clerk shall issue a summons and forward it, along with a copy of the complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon the remaining defendant Trustco Bank Corp., and it is further

[7]    Coon should note that although the application to proceed *in forma pauperis* has been granted, Coon will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

ORDERED, that the Clerk schedule a Rule 16 conference before the assigned magistrate judge, and it is further

ORDERED, that a formal response to Coon's complaint be filed by the defendant or its counsel as provided for in the Federal Rules of Civil Procedure subsequent to service of process on the defendant, and it is further

ORDERED, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk, to the party that sent it. Coon shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

ORDERED, that the Clerk serve a copy of this Order on Coon in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4118938

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ramon FLORES, Plaintiff,
v.
Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).
|
Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell, Hauppauge, NY, for defendants Thomas J. Spota III, Linda Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavita & Contini LLP, Garden City, NY, for defendants Robert C. Mitchell, Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

 *1 Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings this action against Suffolk County Executive Steve Levy ("Levy"), Suffolk County District Attorney Thomas J. Spota III ("Spota"), Assistant District Attorneys Linda Kevins ("Kevins"), Dana Brown ("Brown"), and John Scarglato ("Scarglato") (collectively, "defendant prosecutors"), Suffolk County Court Judge Louis J. Ohlig ("Judge Ohlig") (collectively, "County Defendants"), Legal Aid Society Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed" Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor") (collectively, "Legal Aid defendants"), John A. Bray, and Wilma Peterson, alleging malicious prosecution, conspiracy under 42 U.S.C. § 1983, and deliberate indifference, all arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to Fed.R.Civ.P. 12(c). For the following reasons, defendants' motions are granted.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

On February 20, 2003, Flores was arrested in Suffolk County and charged with one count of criminal assault in the second degree and one count of criminal contempt in the first degree. (Compl.¶ 1.) On February 25, 2003, an unidentified man came to see Flores and told him it was not advisable that he testify before the grand jury. (Compl.¶ 3.) The unidentified man stated that he was not an attorney and that he could not answer any additional questions. (Compl.¶ 3.) Later that afternoon, plaintiff appeared before the court and was provided with what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County Court and arraigned on indictment 493-03, which charged plaintiff with: 3 counts of assault in the second degree, 2 counts of criminal contempt in the first degree, aggravated contempt, and menacing. (Compl.¶ 4.) Plaintiff informed the court that he still had no formal attorney of record. (Compl.¶ 4A.) The Court appointed a Legal Aid attorney to represent plaintiff. (Compl.¶ 4B.) After the arraignment, plaintiff complained to Legal Aid attorney Douglas O'Connor that plaintiff was not provided with an attorney at an earlier stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a motion to dismiss would be filed on the grounds that plaintiff was not afforded an opportunity to testify before the grand jury, and that plaintiff was not provided counsel at the time the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.) Plaintiff reviewed the proposed motion to dismiss. (Compl.¶ 5.) Plaintiff is unhappy that the motion did not raise the issue of plaintiff's prior lack of representation. (Compl.¶ 5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶ 5.) Vitale became angry with plaintiff and told plaintiff

he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitale requested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a loss of actual teeth, when, in fact, it was "broken bridge

work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which was broken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

B. Procedural History

2008 WL 4394681

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

### C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

> **\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

> For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

> When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

> I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

> In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the

2008 WL 4394681

Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and he was directed to file his opposition by September 15, 2008, which plaintiff did do.

D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se, ...* a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis,* 421 F.3d at 100; *accord Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

A. The Legal Aid Attorneys and Ms. Peterson

Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss. [1]

[1]    As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Pichardo v. N.Y. Police Dep't.,* No. 98-CV-429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka,* 892 F.2d at 190); *see also Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case-including that both crimes are felonies (and thus are both serious crimes), and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." *Pichardo,* 1998 WL 812049, at *4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra.*

(1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or

Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

*7 In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at * 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorneys). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g., Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30; *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at *3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

### (2) Conspiracy Pursuant to § 1983

*8 The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory");

Flores v. Levy, Not Reported in F.Supp.2d (2008)

2008 WL 4394681

*see also* Walker v. Jastremski, 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello*); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); Green v. Bartek, No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ostrer v. Aronwald, 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant[']s meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." Fisk v. Letterman, 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, Fisk v. Letterman, 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint

must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See* Ciambriello, 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g .,* Rzayeva v. United States, 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiff's vague and conclusory allegations against inmate 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); Fiske, 401 F.Supp.2d at 377 ("Communications between a private and a state actor, without factssupporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also* Marion v. Groh, 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); *Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at *12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations

might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

[2]     Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g., Liner v. Goord,* 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

### (3) Other Defects in Claims against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury

does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994). [3]

[3]    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including

those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

**\*12** Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred. With respect to Section 1983 and 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( Section 1983), *cert. denied,* 538 U.S. 922 (2003); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ( Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

### B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that

all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting *Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at \*3-\*4 (2d Cir. Dec. 12, 2007) (quoting *Imbler,* 424 U.S. at 430; *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts

a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at \*2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U.S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging

2008 WL 4394681

the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted). "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997.) The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity. [4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at *2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

[4]    To the extent that plaintiff is attempting to argue that absolute immunity should not apply

because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

**\*15**  Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

[5]    Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

### C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra*. Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra*.

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

### D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile.[6] As discussed in detail *supra*, it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

6      In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his

opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

### III. CONCLUSION

**\*16**  For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4394681

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Rivera v. Westchester County,   S.D.N.Y.,   September 23, 2020

2015 WL 1379652
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Steven TIEMAN, Plaintiff,
v.
CITY OF NEWBURGH, Po Joseph Palermo,
Po John Maguire, Po Eric Eltz, Po Patrick Kelly,
Po Anthony Guidice, Po Christopher Lahar,
Town of Newburgh, Sgt William Ransom,
Unknown Police Officers 1–5, Defendants.

No. 13–CV–4178 (KMK).
|
Signed March 26, 2015.

## Attorneys and Law Firms

David A. Zelman, Esq., The Law Office of David A. Zelman, Brooklyn, NY, for Plaintiff.

Roberta D. Asher, Esq., Asher & Associates, New York, NY, for Plaintiff.

David Lewis Posner, Esq., McCabe & Mack LLP, Poughkeepsie, NY, for Defendant City of Newburgh.

Carl Steven Sandel, Esq., Drew William Sumner, Esq., Morris Duffy Alonso & Faley, New York, NY, for Defendants Town of Newburgh and SGT William Ransom.

## OPINION & ORDER

KENNETH M. KARAS, District Judge.

**\*1**  Plaintiff Steven Tieman brought suit against Defendants City of Newburgh (the "City"); City of Newburgh Police Officers Joseph Palermo, John Maguire, Eric Eltz, Patrick Kelly, Anthony Guidice, Christopher Lahar, and Unknown Police Officers 1–5; the Town of Newburgh (the "Town"); Town of Newburgh Sergeant William Ransom; and State Trooper Moises Nales. The City of Newburgh moves to dismiss all claims against the City and against Defendants Palermo, Maguire, Eltz, Kelly, Guidice, and Lahar (collectively, the "City Police Officer Defendants"), and for the Court to reject Plaintiff's request to file his Proposed Amended Complaint ("PAC"). The Town of Newburgh moves to dismiss all claims against the Town and against Defendant Ransom, and for the Court to reject Plaintiff's PAC. For the following reasons, the Town's Motion To Dismiss is granted and the City's Motion To Dismiss is denied in part and granted in part.

## I. Background

### A. Factual Background

The following factual summary is derived from Plaintiff's PAC, which the Court takes as true for the purpose of these Motions To Dismiss. [1] These claims arise out of an incident that occurred on June 17, 2010, at approximately 5:45 p.m. (Pl.'s Mem. of Law in Opp'n ("Pl.'s Mem.") Ex. A(PAC), at ¶ 10 (Dkt. No. 46).) Plaintiff alleges that he "was lawfully driving on a public street in Newburgh, New York, when he was approached by a police officer, upon information and belief, [Defendant Eltz], who was wearing plain clothes." (Id.) [2] Without warning and "for no apparent reason," Defendant Eltz "began to yell" at Plaintiff, and "told him to get out of the car." (Id. ¶ 11.) Plaintiff further alleges that he "was frightened and thought he was being robbed, so he drove away." (Id.) Defendant Eltz and other police officers, including Defendants Maguire, Kelly, Guidice, Lahar, and Palermo, gave chase to Plaintiff. (Id. ¶ 12.) "At some point thereafter, and prior to Plaintiff stopping his vehicle," Defendants Ransom and Nales joined the chase. (Id.) "After a brief car chase, [P]laintiff pulled over to the side of the road, put his pickup truck in park, turned off the engine, and raised his hands to surrender." (Id. ¶ 13.) Plaintiff alleges that, when he stopped his vehicle, Defendant Nales was located near Plaintiff's vehicle. (Id.)

[1]    As explained below, Plaintiff's PAC will be accepted unless it would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the PAC contains all of the factual allegations contained in Plaintiff's original Complaint, as well as additional allegations, the Court will merely address the sufficiency of the factual allegations in the PAC. If any portion of the PAC would be subject to dismissal, the corresponding portion of the Complaint necessarily will also be dismissed under Rule 12(b) (6).

2    Plaintiff asserts that he was lawfully driving that evening, but he was "convicted of driving while impaired by alcohol in violation of Vehicle and Traffic Law § 1192(1), criminal possession of a controlled substance in the seventh degree, resisting arrest, unlawful fleeing a police officer in a motor vehicle in the third degree (two counts) and reckless driving in conjunction with this incident." (Mem. of Law in Supp. of the Town of Newburgh and Sergeant William Ransom's Mot. To Dismiss ("Town's Mem.") 2 n. 1 (Dkt. No. 30); *see also* Newburgh's Reply Br. in Supp. of 12(b) (5) and 12(b)(6) Dismissal ("City's Reply") 1–2 (Dkt. No. 47).) Whether Plaintiff was driving lawfully is not relevant to the instant Motions, so the Court declines to assess whether, and to what extent, it should consider these seemingly undeniable facts put forth by Defendants. However, counsel for Plaintiff may someday be called upon to explain the good faith basis for this allegation.

Next, Plaintiff alleges that "one of the defendant police officers, on information and belief [Defendant Maguire], opened the truck door and ordered his police dog to attack [P]laintiff." (*Id.* ¶ 14.) Plaintiff "was thereupon attacked by the police dog, and punched numerous times by [Defendant Maguire]." (*Id.*) Plaintiff alleges that he was "not resisting the police officers in any way," but he nonetheless was dragged from his truck and thrown to the ground by Defendant Maguire and other officers, and was "beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.* ¶ 15.) Plaintiff alleges that at that point "[t]here were at least fifteen or twenty police officers surrounding" him. (*Id.*) Plaintiff alleges that though he was "handcuffed and secured by the police officers, the police dog was again ordered to attack" him, which attack was "completely unjustified, and resulted in numerous further physical injuries." (*Id.* ¶ 16.)

*2    Plaintiff alleges that the injuries he suffered as a result of this assault "included deep dog bites and lacerations to his left side and left leg; bruising to his jaw, head, back, and arms; lacerations to his right elbow; and a broken left ring finger (caused by a dog bite)." (*Id.* ¶ 17.) Plaintiff alleges that he was arrested, taken to the Newburgh City police station, then taken for medical treatment at St. Luke's Hospital, and then to Orange County Jail, where he received further medical treatment. (*Id.* ¶ 18.) Plaintiff alleges that his wounds became infected while in jail, and that he suffered severe and permanent injuries, including "scarring and weakness in his

limbs," "severe physical pain," and "serious and permanent psychological and emotional injuries, including depression, flashbacks, nightmares, unreasonable fear of dogs and police officers, and inability to concentrate." (*Id.* ¶¶ 19–21.)

According to Plaintiff, the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Additionally, Plaintiff claims that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive force by its employees." (*Id.* ¶ 23.) In particular, according to Plaintiff, "[p]ublic court records reveal at least nine suits filed in the five years before the incident [that is the basis for this Action] which allege that police officers employed by [the City] used excessive force during the course of an arrest," "[a]t least five" of which incidents "involved allegations of unnecessary and excessive dog bites." (*Id.*) Plaintiff has listed and described the following lawsuits:

In *Burley. et al. v. City of Newburgh, et al.,* 07–CV–3336, the plaintiffs alleged that on May 11, 2005, police officers employed by [the City] falsely arrested one plaintiff and sprayed him with pepper spray, threw him to the ground, and kicked him in the face causing him to lose consciousness. The other plaintiff alleged that police officers employed by [the City] falsely arrested him, hit him in the face, and kicked him in the ribs.

In *Bryant v. City of Newburgh, et al.,* 06–CV–4200, the plaintiff alleged that he was falsely arrested with excessive force by police officers employed by [the City] on both May 17, 2005 and June 22, 2006.

In *Garcia. et al. v. City of Newburgh, et al.,* 08–CV–1198, [the] plaintiff alleged that on March 30, 2007, he was falsely arrested with excessive force by police officers employed by [the City], including [Defendant Kelly].

In *Cooper. et al. v. City of Newburgh, et al.,* 09–CV–2234, four plaintiffs alleged that on March 31, 2007, July 8, 2007, August 8, 2007, and August 9, 2007, respectively, [City] police officers arrested one of the plaintiffs with excessive force. The complaint alleged that during the course of each arrest, officers directed police dogs to "bite and hold" causing serious injuries to each plaintiff.

*3    In *Follini v. City of Newburgh, et al.,* 08–CV–6347, [the] plaintiff alleged that on July 22, 2007, police officers employed by [the City], including [Defendant Palermo], falsely arrested [the] plaintiff with excessive

force, including pushing [the] plaintiff to the ground, repeatedly administering a taser while [the] plaintiff was on the ground, and administering pepper spray directly to [the] plaintiff's face.

In *Allen v. City of Newburgh[,] et al.,* 08–CV–6771, the plaintiff alleged that on August 12, 2007, officers employed by [the City] arrested him with excessive force, causing injuries including loss of consciousness, shoulder dislocation, facial bruising, and muscle spasms.

In *Baynes v. City of Newburgh, et al.,* 08–CV–6442, [the] plaintiff alleged that on August 25, 2007, police officers employed by [the City], including [Defendant Palermo] and [Defendant Kelly], physically assaulted, maced, and tased[ ] both [the] plaintiff and additional arrestees who were not resisting arrest.

In *Fahey, et al. v. Lt. Peter Leach, et al.,* 08–CV–8280, [the] plaintiffs alleged that on September 30, 2007, multiple [City] police officers assaulted [the] plaintiffs at a gas station and at the police precinct.

In *Whitfield v. City of Newburgh, et al.,* 08–CV–8516, the deceased plaintiff, through his estate, alleged that on July 8, 2008, officers employed by [the City] administered a taser to [the] plaintiff and ordered a police dog to attack [the] plaintiff multiple times, causing his death.

(*Id.* ¶¶ 24–32 (italics omitted).) Plaintiff further alleges that the City "routinely reached settlement agreements" with the Plaintiffs in these cases. (*Id.* ¶ 33.) In particular, Plaintiff claims that *"Garcia* settled in 2008, *Bryant, Cooper* and *Baynes* settled in 2010, *Fahey* and *Allen* settled in 2011, and *Follini* settled in 2012." (*Id* .) Plaintiff further asserts that while the "amount of each settlement agreement [is] not publically available, upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value." (*Id.* ¶ 34.) Additionally, Plaintiff alleges, upon information and belief, that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.*)

Plaintiff alleges two other bases for the City's "notice of allegations of excessive force." (*Id.* ¶ 35.) Specifically, Plaintiff alleges that the City "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," on which date "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during

arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.*) Additionally, Plaintiff alleges that "[o]n August 1, 2013, Matrix Consulting Group published their Final Report entitled 'An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department–City of Newburgh, New York,' " (the "Matrix Report"). (*Id.* ¶ 36.) According to Plaintiff, the Matrix Report stated generally that "discipline guidelines and decisions are unstructured," noted that "assigning a specific investigator and requiring a formal report" was not "previously required," and stated that "only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well." (*Id.*)

**\*4** Finally, Plaintiff makes a number of general allegations regarding the City and Town. First, Plaintiff alleges that the "City of Newburgh and Town of Newburgh have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (*Id.* ¶ 40.) Plaintiff further alleges that the "municipalities are ... aware that such improper training has often resulted in a deprivation of civil rights," and that despite having such notice, "the municipalities have failed to take corrective action," which "caused the officers in the present case to violate plaintiff's civil rights." (*Id.*) Additionally, Plaintiff alleges that the City and Town "have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and despite such notice, "the municipalities have retained the individual defendants as police officers." (*Id.* ¶ 41.) Plaintiff also alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests," and that upon information and belief, "it was the policy and/or custom of defendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* at ¶¶ 42–43.) Furthermore, Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of defendant [City], believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated." (*Id.* at ¶ 44.) Plaintiff

concludes that "the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of [the City] to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶ 45.)

### B. Procedural Background

Plaintiff filed suit against the City, the City Police Officer Defendants, the Town, Defendant Ransom, and Defendant Nales on June 14, 2013. (*See* Dkt. No. 2.) [3] On January 9, 2014, the Court held a pre-motion conference with all Parties. (*See* Dkt. (minute Entry for Jan. 9, 2014).) Following that conference, Plaintiff submitted a letter explaining the basis for filing an amended complaint, and attaching his PAC. (*See* Dkt. No. 20.) [4] Plaintiff never formally moved to file his PAC, which contains all of the factual allegations in his Complaint, as well as additional allegations.

[3]     In June 2014, the Court so ordered a stipulation between Plaintiff and Defendant Nales to dismissal of the claims against that Defendant. (*See* Dkt. No. 35.)

[4]     Plaintiff's PAC also is filed as an attachment to Plaintiff's Memorandum of Law in Opposition, (*see* Dkt. No. 46 Ex. A), and as an attachment to an affidavit submitted by the City in connection with its Memorandum of Law, (*see* Dkt. No. 26 Ex. A).

**\*5** On May 23, 2014, the City moved to dismiss the claims against the City and the City Police Officer Defendants, and to oppose the filing of Plaintiff's PAC as to the claims against the City and the City Police Officer Defendants. (*See* Dkt. No. 25.) Similarly, the Town moved to dismiss the claims against the Town and Defendant Ransom, and to oppose the filing of Plaintiff's PAC as to the claims against the Town and Defendant Ransom. (*See* Dkt. No. 29.)

### II. Discussion

### A. 12(b)(5) Motion To Dismiss

The City of Newburgh moves to dismiss the claims against the City Police Officer Defendants for failure to serve, pursuant to Federal Rule of Civil Procedure 12(b)(5).

### 1. Standard of Review

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l. Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430–31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano,* 604 F.3d 732, 752 (2d Cir.2010) (brackets and internal quotation marks omitted).

In deciding a Rule 12(b)(5) motion, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media & Mktg. Grp., L.L.C. v. Firstgate Internet, Inc.,* 419 F.Supp.2d 419, 427 (S.D.N.Y.2005) (internal quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.,* No. 07–CV–10680, 2009 WL 859084, at \*3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to dismiss, consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." (brackets and internal quotation marks omitted)). For a plaintiff to satisfy his burden of proving adequate service, *see Mende v. Milestone Tech., Inc.,* 269 F.Supp.2d 246, 251 (S.D.N.Y.2003), "[c]onclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served," *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y.1997), *aff'd,* 173 F.3d 844 (2d Cir.1999). Similarly, defective service is not cured or overcome "on the mere assertion that a defendant had actual notice." *Weston Funding, L.L.C. v. Consorcio G Grupo Dina, S.A. de C.V.,* 451 F.Supp.2d 585, 589 (S.D.N.Y.2006) (internal quotation marks omitted).

### 2. Analysis

The Parties agree that service was attempted as follows. "[A] summons addressed to each defendant was delivered to the City Clerk's office, 83 Broadway, Newburgh, N.Y. 12550" in August 2013. (Pl.'s Mem. 9.) Plaintiff asserts that this service was proper because 83 Broadway "is the usual and typical place to serve Newburgh officers," the process server Michael Root of Majestic Process Service, Inc. went to the police department at 55 Broadway, Newburgh, N.Y. 12550, and was told by a sergeant "that the place to serve Newburgh officers was 83 Broadway," and "Mr. Root asked

Ms. [Autumn] Resto, a paralegal at Newburgh City Hall, if she could accept service on behalf of the officer[s]," "she checked with a supervisor, read the documents, and agreed to accept service on behalf of the officers." (*Id.* at 9–10; *see also id.* Ex. C (Decl. of Michael Root) ("Root Decl.") ¶¶ 1, 3–7.)

**\*6** In support of its Motion To Dismiss, the City submitted an affidavit from Michelle Kelson, Corporation Counsel for the City of Newburgh. (*See* Aff. of Michelle Kelson (April 24, 2014) ("April 24 Kelson Aff.") ¶ 1 (Dkt. No. 27).) Ms. Kelson avers that she was notified that the City Clerk's office had received "several summons[es] and one copy of the verified complaint" for this case, and that there was "one summons for the City and one for each individual police officer." (*Id.* ¶ 2.) Ms. Kelson appended the documentation that that City Clerk's office received-seven summonses and one copy of the verified complaint. (*Id.* at Ex. A.) The City also submitted an affidavit from Ms. Resto, who averred:

> My instructions from the Corporation Counsel are to take whatever legal papers are given to me. I do not offer an opinion as to whether giving me these papers is proper service. I have no authority to accept service on behalf of an individual employee of the City of Newburgh. I have never been appointed an agent to accept service on behalf of any Newburgh employee.

(Aff. of Autumn Resto ("Resto Aff.") ¶ 3 (Dkt. No. 49).) In Reply, the City submitted a second affidavit from Ms. Kelson, who averred:

> Employees in my office, including Ms. Resto, have standing instructions to take legal papers delivered to this office. No one here, including myself, is authorized to accept service on behalf of any employee of the City of Newburgh. Pursuant to CPLR § 311(A) (3), the Corporation Counsel's office is a designated agent for receipt of process for the City but not its employees.
>
> No employee of the Corporation Counsel's office has been designated as an agent to receive[ ] process pursuant to CPLR § 318.
>
> The Corporation Counsel's office is on the second floor of City Hall located at 83 Broadway, Newburgh, New York.

It is a separate building from the police station which is located a few hundred yards away at 55 Broadway. No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business.

(Aff. of Michelle Kelson (June 17, 2014) ("June 17 Kelson Aff.") ¶¶ 2–4 (Dkt. No. 48).)

Under Federal Rule 4(e), Plaintiff could serve the City Police Officer Defendants pursuant to state law, *see* Fed.R.Civ.P. 4(e)(1), or by delivering a copy of the summons and of the Complaint to each individual personally, leaving a copy of each at each individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or law to receive service of process, *See* Fed.R.Civ.P. 4(e)(2). The City argues, and Plaintiff does not contest, that service was not properly effected pursuant to Rule 4(e)(2). The summons and complaint were not delivered to each person individually, nor were they delivered to each individual's dwelling or usual place of abode. Finally, service was not effected by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process; the evidence shows that Ms. Resto was not an agent authorized to receive service for the City Police Officer Defendants, nor does Plaintiff even dispute that fact. (Resto Aff. ¶ 3.)

**\*7** Thus, the question is whether the City Police Officer Defendants were properly served under state law, as is permissible under Federal Rule of Civil Procedure 4(e)(1). Section 308 of the New York C.P.L.R. ("CPLR") governs personal service upon natural persons, and provides that service may be effected

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing

the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, ... or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318[.]

N.Y. C.P.L.R. § 308. Again, service was not effected by personal delivery to the City Police Officer Defendants or by delivery at their dwelling places or usual places of abode, nor is there any evidence that Ms. Resto was an agent for service designated under CPLR § 318. Thus, the question is whether the City Police Officer Defendants were served by delivery of the summonses to a person of suitable age and discretion at their actual place of business and by mailing the summonses to the individuals at their last known residences or actual places of business. [5]

[5]    The Court notes that Plaintiff only asserts that service was proper pursuant to N.Y. C.P.L.R. § 308(2). (*See* Pl.'s Mem. 9–11 .)

Here, Plaintiff has failed to establish that the City Police Officer Defendants were served at their "actual place of business" pursuant to CPLR § 308(2). "A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location." *Selmani v. City of New York,* 100 A.D.3d 861, 954 N.Y.S.2d 580, 581–82 (App.Div.2012); *see also Sajimi v. City of New York,* No. 07–CV–3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) ("The term 'actual place of business' has been defined as a place where the defendant is regularly physically present or regularly transacts business."); *Varela v. Flintlock Const., Inc.,* 148 F.Supp.2d 297, 301 (S.D.N.Y.2001) ("Actual place of business is statutorily defined as any location that the defendant, through regular solicitation or advertisement, has held out as its place of business. For a location to be a person's actual place of business for service pursuant to CPLR § 308(2), that person must be shown to regularly transact business at that location." (citation and internal quotation marks omitted)). Plaintiff makes no such showing. Indeed, the only evidence submitted on this issue is from Ms. Kelson, who averred, "No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of

their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business." (June 17 Kelson Aff. ¶ 4.) Plaintiff has failed to meet his burden of proving that service was effected at Defendants' place of business. *See GMA Accessories, Inc. v. Solnicki,* No. 07–CV–3219, 2010 WL 3749213, at *4 (S.D.N.Y. Sept. 24, 2010) (noting that the plaintiff has the burden of showing service was made at the defendant's place of business and holding that the plaintiff failed to meet this burden when it failed to submit any evidence). [6] Accordingly, service was improper under New York law. *See Davis v. City of New York,* No. 07–CV–1395, 2008 WL 2511734, at *3 (S.D.N.Y. June 19, 2008) (holding that an attempt to effect service on individual police officers at the office of the city's corporation counsel was invalid because the "police precinct to which they report and where they conduct their business is their actual place of business" and the plaintiff "made no effort to serve the officers personally or at their actual residences"); *Moultry v. City of Poughkeepsie,* 154 F.Supp.2d 809, 812 (S.D.N.Y.2001) (holding that service was improper under New York law where the plaintiff tried to serve police officer defendants at the city chamberlain's office, and the defendants worked at police department headquarters, reported to work at headquarters at the beginning and end of each shift, and "[u]nless they [were] testifying in [c]ity [c]ourt, the officers ha[d] no official police business in [c]ity [h]all, and they [did] not work for or with the [c]ity [c]hamberlain"). Furthermore, even if Mr. Root went to the Police Department at 55 Broadway, was told by a sergeant to go to the City Attorney at 83 Broadway, and was told by Ms. Resto that she could accept service on behalf of the officers, as Mr. Root declared, service was still improper. (*See* Root Decl. ¶¶ 3–7.) *See Moultry,* 154 F.Supp.2d at 811–12 (holding that service on individual police officers at the city chamberlain's office was improper even though a clerk for the chamberlain accepted service on behalf of the individual police officers and "told the process server that he had come to the right place, and that she was empowered to accept personal service for the individual police officers"). [7]

[6]    Mr. Root's declaration that 83 Broadway is the usual and typical place to serve all Newburgh officers and employees, (Root Decl. ¶ 3), is the type of "conclusory statement[ ]" that is insufficient to carry the burden that service was adequate. *Doe v. Alsaud,* 12 F.Supp.3d 684, 687–88 (S.D.N.Y.2014) (internal quotation marks omitted).

7

Under New York law, when serving a *corporation,* a process server may rely on the representations of employees of the corporation with respect to who may accept service on the corporation's behalf. *See Melkzap Int'l Inc. v. Flavor Innovation Inc.,* 167 F.R.D. 634, 642 n. 6 (E.D.N.Y.1996). Here, however, Mr. Root was serving individuals and, indeed, not even serving them at their place of business.

**\*8** Additionally, when effecting service under state law, a plaintiff must, at the very least, serve a summons and notice. Specifically, "[i]f the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and ... the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305(b). Here, Plaintiff served a summons for the City and summonses for each of the six individual City Police Officer Defendants, but only one copy of the Complaint. (*See* April 24 Kelson Aff. Ex. A.) None of the summonses contained any notice of the claims. (*Id.*) Thus, at least five of the summonses served on the City Police Officer Defendants did not have attached or contain either a copy of the Complaint or notice of the claims, and therefore were invalid under New York law.

Next, Plaintiff argues that, if the Court found service to be improper, it "should be cognizant of the fact that, at the time of the filing of this case, Plaintiff was pro se" and therefore should be granted special leniency regarding procedural matters. (Pl.'s Mem. 11.) However, Plaintiff was pro se for only a very short portion of this case. Plaintiff filed his Complaint pro se on June 14, 2013. (Dkt. No. 2.) On August 21, 2013, Roberta D. Asher [8] entered a notice of appearance on behalf of Plaintiff. (Dkt. No. 4.) [9] Thus, when service was attempted on August 29, 2013, Plaintiff was represented by counsel. (Pl.'s Mem. Ex. D.) Therefore, the Court sees no reason to extend special solicitude to Plaintiff regarding his inadequate service on the basis of his temporarily pro se status. *Cf. Marchand v. Simonson,* 16 F.Supp.3d 97, 106–07 (D.Conn.2014) (noting that the court would "take[ ] into consideration [the] plaintiff's pro se status at the time he filed his amended complaint," but that because the plaintiff was represented at the time he filed opposition to a motion, the court "need not apply the liberal pro se construction in considering [the] plaintiff's opposition" (italics omitted)); *Neely v. RMS Residential Mortg. Solution, L.L.C.,* No. 12–CV–1523, 2013 WL 752636, at \*12 (E.D.N.Y. Feb. 26, 2013) ("Although the

[c]ourt liberally construed [the][p]laintiff's pro se [o]riginal [c]omplaint, since [the] [p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)); *Eaves v. Strayhorn,* No. 09–CV–394, 2010 WL 2521449, at \*9 (S.D.Ohio June 15, 2010) ("[The] [p]laintiff cannot use the initial pro se filing to obscure the fact that he, with counsel, allowed the statute of limitations to run before re-filing his complaint." (italics omitted)); *Khan v. Abercrombie & Fitch, Inc.,* No. 01–CV–6163, 2003 WL 22149527, at \*10 (S.D.N.Y. Sept. 17, 2003) (refusing to allow a plaintiff to amend her complaint at a late stage of litigation despite her argument she should be afforded deference based on her pro se status, where she was pro se when the case was filed but "has been represented by counsel since the earliest stages of [the] action").

8

The Clerk of the Court is respectfully requested to change the name of the attorney appearing for Plaintiff from Stacy Nicole Baden to Roberta D. Asher, as indicated on the notice of appearance. (*See* Dkt. No. 4.)

9

Plaintiff's second counsel, David A. Zelman, entered a notice of appearance on Plaintiff's behalf on December 19, 2013. (Dkt. No. 18.)

**\*9** Prior to 1993, "the former Rule 4(j) ... provided that if service was not made within 120 days, and the serving party cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice ." *Zapata v. City of New York,* 502 F.3d 192, 195 (2d Cir.2007) (internal quotation marks omitted). Following the 1993 amendments, the relevant rule, now codified in Rule 4(m), states, "If a defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m). Thus, the amendment provided "district courts [with] discretion to grant extensions even in the absence of good cause." *Zapata,* 502 F.3d at 196; *see also Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("[I]n 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown." (internal quotation marks omitted)).

Here, Plaintiff has not shown good cause—or indeed even tried to argue that good cause existed, instead merely arguing that service was proper and that Plaintiff should get solicitude as he previously was pro se. (Pl.'s Mem. 9–11.) "Good cause is deemed to exist in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Ligon v. City of New York,* No. 12–CV–2274, 2013 WL 3502127, at *1 (S.D.N.Y. July 12, 2013) (internal quotation marks omitted). "[A]ttorney inadvertence or negligence does not establish good cause," nor does "ignorance of the law." *Novak v. Nat' l Broad. Co. Inc.,* 131 F.R.D. 44, 45–46 (S.D.N.Y.1990). "Additionally, a mistaken belief that service was proper does not establish good cause." *Bernstein v. Vill. of Piermont,* No. 11–CV–3677, 2012 WL 6625231, at *3 (S.D.N.Y. Dec. 20, 2012) (internal quotation marks omitted). The Court sees no basis for making a finding that there was good cause for Plaintiff's failure to timely serve the City Police Officer Defendants.

Thus, the only remaining question is whether, in the absence of good cause, the Court should exercise its discretion to grant an extension. Importantly, if the Court were to dismiss the claims against the City Police Officer Defendants, Plaintiff would not be able to bring the claims again because they would be time-barred. Because Section 1983 "does not provide a specific statute of limitations," "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir.2013). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.* The times giving rise to this suit occurred on June 17, 2010. (Compl. ¶ 10 (Dkt. No. 2); PAC ¶ 10.) Thus, the statute of limitations expired on June 17, 2013, three days after this suit was filed. (*See* Dkt. No. 2.) "Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," there must be "sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata,* 502 F.3d at 197 (footnote omitted).

**\*10** When courts are deciding whether to exercise their discretion to extend the service deadline in the absence of good cause, they are to consider the following factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service;

and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *E. Refractories Co. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 506 (S.D.N.Y.1999). Regarding the first factor, as explained above, the applicable statute of limitations would bar the refiled action, so Plaintiff would be prejudiced if the Court declined to grant an extension. Though this factor weighs in favor of an extension, it "does not guarantee an extension for every case that may be time-barred if refiled." *Bunim v. City of New York,* No. 05–CV–1562 et al., 2006 WL 2056386, at *3 (S.D.N.Y. July 21, 2006) (internal quotation marks omitted). Therefore, the Court must consider the other factors. There are no indications that the City Police Officer Defendants have actual notice of the claims asserted or that they attempted to conceal the defect in service. However, there are also no allegations that these Defendants would be prejudiced if the Court granted an extension. *See Alvarado v. Am. Freightways, Inc.,* No. 04–CV–9536, 2005 WL 1467893, at *6 (S.D.N.Y. June 21, 2005) (holding that allowing service after the statute of limitations has expired does not, by itself, constitute prejudice). Here, because Plaintiff "would be time-barred from refilling and the defendants allege no prejudice if Rule 4(m) relief is granted, the balance of equities tips in favor of [Plaintiff]." *Id.; see also Gore v. RBA Grp., Inc.,* No. 03–CV–9442, 2009 WL 884565, at *7 (S.D.N.Y. Mar. 27, 2009) ("Since the statute of limitations would bar the plaintiff from re-filing his suit against [the defendant] and nothing in the record indicates that an extension of the time for service will prejudice the defendant, the balance of equities tips in favor of the plaintiff."). "Granting ... [P]laintiff[ ] a discretionary extension also furthers the principle that litigation should generally be resolved on the merits." *Alvarado,* 2005 WL 1467893, at *6. Therefore, the Court will grant Plaintiff 21 days from the date of this Opinion to properly serve the City Police Officer Defendants, or else face dismissal of his claims against these Defendants. However, no further extensions will be given, in the absence of good cause.

### B. 12(b)(6) Motion To Dismiss and Opposition to PAC

Next, the City and Town move under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim under *Monell v. Dep' t of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and the Town moves to dismiss the claims against the Town Police Officer Ransom. Additionally, the Defendants move that the Court deny Plaintiff's request to file his PAC.

#### 1. Standard of Review

**\*11** Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed.R.Civ.P. 15(a) (2). However, " '[i]t is within the sound discretion of the district court to grant or deny leave to amend.' " *Barbata v. Latamie,* No. 11–CV–7381, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir.2009)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). However, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002). "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); *see also Alaska Laborers Emp'rs Ret. Fund v. Scholastic Corp.,* No. 07–CV–7402, 2011 WL 3427208, at *2 (S.D.N.Y. Aug.3, 2011) ("[A] court should not grant a plaintiff the right to amend [a complaint] when such amendment ... could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." (citations and internal quotation marks omitted)). The adequacy of the proposed amended complaint is judged by the same standard as that applied to a motion to dismiss for failure to state a claim under Rule 12(b) (6) of the Federal Rules of Civil Procedure. *See id.; see also Gen. Elec. Capital Fin., Inc. v. Bank Leumi Trust Co. of N.Y.,* No. 95–CV–9224, 1999 WL 33029, at *5 (S.D.N.Y. Jan.21, 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (second alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed." *Id.; see also Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

**\*12** "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir.2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences ."); *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.,* 737 F.3d 166, 176 (2d Cir.2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we ... accept all factual allegations in the complaint as true ...." (alterations and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court ... draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res ., Inc.,* 992 F.Supp.2d 302, 304 n. 1 (S.D.N.Y.2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir.2012)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal

quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citation omitted)).

*2. Analysis*

*a. Section 1983 Claims Against the City and Town*
Plaintiff brings claims under 42 U.S.C. § 1983 against the City and Town. "To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.,* 723 F.3d 399, 405–06 (2d Cir.2013). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell,* 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008); *cf. Salvatierra v. Connolly,* No. 09–CV–3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Apr.16, 2010); *Arnold v. Westchester County,* No. 09–CV–3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr.16, 2010) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cnty. Dep't of Corr.,* 2010 WL 3397372 (S.D.N.Y. Aug.15, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Newton v. City of New York,* 566 F.Supp.2d 256, 270 (S.D.N.Y.2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of*

*Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (italics omitted); *see also Vassallo v. Lando,* 591 F.Supp.2d 172, 201 (E.D.N.Y.2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.' " *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y.2002), *aff'd,* 75 F. App'x 827 (2d Cir.2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton,* 566 F.Supp.2d at 271; *see also City of Okla. v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 427 (S.D.N.Y.2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

**\*13** A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York,* 705 F.Supp.2d 261, 276–77 (S.D.N.Y.2010) (citations omitted); *see also Roe,* 542 F.3d at 36 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida,* 375 F.3d 206, 226–27 (2d Cir.2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff also

must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle,* 471 U.S. at 824 n. 8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original)); *Roe,* 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." (quoting *Brown,* 520 U.S. at 404)); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York,* No. 06–CV–9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a complaint does not "suffice if it tenders naked assertion [s] devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). Thus, to survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City,* 847 F.Supp.2d 573, 576 (S.D.N.Y.2012) (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)). Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.

**\*14** Of the four categories among which a *Monell* plaintiff must establish, Plaintiff's allegations do not include the first two. Plaintiff does not allege that there was a formal policy calling for the use of excessive force, nor does he allege any

actions by government officials who were responsible for any offending policies. Rather, Plaintiff's allegations implicate the third and fourth categories-a consistent practice of use of excessive force, that supervisors were aware of and tolerated the use of excessive force, a failure to train officers in the use of force, and/or a failure to supervise officers with regard to their use of force when arresting suspects.

Plaintiff makes a number of general allegations against both the City and Town in his PAC. Plaintiff alleges that the event in question "was not an isolated incident," and, in fact, that the City and Town "have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (PAC ¶ 40.) Plaintiff further alleges that the municipalities are "aware that such improper training has often resulted in a deprivation of civil rights," and that "[d]espite such notice, the municipalities have failed to take corrective action." (*Id.*) Additionally, Plaintiff alleges that the City and Town "are also liable because they have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and retaining the police officers amounts to "gross negligence and deliberate indifference." (*Id.* ¶ 41.) Plaintiff further alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests." (*Id.* ¶ 42.)

Plaintiff's PAC also contains allegations specifically against the City, apart from the allegations generally against the City and Town. First, Plaintiff alleges that the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Plaintiff also alleges that "upon information and belief, it was the policy and/or custom of [D]efendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* ¶ 43.) Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of [the City] believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated," and that these customs

and policies "demonstrate a deliberate indifference on the part of the policymakers of Defendant City of Newburgh to the constitutional rights of the arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶¶ 44–45.) By themselves, these general allegations are "conclusory, and therefore must be disregarded. *Simms v. City of New York,* No. 10–CV–3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept.28, 2011) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency) (citing *Iqbal,* 556 U.S. at 678–79), *aff'd,* 480 F. App'x. 627 (2d Cir.2012); *see also Triano v. Town of Harrison,* 895 F.Supp.2d 526, 535–37 (S.D.N.Y.2012) (holding that "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details" and collecting cases); *Duncan v. City of New York,* No. 11–CV–3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell* "); *Moore v. City of New York,* No. 08–CV–8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar.2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (internal quotation marks omitted)); *Bradley v. City of New York,* No. 08–CV–1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language- that the [c]ity 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees-is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the][p]laintiffs to be arrested without probable cause." (citation omitted)).

 **\*15** The only remaining allegation against the Town is that it "was a municipal corporation," and "was the employer and supervisor" of Defendant Ransom. (PAC ¶ 8.) Therefore, Plaintiff alleges, the Town "was responsible for [Defendant Ransom's] training, supervision and conduct," as well as "for enforcing the regulations of the Town of Newburgh Police Department and for ensuring that Town of Newburgh police personnel obey the laws of the State of New York and of the United States." (*Id.*) This allegation would only support a claim for vicarious liability, and does not state a claim for municipal liability under *Monell. See City of Canton,* 489 U.S. at 385 ("Respondeat superior or vicarious

liability will not attach under § 1983." (italics omitted)); *Hughes v. Salerno,* No. 11–CV–9094, 2012 WL 6097775, at *4 (S.D.N.Y. Dec.5, 2012) ("*Monell* does not provide a cause of action for vicarious liability."). Therefore, Plaintiff's claim for municipal liability against the Town is dismissed and the Court denies Plaintiff's request to file his PAC with regard to this claim .[10]

10      In its Memorandum of Law in Support of its Motion To Dismiss, the Town argued that the Complaint and PAC "are devoid of factual allegations supporting the inference that the alleged policies actually exist." (Town's Mem. 6.) Though Plaintiff responded to the City's arguments regarding his *Monell* claims, he did not respond to the Town's arguments regarding municipal liability. (*See generally* Pl.'s Mem.) The Town argues in reply that "Plaintiff's failure to raise any argument in opposition to the Town's motion constitutes an abandonment of the claim, and as such, the claims against the Town must be dismissed." (Town of Newburgh and Sergeant William Ransom's Reply Br. in Further Supp. of their Mot. To Dismiss ("Town's Reply") 3 (Dkt. No. 50) (citing *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 724 (S.D.N.Y.2005)).) Though the Court dismisses Plaintiff's *Monell* claims against the Town on the merits, it alternatively holds that Plaintiff has abandoned this claim, as Plaintiff offered no response to the Town's arguments in support of its Motion To Dismiss the *Monell* claim. *See Baity v. Kralik,* —— F.Supp.3d ——, 2014 WL 5010513, at *16 (S.D.N.Y. Sept.30, 2014) (holding that the court "could find [the][p]laintiff to have abandoned any claim that *Monell* liability applies" when the plaintiff's memorandum in opposition made no mention of the defendant's arguments on that issue, and collecting cases); *Chamberlain v. City of White Plains,* 986 F.Supp.2d 363, 392 (S.D.N.Y.2013) (holding, in the context of a § 1983 *Monell* claim, that "[a] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

Plaintiff does offer more specific allegations in support of his two theories of *Monell* liability against the City. For example, Plaintiff alleges that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive

force by its employees." (PAC ¶ 23.) As noted, Plaintiff specifically identifies nine lawsuits he represents were filed in the five years before the incident in question, at least five of which "involved allegations of unnecessary and excessive dog bites." (*Id.; see also id.* ¶¶ 24–32.) Plaintiff alleges that the "City of Newburgh routinely reached settlement agreements with the plaintiffs in the above-mentioned cases," and further alleges that "upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value." (*Id* . ¶¶ 33–34.) Plaintiff also alleges "[u]pon information and believe," that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.* ¶ 34.)

Additionally, Plaintiff alleges that the City of Newburgh "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," when "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.* ¶ 35.)

Finally, Plaintiff alleges that Matrix Consulting Group published its final report, titled "An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department–City of Newburgh, New York," on August 1, 2013. (*Id.* ¶ 36.) According to Plaintiff,

> **\*16** Among the many findings and recommendations in the report is that discipline guidelines and decisions are unstructured-the report therefore recommended, *inter alia,* that the Chief should direct improvements to the Internal Affairs process, including assigning a specific investigator and requiring a formal report, which was not previously required. In addition, only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well. This report's findings support the proposition that [the City's] training and discipline procedures are

inadequate to prevent violations of arrestees['] constitutional rights.

(*Id.*)

These allegations fail to plausibly state that there is a City practice of using excessive force during arrests, generally, or using police dogs so consistent and widespread as to constitute a custom or usage. Under the third category of *Monell* claims, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Brown,* 520 U.S. at 404, which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *see also Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"); *Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir.2000) (discussing *Jett* ). Therefore, a plaintiff may establish municipal liability by demonstrating that a municipality "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau,* 467 F.Supp.2d 308, 314 (E.D.N.Y.2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik,* 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law' " (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation marks omitted))); *Davis* 228 F.Supp.2d at 346 (explaining that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status."). As the Supreme Court emphasized in *Monell,* Congress enacted § 1983 to impose liability on municipalities "because of the persistent and widespread discriminatory practices of state officials," and out of recognition that such practices could become "so permanent and well settled as to constitute a

'custom or usage' with the force of law." *Monell,* 436 U.S. at 691 (citation and internal quotation marks omitted).

**\*17** The lawsuits cited by Plaintiff in the PAC, even when combined with the allegations regarding the public forum comments and the Matrix Report, are insufficient to plausibly support an inference of a widespread custom. To begin, even if the civil complaints involved comparable conduct to that alleged here, "none result[ed] in an adjudication of liability." *Walker v. City of New York,* No. 12–CV–5902, 2014 WL 1259618, at \*3 (S.D.N.Y. Mar.18, 2014); *see also Collins v. City of New York,* 923 F.Supp.2d 462, 479 (E.D.N.Y.2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *accord Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir.1985) (holding, even pre-*Twombly* and *Iqbal,* that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing," as "[p]eople may file a complaint for many reasons, or for no reason at all," and "[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist"); *Rikas v. Babusch,* No. 13–CV–2069, 2014 WL 960788, at \*3 (N.D.Ill. Mar.12, 2014) ("[T]he fact that prior lawsuits were filed against [one of the defendants accused of excessive force] does not support [the plaintiff's] *Monell* claim nor does it evidence a widespread municipal practice."); *Xian Ming Wu v. City of New Bedford,* No. 12–CV–11648, 2013 WL 4858473, at \*2 (D.Mass. Sept.11, 2013) (holding that a complaint's reference to two other similar complaints is insufficient to survive a motion to dismiss). And though numerous cases, discussed below, look to unsubstantiated allegations in lawsuits and complaints by residents to establish municipal liability, these cases do so through the framework of deliberate indifference failure-to-train and failure-to-supervise cases and their reasoning is therefore not persuasive here. *See* e .g., *Walker,* 2014 WL 1259618, at \*3 (holding that failure-to-train cases, such as *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), are inapposite to *Monell* claims alleging a widespread custom). Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions

of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom. *Walker,* 2014 WL 1259618, at \*1–3 (holding that the allegation that ten similar complaints were filed against New York City in the ten preceding years was insufficient to state a claim because the "paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"). (*See also* Aff. of David L. Posner ("Posner Aff.") Ex. D (Matrix Report), at 59 (Dkt. No. 26) (noting that the City made "a total of 2,478 arrests in 2012").) [11]

[11]    The City puts forward several documents not attached to Plaintiff's Complaint or PAC, specifically, a redacted settlement stipulation from one of the cases Plaintiff refers to in the PAC, releases signed by some plaintiffs in the cases referred to by Plaintiff in the PAC, and an excerpt of the Matrix Report. (*See* Aff. of David L. Posner ("Posner Aff.") Ex. B–D (Dkt. No. 26).) The Court considers the Matrix Report because it is incorporated by reference into the PAC, as Plaintiff specifically cites to the Report and its findings. *See Wilson v. Med. Unit Officials at George R. Vierno Ctr. Jail at 09–09 Hazen St.,* No. 10–CV–1438, 2011 WL 6780934, at \*2 (E.D.N.Y. Dec. 27, 2011) ("Because they are explicitly cited in [the] plaintiff's complaint, the court shall deem the ultrasound reports incorporated by reference and shall consider them in assessing [the] defendants' motion to dismiss."); *Harrison v. Metro. Life Ins. Co.,* 417 F.Supp.2d 424, 431 (S.D.N.Y.2006) (considering a document outside the complaint where the plaintiff "cites to" the document in her complaint and specifically quoted from one part of it). Furthermore, Plaintiff does not dispute the veracity of the Report provided by the City.

The other documents provided by Defendants, however, are not material to the Court's determination of the City's Motion, so the Court need not assess whether they are properly considered.

**\*18** Additionally, in Plaintiff's Memorandum in Opposition, he argues that the City has a police force of 75, and that Plaintiff alleges that there were at least 15 to 20 police officers

surrounding him, meaning that "Plaintiff's allegations, taken as true, would mean that at least one-fifth of the entire City of Newburgh Police Department was present for the assault of Plaintiff, and both tolerated the abuse of plaintiff's constitutional rights and did not fear retribution." (Pl.'s Mem. 8.) However, the size of the City's police force is not a fact alleged in the Complaint or PAC, and the Court cannot consider additional factual allegations contained in Plaintiff's papers. *See Paul v. Bailey,* No. 09–CV–5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, ... courts should not consider factual allegations made for the first time in opposition papers."); *Friedman v. MiraMed Revenue Grp., L.L.C.,* No. 12–CV–5328, 2012 WL 5992163, at *3 (S.D.N.Y. Nov. 19, 2012) ("[T]he [c]ourt declines to consider the additional facts set forth in [the] plaintiff's opposition papers that are not in his complaint."). [12] In any event, the allegation that 15 to 20 officers were present during Plaintiff's arrest does nothing to establish that the alleged excessive force happened as part of a well-established practice or custom. Instead, this allegation only supports, at best, a single instance where numerous officers allegedly used excessive force. This is not an akin to establishing a custom of use of excessive force. *See Tuttle,* 471 U.S. at 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [.]"); *Triano,* 895 F.Supp.2d at 532 ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)). For the above reasons, Plaintiff fails to state a *Monell* claim for relief against the City of Newburgh on the theory that the City of Newburgh has a custom of using excessive force during arrests so widespread to have the force of law.

[12] "[W]here a pro se plaintiff has submitted other papers to the [c]ourt, such as legal memoranda, the [c]ourt may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York,* No. 09–CV–5916, 2011 WL 2565301, at *3 (June 28, S.D.N.Y.2011) (italics and internal quotation marks omitted). Here, however, Plaintiff was not pro se when he submitted the PAC, so the Court does not have an obligation read the PAC with the special solicitude due to pro se plaintiffs. *See Neely,* 2013 WL 752636, at *12 ("Although the [c]ourt liberally construed [the][p]laintiff's pro se [o]riginal [c]omplaint, since [the][p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)).

The Court next considers whether Plaintiff has adequately pleaded a claim for relief against the City under a deliberate indifference theory, the fourth category of *Monell* claims. "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007) (citing *Jett,* 491 U.S. at 737); *see also City of Canton,* 489 U.S. at 394–95 (O'Connor, J., concurring in part and dissenting in part) ("Where ... a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution."); *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (citing *City of Canton* for the proposition that a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training"); *Johnson,* 2011 WL 666161, at *3 (explaining that a plaintiff may demonstrate the existence of a custom or policy by alleging "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees"). However, such a failure to act, train, or supervise can constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds,* 506 F.3d at 192 (citing *City of Canton,* 489 U.S. at 390); *see also Marte v. N.Y.C. Police Dep ' t,* No. 10–CV–3706, 2010 WL 4176696, at *2 (S.D.N.Y. Oct. 12, 2010) (noting that a municipality's failure to train its employees can support § 1983 liability only where " 'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " (quoting *City of Canton,* 489 U.S. at 388)).

**\*19** In *City of Canton,* the Supreme Court established the "deliberate indifference" standard in the context of a claim for failure to train, but "the stringent causation and culpability requirements set out in that case have been applied

to a broad range of supervisory liability claims," including claims for failure to supervise and failure to discipline. *Reynolds,* 506 F.3d at 192 (citing *Amnesty Am.,* 361 F.3d at 127 (failure to supervise); *Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir.1994) (failure to discipline)); *see also Connick v. Thompson,* —— U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (noting that "deliberate indifference" is a "stringent standard" requiring "proof that a municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)). [13] In this context, the Supreme Court has held that "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Amnesty Am.,* 361 F.3d at 126 (quoting *City of Canton,* 489 U.S. at 388); *see also Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) (holding that a plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the [unconstitutional action by its employees], exhibited deliberate indifference"); *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials").

[13] The Supreme Court has emphasized that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 131 S.Ct. at 1359; *see also Tuttle,* 471 U.S. at 822–23 ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell.*" ).

Plaintiff has attempted to allege two types of deliberate indifference claims: failure to train and failure to supervise/discipline. Indeed, "[a] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann,* 72 F.3d at 1049. To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious," which may be established "by showing that there were repeated complaints of civil rights violations," and "deliberate indifference may be inferred if the complaints

are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers,* No. 11–CV–6860, 2012 WL 4477241, at \*9 (S.D.N.Y. Sept.27, 2012) (internal quotation marks omitted). The Second Circuit has set out three requirements that must be met before a municipality may be liable under either theory: first, that a policymaker knows " 'to a moral certainty' " that his or her employees will confront a given situation; second, " 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;' " and third, " 'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.' " *Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir.2007) (quoting *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992)).

**\*20** Applying these principles to this case, the Court concludes that Plaintiff has sufficiently alleged that the need for more or better supervision was obvious. There is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be. The City asserts that the complaints relied on by Plaintiff regarding excessive force incidents that occurred between 2005 and 2008 are too sparse and too remote to support an inference of obviousness. (Def.'s Mem. of Law in Supp. of Dismissal ("City's Mem.") 10 (Dkt. No. 28); Newburgh's Reply Br. in Supp. of 12(b)(5) and 12(b)(6) Dismissal ("City's Reply") 5–6 (Dkt. No. 47).) However, the City provides no authority to support the notion that a plaintiff must cite a certain number of complaints in a certain time period to make out a *Monell* claim. Indeed, the case law supports Plaintiff's position here. For example, in *McCants v. City of Newburgh,* No. 14–CV–556, 2014 WL 6645987 (S.D.N.Y. Nov.21, 2014), *clarified on denial of reconsideration,* 2014 WL 7398910 (S.D.N.Y. Dec.9, 2014), the court denied a motion to dismiss a *Monell* claim on deliberate indifference grounds. In that case, the court found it sufficient that the plaintiff's pleadings referred to other lawsuits demonstrating that the municipality "was on notice to the possible use of excessive force by its police officers on seventeen different occasions." *Id.* at \*4. There, the seventeen excessive force claims were made "in the seven-year time period prior to" the incident resulting in the suit. *Id.* In *Farrow v. City of Syracuse,* No. 12–CV–1401, 2014 WL 1311903, (N.D.N.Y. Mar. 31, 2014), the Northern District of New York noted in dicta that were the court deciding a motion to dismiss,

the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient state a plausible failure to train case. *Id.* at *8 n. 7; *see also Shepherd,* 2012 WL 4477241, at *10 (holding, on a motion to dismiss where the complaint relied on a Department of Justice ("DOJ") report finding evidence of unconstitutional activity in 2008 to support a claim that such a custom existed in 2010, that the court "[was] obligated to draw all reasonable inferences in [the] [p]laintiff's favor and thus [took] as true for purposes of th[e] motion practice the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against [the][p]laintiff"). The Court does not see any material difference between the seventeen excessive force claims in seven years in *McCants,* the fifteen excessive force claims in five years in *Farrow,* [14] and the thirteen claims alleged in nine lawsuits in five years here. [15] While there may be questions about the quantum of proof Plaintiff has regarding these other complaints at summary judgment, Plaintiff's allegations allow the Court to plausibly infer that the City was on notice that the police officers were using excessive force in making arrests. *See Osterhoudt v. City of New York,* No. 10–CV–3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) ("Mere allegations have little, if any, probative force and by themselves would hardly prevent summary judgment. But in the context of Rule 12, where plausibility is in issue, it is hard to ignore these cases, which suggest that the conduct complained of is not limited to the four corners of [the plaintiff's] complaint.").

14     Indeed, the fifteen cases referred to in *Farrow* were *filed* against the city in the preceding five years, so the underlying claims likely occurred even outside that timeframe.

15     Unlike in cases such as *Perez v. N.Y.C. Dep't of Corr.,* No. 10–CV–2697, 2012 WL 3704744 (E.D.N.Y. Aug.27, 2012), there is no doubt here that the City knew about the complaints. *Id.* at *3 (reasoning that "[w]hile a court may consider complaints made against a municipality and its response to them to determine whether the municipality acted with deliberate indifference," the plaintiff's claims must be dismissed because the "plaintiff does not allege who, if anyone, at [the department of corrections] and/or the [c]ity knew about the alleged incidents, or how and through whom these entities may have responded to the alleged incidents").

Additionally, the Court concludes that it can consider all of the other lawsuits cited by Plaintiff, not just the ones involving police dogs, as Plaintiff alleges a custom involving a broad array of unconstitutionally excessive force during arrest, resulting not only in him being attacked by a police dog, but also being punched and beaten severely during his arrest. (*See* PAC ¶¶ 14–16.)

**\*21** However, an allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise. Instead, a plaintiff must allege that "meaningful attempts to investigate repeated claims of excessive force are absent." *Hart v. City of Binghamton,* No. 10–CV–1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012) (internal quotation marks omitted). Put another way, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Id.* (internal quotation marks omitted); *see also Lawrence v. City of Rochester,* No. 09–CV–6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb.6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (internal quotation marks omitted)); *Aretakis v. Durivage,* No. 07–CV–1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same). Here, Plaintiff does not offer any allegations plausibly establishing that the City failed to investigate the listed complaints of excessive force. The *only* allegation Plaintiff makes regarding the City's response to the other lawsuits and the complaints made in the public forum is that "[u]pon information and belief, the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (PAC ¶ 34.) This is insufficient.

There are two ways to plausibly plead deliberate indifference with respect to failure to supervise/discipline. First, a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations. Second, a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved. However, what Plaintiff alleges here is (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that those allegedly involved were not disciplined. This does not plausibly plead a claim for deliberate indifference. There is no basis for the

2015 WL 1379652

Court to conclude that Plaintiff plausibly alleged that the past conduct was *actually* unconstitutional, and therefore it would not be deliberately indifferent of the City to fail to punish police officers for conduct that was not improper or that they did not commit. Indeed, to plausibly allege a deliberate indifference failure to discipline claim under the second strategy, Plaintiff must allege a consistent pattern of a failure to discipline unconstitutional action. *See Posr v. City of New York,* 835 F.Supp. 120, 125 (S.D.N.Y.1993) (holding, in granting a motion to dismiss a failure to discipline case, that while "[i]t is true that a consistent failure to discipline can give rise to a finding that a municipality has a policy of not disciplining," "[n]o court ... has ever held that a municipality is required to discipline every officer upon a finding of wrongdoing"), *aff'd,* 22 F.3d 1091 (2d Cir.1994); *see also Hart,* 2012 WL 1565085, at *4 (holding, in the context of a summary judgment motion, that "while [the][p]laintiff [had] cited to numerous cases concerning citizen complaints of the use of excessive force," he "[had] not provided evidence tending to indicate that any [of] the [ ] complaints were of substance," thus the "failure to find any of the officers engaged in excessive force alleged in the complaints does not mean *a fortiori,* that the [c]ity was deliberately indifferent to the well being of its citizens"); *cf. Bertuglia v. City of New York,* 839 F.Supp.2d 703, 738 (S.D.N.Y.2012) (denying a motion to dismiss a deliberate indifference claim where "[t]he plaintiffs have pleaded that the [c]ity has a longstanding, de facto policy of never disciplining prosecutors who commit specified types of prosecutorial misconduct and not otherwise training them to avoid misconduct"). Finally, Plaintiff's allegation that the Matrix Report concluded that the City's "discipline guidelines and decisions are unstructured" and recommended that certain changes be made is insufficient to plausibly plead that there was a consistent failure to investigate allegations of misconduct or punish incidents of unconstitutionally excessive force to meet the stringent standard of deliberate indifference. In particular, Plaintiff alleges no causal link between the allegedly "unstructured" discipline guidelines and the unconstitutional practice of not investigating allegations of use of excessive force. For the above reasons, the Court holds that Plaintiff has not plausibly alleged a failure to supervise/discipline case against the City.

**\*22** The Court now turns to the additional requirements for a failure to train claim. To allege a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training. In *Amnesty America,* the Second Circuit suggested that to state a claim for a municipality's failure to train its employees, a plaintiff "need only plead

that the city's failure to train caused the constitutional violation," because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." 361 F.3d at 130 n. 10. However, since *Twombly* and *Iqbal,* "courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms,* 2011 WL 4543051, at *2 n. 3 (collecting cases), *aff'd sub nom. Simms v. City of New York,* 480 F. App'x 627 (2d Cir.2012); *see also Simms,* 480 F. App'x at 631 n. 4 ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (citation omitted)); *Santos,* 847 F.Supp.2d at 577 ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation omitted)). To state a claim for municipal liability based on failure to train, Plaintiff therefore must allege facts that support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Acosta v. City of New York,* No. 11–CV–856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused ... [the] alleged violations of [the] plaintiff's rights"); *Simms,* 2011 WL 4543051, at *2 (dismissing failure to train claim where there was "not enough factual material in the [c]omplaint for the court to reasonably infer that the police misconduct [the plaintiff] allege [d] was the result of anything other than the individual acts of the arresting officers"); *Johnson,* 2011 WL 666161, at *4 (holding that a complaint that "contain[ed] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" could not withstand a motion to dismiss because the plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)); *Araujo v. City of New York,* No. 08–CV–3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").

Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)
2015 WL 1379652

**\*23** Other than Plaintiff's boilerplate assertions discussed above, the sole fact Plaintiff pleaded with respect to the City's failure to train its officers is that, "only 43% of sworn officers who responded to the polling in the [Matrix Report] agreed that they received appropriate training to do their job well." (PAC ¶ 36.) This factual allegation is just not enough to nudge Plaintiff's claim from possible to plausible. The polling data is not specific as to training regarding the use of excessive force. Nor has Plaintiff pleaded any facts suggesting that an alleged training deficiency *caused* his constitutional injury, for example by identifying "procedural manuals or training guides" or by "highlight[ing] relevant particular aspects of police training or supervision." *Marte,* 2010 WL 4176696, at \*3. The allegation that, three years after the incident in question took place, only 43% of officers who responded to polling stated that they received appropriate training to do their job well does not allow the Court to plausibly conclude that, at the time of the incident, the City's training as to the use of force during arrest was insufficient and that that insufficiency led to Plaintiff's injuries. *See Hunter v. City of New York,* 35 F.Supp.3d 310, 325–26 (E.D.N.Y.2014) (dismissing a *Monell* failure to train claim because the pleadings did not plausibly state a claim that there was "a specific deficiency in the city's training program and that the deficiency is closely related to [the plaintiff's] ultimate injury, such that it actually caused [the plaintiff's] constitutional deprivation" (internal quotation marks omitted)); *Triano, 895 F.Supp.2d at 539* (dismissing a *Monell* failure to train claim where the plaintiff "merely alleged that the [t]own fail[ed] to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train"); *Khanukayev v. City of New York,* No. 09–CV–6175, 2012 WL 3538729, at \*4 (S.D.N.Y. Aug.13, 2012) (dismissing a failure to train claim where "the complaint [does not] ... allege ... the manner in which there was a failure to train"); *Doe v. City of New York,* No. 09–CV–9895, 2012 WL 2900483, at \*2 (S.D.N.Y. July 2, 2012) ("The [a]mended [c]omplaint contains no facts elaborating on (or even theorizing as to) the defective nature of the NYPD training program, let alone an allegation as to how a defect in training or supervision caused her harm."); *Simms,* 2011 WL 4543051, at \*3 ("While this assertion does specify what type of training the officers lacked, it does not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency."); *Johnson,* 2011 WL 666161, at \*4 (dismissing a failure to train claim where plaintiff did not

plead "any facts that plausibly allege[d] a specific deficiency in the training or supervision program that accounts for deprivation of [his] constitutional rights" and "[did] not identify procedural manuals or training guides, nor [did he] highlight relevant particular aspects of police training or supervision" (internal quotation marks omitted)); *Brown v. City of New York,* No. 09–CV–2337, 2010 WL 4077925, at \*2 (S.D.N.Y. Oct.13, 2010) (dismissing a failure to train claim where the plaintiff "[did] not allege any ... specific deficiencies in the officers' training, nor [did] he allege any facts from which the court could infer that such ... deficiencies existed"); *Williams v. City of New York,* 690 F.Supp.2d 338, 345–46 (S.D.N.Y.2010) (dismissing a plaintiff's failure to train claim where the plaintiff's complaint "once mention[ed] the [c]ity's inadequate training program," but did "not set forth a single factual allegation relating to the program"). For the foregoing reasons, Plaintiff fails to state a claim against the City under *Monell.* However, the Court will give Plaintiff one last chance to plead a *Monell* claim against the City.

#### b. Claims against Defendant Ransom

**\*24** Plaintiff's PAC contains the following allegation against Defendant Ransom. The City Police Officers "gave chase to [P]laintiff in a number of police vehicles," and "[a]t some point soon thereafter, and prior to Plaintiff stopping his vehicle," Defendant Ransom joined the chase. (PAC ¶ 12.) That is the only allegation specifically referring to Defendant Ransom. However, the Complaint and PAC also contain a number of allegations against "the defendant police officers," a term defined in the Complaint as the City Police Officer Defendants and unknown police officers 1–5, (Compl.¶ 4), and not defined in the PAC. Plaintiff alleges that, after he pulled over, Defendant Maguire "opened the truck door and ordered his police dog to attack [P]laintiff," and Plaintiff was attacked by the police dog and punched by Defendant Maguire. (PAC ¶ 14.) Plaintiff further alleges that although he was "not resisting the police officers in any way," he was "dragged from the truck and thrown to the ground by [Defendant Maguire] and additional officers," and was "thereupon beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.* ¶ 15.) Then, after Plaintiff was handcuffed and secured, "the police dog was again ordered to attack" Plaintiff. (*Id.* ¶ 16.) Additionally, Plaintiff alleges that "the defendant police officers are liable for failing to intervene ... because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional

rights were being violated, and (3) the officers did not take reasonable steps to intervene." (*Id.* ¶ 39.)

In response to the Town's Motion To Dismiss, Plaintiff argues that Defendant Random "does not deny being present at the scene," and cites to Defendant Ransom's testimony at Plaintiff's criminal trial to establish his presence at the scene. (Pl.'s Mem. 11–13.) Plaintiff then argues that this is sufficient at the pleading stage because Plaintiff has sufficiently alleged that Defendant Ransom was present and Plaintiff need not plead the "specific involvement of each and every officer while he was being assaulted and bitten by a police dog [.]" (*Id.* at 12.) However, there is simply no basis for the Court to consider the testimony given at trial in the manner that Plaintiff would like. This testimony, attached as Exhibit B to Plaintiff's Memorandum in Opposition, is not attached to the PAC, nor is it integral to the PAC or incorporated by reference into the PAC. *See Rosenblum v. Thomson Reuters (Markets) L.L.C.,* 984 F.Supp.2d 141, 146 (S.D.N.Y.2013) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, ... documents incorporated by reference in the complaint [, and] a document, not incorporated by reference, where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (footnotes and internal quotation marks omitted)). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents[.]" *Bill Diodato Photography L.L.C. v. Avon Products, Inc.,* No. 12–CV–847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks omitted). "[T]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (internal quotation marks omitted). Here, Plaintiff clearly has notice of the document, since he is the one who submitted it to the Court. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 124 (S.D.N.Y.2010) ("[T]here is no dispute that, pursuant to the first prong of the integrality test, plaintiffs had 'actual notice' of the extraneous information since they enclosed the extrinsic documents with their opposition brief."). The Complaint and PAC make no reference whatsoever to Defendant Ransom's testimony at Plaintiff's criminal trial, and thus do not incorporate this document by reference. Moreover, there is no evidence that Plaintiff relied on this trial testimony in framing the Complaint or PAC. And, the fact that it was Plaintiff, himself, who submitted this document as an attachment to his opposition memorandum, counsels against the Court considering it. *Id.* at 122–23 (noting that "[c]ourts in [the Second] Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss" and collecting cases).

**\*25** Finally, the Court "may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Munno v. Town of Orangetown,* 391 F.Supp.2d 263, 268 (S.D.N.Y.2005). However, even if this trial testimony is appropriate for judicial notice, the Court would consider it "only to establish [its] existence and legal effect, or to determine what statements [it] contained not for the truth of the matters asserted." *Liang v. City of New York,* No. 10–CV–3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (alterations and internal quotation marks omitted) (quoting *Twine v. Four Unknown N.Y. Police Officers,* No. 10–CV–6622, 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12, 2012)); *see also Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) ("If the court takes judicial notice, it does so in order to determine *what* statements [the document] contained —but *again not for the truth of the matters asserted.*" (internal quotation marks omitted)).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted). There are two ways a plaintiff can establish personal involvement of a police officer in the use of excessive force. "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Vesterhalt v. City of New York,* 667 F.Supp.2d 292, 297 (S.D.N.Y.2009). Additionally, to be liable the officer must "observe[ ] or ha[ve] reason to know that an individual's constitutional right has been violated[.]" *Brooks v. County of Nassau,* ––– F.Supp.3d ––––, 2014 WL 5093277, at *5 (E.D.N.Y. Oct.9, 2014) (internal quotation marks omitted).

Plaintiff does not allege that Defendant Ransom directly participated in the assault, therefore the question is whether he sufficiently alleges that Defendant Ransom was present and failed to intercede, even though he had a reasonable opportunity to do so. First, Plaintiff's allegation that all "the

2015 WL 1379652

defendant police officers are liable for failing to intervene ...
because (1) the officers had a realistic opportunity to intervene
and prevent the harm, (2) a reasonable person in the officers'
position would have known that the plaintiff's constitutional
rights were being violated, and (3) the officers did not take
reasonable steps to intervene" is a conclusory allegation
that does nothing more than provide a formulaic recitation
of the elements of a cause of action, and is therefore not
entitled to the presumption of truth. (PAC ¶ 39.) *See Iqbal,*
*556 U.S. at 678* ("Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements,
do not suffice.... In keeping with [this] principle[ ] a court
considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth.");
*Twombly,* 550 U.S. at 555 ("[A] formulaic recitation of the
elements of a cause of action will not do."). To state a
claim against each individually named defendant, Plaintiff
must include allegations as to that defendant. *See Ochre*
*L.L.C. v. Rockwell Architecture Planning & Design, P.C.,* No.
12–CV–2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3,
2012) ("Where a complaint names multiple defendants, that
complaint must provide a plausible factual basis to distinguish
the conduct of each of the defendants."), *aff'd,* 530 F. App'x
19 (2d Cir.2013); *Appalachian Enters., Inc. v. ePayment*
*Solutions, Ltd.,* No. 01–CV–11502, 2004 WL 2813121, at *7
(S.D.N.Y. Dec.8, 2004) ("A plaintiff fails to satisfy Rule 8,
where the complaint lumps all the defendants together and
fails to distinguish their conduct because such allegations fail
to give adequate notice to the defendants as to what they did
wrong." (alterations and internal quotation marks omitted)).

**\*26** In a claim for excessive force or for failure to intervene
with respect to excessive force, courts in the Second Circuit
have allowed plaintiffs to use a flexible approach, recognizing
the difficulty that plaintiffs may have in pleading who did
what. For example, "[a] plaintiff need not establish who,
among a group of officers, directly participated in the attack
and who failed to intervene." *Jeffreys v. Rossi,* 275 F.Supp.2d
463, 474 (S.D.N.Y.2003), *aff'd sub nom. Jeffreys v. City of*
*New York,* 426 F.3d 549 (2d Cir.2005). However, this does
not eliminate Plaintiff's burden to allege facts supporting a
plausible inference of personal involvement by Defendant
Ransom. For example, it is sufficient to allege "who was
present during the assaults, and that these defendants *either*
directly participated in the excessive force *or* failed to
intervene." *Snoussi v. Bivona,* No. 05–CV–3133, 2010 WL
3924255, at *3 (E.D.N.Y. Feb. 17, 2010) (emphasis added),
*adopted by* 2010 WL 3924683 (E.D.N.Y. Sept.29, 2010). But,

a plaintiff fails to state a claim for which relief can be granted
if he does not make any factual allegations that any officer
"was present" or "had an opportunity to intercede." *K.D. ex*
*rel. Duncan v. White Plains Sch. Dist.,* 921 F.Supp.2d 197,
207 (S.D.N.Y.2013) (discussing failure to intervene in the
context of an alleged due process violation). In assessing the
sufficiency of Plaintiff's claims, the Court is also mindful that
the activities he describes—being handcuffed, thrown on the
ground, beaten, and attacked by a dog—"are likely to have
prevented [P]laintiff from identifying which of the defendant
officers specifically engaged in the bad acts." *Snoussi,* 2010
WL 3924255, at *3 (brackets and internal quotation marks
omitted).

Here, though, Plaintiff fails to meet this liberal standard
with respect to his allegations against Defendant Ransom.
Plaintiff merely pleads that Defendant Ransom joined the
police chase. (PAC ¶ 12.) Plaintiff does not sufficiently
plead personal involvement, because he does not even plead
that Defendant Ransom was present at the scene of the
alleged unconstitutional conduct, and therefore also does
not sufficiently plead that a reasonable person in Defendant
Ransom's position would know that Plaintiff's rights were
being violated and that Defendant Ransom had a reasonable
opportunity to intervene but failed to do so. Plaintiff argues
that Defendant Ransom was at the scene, relying not on
allegations in the Complaint or PAC but rather on a document
outside the pleadings that the Court is not permitted to
consider, and based on an inference he suggests that "[a]t no
point does Ransom claim that he left the scene, so he was
presumably also present when Plaintiff was thrown to the
ground and beaten, and attacked by the police dog a second
time while in handcuffs." (Pl.'s Mem. 12.) However, Plaintiff
never alleged that Defendant Ransom was at the scene. But,
in light of Plaintiff's citation to Defendant Ransom's trial
testimony, the Court will give Plaintiff one more opportunity
to amend his Complaint to include any additional allegations
against Defendant Ransom.

### III. Conclusion

**\*27** For the above reasons, the Town's Motion To Dismiss
is granted; the claims against the Town are dismissed with
prejudice; and the claims against Defendant Ransom are
dismissed without prejudice. The City's Motion To Dismiss
is granted in part and denied in part. In particular, the
claims against the City are dismissed without prejudice, but
Plaintiff may file his PAC against the City Police Officer

Defendants. Plaintiff shall properly serve the City Police Officer Defendants within 21 days of the date of this Opinion, or else face dismissal of the claims against those Defendants. Additionally, Plaintiff is given 21 days to file an amended complaint to supplement his allegations against Defendant Ransom and the City. The Clerk of the Court is respectfully requested to terminate the pending Motions. (*See* Dkt. Nos. 25, 29.)

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1379652

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2120518
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lafrancis GRAY–DAVIS; and Myrell Davis, Plaintiffs,
v.
State of NEW YORK; Paul Rigby, Senior Parole Officer;
Tammy Gronau, Parole Officer; Mr. Green, Parole
Officer; Mr. Maher, Parole Officer; Ms. Delaney, Parole
Officer; Mr. Fregoe, Parole Officer; Ms. Montford,
Supervisor Parole Officer; Robert Butera, Parole Officer;
Anthony I Annucci, Acting Comm'r of Dep't of Corr.
and Cmty. Supervision; Tinam. Stanford, Chair of
Bd. of Parole; Randy W. Blume, Assist. Comm'r of
Onondaga Cnty. Dep't of Corr.; Timothy H. Cowin,
Comm'r of Onondaga Cnty. Dep't of Corr.; Cnty. of
Onondaga; Onondaga Cnty. Dep't of Corr.; City of
Jamesville; City of Syracuse; Syracuse City Police
Dep't; John Doe Nos. 1–4, Parole Officers; John Doe
Nos. 5–15, Syracuse City Police Officers; and John
Doe 16, Chief of Syracuse City Police, Defendants.

No. 5:14–CV–1490 (GTS/TWD).
|
Signed May 5, 2015.

**Attorneys and Law Firms**

Lafrancis Gray–Davis, Syracuse, NY, pro se.

DeRoberts Law Firm, Jeffrey DeRoberts, Esq., of Counsel,
Syracuse, NY, for Plaintiff Myrell Davis.

## DECISION and ORDER

GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this civil rights action
filed by LaFrancis Gray–Davis and her minor son Myrell
Davis ("Plaintiffs"), against the above-captioned entities
and individuals ("Defendants") arising from two searches
by police and the institution of special conditions by
parole officers between December 2013 and April 2014,
is the Report–Recommendation of United States Magistrate
Thérèse Wiley Dancks recommending that certain of
Plaintiffs' claims be dismissed with prejudice, certain of the

claims be dismissed without prejudice (and with leave to
amend as authorized by the Court), and certain of the claims
survive the Court's initial review of Plaintiffs' Complaint.
(Dkt. No. 6.) Plaintiffs have not filed an objection to the
Report–Recommendation and the deadline in which to do so
has expired. (*See generally* Docket Sheet.)

When *no* objection is made to a report-recommendation, the
Court subjects that report-recommendation to only a *clear
error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes:
1983 Addition. When performing such a "clear error" review,
"the court need only satisfy itself that there is no clear error on
the face of the record in order to accept the recommendation."
*Id.: see also Batista v. Walker,* 94–CV–2826, 1995 WL
453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I
am permitted to adopt those sections of [a magistrate judge's]
report to which no specific objection is made, so long as
those sections are not facially erroneous.") (internal quotation
marks and citations omitted).

Here, based upon a review of this matter, the Court can find
no clear error in Magistrate Judge Dancks' thorough Report–
Recommendation. (Dkt. No. 6.) Magistrate Judge Dancks
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. (*Id.*) As a result,
the Report–Recommendation is accepted and adopted in its
entirety for the reasons stated therein.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 6) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are *DISMISSED* **with
prejudice** and **without leave to amend:**

(1) all claims against Defendant State of New York;

(2) all claims against Defendant Onondaga County
Department of Corrections;

(3) all claims against Defendant Syracuse City Police
Department;

(4) Plaintiffs' 42 U.S.C. § 1983 claims for money damages
against Defendants Annucci, Stanford, Rigby, Gronau,
Green, Maher, Delaney, Fregoe, Montford, Butera, and
John Doe Nos. 1–4;

(5) Plaintiffs' claim for violation of their Fifth and Ninth Amendment rights; and it is further

**ORDERED** that the following claims **shall be *DISMISSED* with prejudice** and without further Order of this Court **UNLESS,** within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiffs file an Amended Complaint correcting the pleading deficiencies referenced in Magistrate Judge Dancks' Report–Recommendation:

**\*2** (1) Plaintiffs' claims against Defendant County of Onondaga;

(2) Plaintiffs' claims against Defendant Hamlet of Jamesville (a/k/a City of Jamesville);

(3) Plaintiffs' claims against Defendant City of Syracuse;

(4) Plaintiffs' claims against Defendants Butera, Blume, Cowin and John Doe No. 16; and

(5) Plaintiffs' claims against Defendants Annucci and Stanford (**EXCEPT** for their 42 U.S.C. § 1983 claims for money damages against those two Defendants in their official capacities, which claims again are dismissed with prejudice and without leave to amend); and it is further

**ORDERED** that any Amended Complaint that Plaintiffs chose to file shall be a complete pleading, which will supersede their original Complaint in all respects, and may not incorporate any portion of the original Complaint by reference, in accordance with Local Rule 7.1(a)(4) of the District's Local Rules of Practice; and it is further

**ORDERED** that Plaintiffs' remaining claims—i.e., their claims against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford ("Remaining Defendants") for violation of Plaintiffs' First, Fourth and Fourteenth Amendment rights—**SURVIVE** the Court's initial review of the Complaint; and it is further

**ORDERED** that the District Court shall issue summonses, along with copies of the Complaint and General Order 25, to the United States Marshal for service upon the remaining Defendants; and it is further

**ORDERED** that counsel for the Remaining Defendants shall file a formal response to the surviving claims in the Complaint

in accordance with Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiffs shall take reasonable steps to identify Defendant John Doe Nos. 1–15 and, if necessary, make a motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that the Clerk of Court serve a copy of this Decision and Order upon Plaintiff LaFrancis Gray–Davis by regular mail.

### ORDER AND REPORT–RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Complaint of *pro se* Plaintiff LaFrancis Gray–Davis, on her own and on behalf of her son, Myrell Davis, was received for filing in the Northern District of New York on December 11, 2014, along with an application to proceed *in forma pauperis.* (Dkt. Nos. 1 and 2.) By Order of December 18, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis.* (Dkt. No. 4 at 2–3.) Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of her minor child, Myrell, *see Cheung v. Youth Orchestra Found., of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel, at least for her minor son. *Id.* at 3. Attorney Jeffrey DeRoberts, Esq. filed a Notice of Appearance on behalf of Myrell Davis on January 8, 2015, thereby removing the impediment to initial review of the Complaint. (Dkt. No. 5.)

### I. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

2015 WL 2120518

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous where either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## II. PLAINTIFF'S COMPLAINT

**\*4** Plaintiff met James D. Davis ("Davis") in July of 2009, when he was on parole supervision, and the couple had a child, Myrell Davis, in 2010. (Dkt. No. 1 ¶¶ at 5 and 6.) Davis was violated by parole supervision on September 22, 2011, and Defendant Senior Parole Officer Paul Rigby ("Rigby"), who allegedly had a vendetta against Plaintiff because of her association with Davis, acted to prevent Plaintiff and Davis from being married at the Onondaga County Justice Center in November of 2011. *Id.* at ¶¶ 7–8.

Plaintiff and Davis were married on November 12, 2012, while Davis was incarcerated, and on July 30, 2013, when Davis was about to be released, Plaintiff was informed by his parole officer, Defendant Ms. Montford ("Montford"), that she and her son and all family members were not permitted to have contact with Davis. *Id.* at ¶¶ 9–10. Included in the special conditions in the Certificate of Release to Parole Supervision signed by Davis on August 6, 2013, was the condition "17. I will not associate in any way or communicate by any means with ... Latesha Dexter and Lafrancis Gray without the permission of the P.O." *Id.* at p. 56. Included in a list of Special Conditions of Release to Parole Supervision in connection with Plaintiff's July 30, 2013, release, signed by Davis on February 24, 2014, were:

> 13(i): I will have no in person contact, or attempt to contact *Eric Roam, Latesha Dexter and/or LaFrancis Gray–Davis.* Either in person or members of their immediate family by means of letter, telephone, cell phone, third party, electronic means or any other methods without the knowledge and written permission of my parole officer. Failure to follow this rule is a violation of my parole in an important respect.

> 13(q): I will have contact with any children in common with *LaFrancis Gray–Davis* if court ordered only.

*Id.* at pp. 58, 60. Depending on Davis' parole officer, Plaintiff and Davis have at times been able to have contact with one

another and even share a home. Other times they have not. *Id.* at ¶ 12.

On Christmas Eve or Christmas day of 2013, Defendant parole officers John Doe Nos. 1 through 4 searched Plaintiff's home looking for Davis, whom they had reason to believe was there. *Id.* at ¶ 13. Davis was not in the house, and according to Plaintiff, because he was not paroled to her address and was not supposed to be there, the four Doe Defendants had no probable cause to invade her home and privacy and search her house. *Id.*

On March 11, 2014, at approximately 7:45 p.m., while Plaintiff, with Myrell in the car, was giving Davis a ride home, she was pulled over by Defendant Parole Officers Tammy Gronau ("Gronau"), Mr. Green ("Green"), Mr. Maher ("Maher"), Ms. Delaney ("Delaney"), and Mr. Fregoe ("Fregoe"), along with Defendant Syracuse Police Officers John Doe Nos. 5 though 15. *Id.* at ¶ 14. Defendants Gronau and Green searched Plaintiff's car and found several empty beer cans and a folding knife that Plaintiff claims belonged to her. Defendants also stated that Myrell was not in a child safety seat, which Plaintiff contends is untrue. *Id.* Davis was taken into custody. *Id.* According to Plaintiff, the only reason the vehicle was stopped was that she and her son were with Davis. *Id.*

**\*5** On April 1, 2014, Plaintiff received a letter from Defendant Randy W. Blume (Blume"), Assistant Commissioner of the Onondaga County Correctional Facility, stating that due to the special conditions prohibiting Davis from having contact with her and her son, he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility unless or until the conditions of parole were removed. *Id.* at ¶ 17.

## III. ANALYSIS

Plaintiff's Complaint contains ten causes of action for violation of Plaintiff and her son's right to privacy and freedom of association under the First Amendment; illegal search and seizure in violation of the Fourth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fifth Amendment; violation of Plaintiff and her son's right to privacy and other rights protected under the Ninth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fourteenth Amendment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence;

supervisory liability, including failure to train, supervise, and control employees, employers, agents and successors; and violation of 42 U.S.C. § 1983.[1] (Dkt. No. 1 at ¶¶ 19–101.) The allegations of wrongdoing by Defendants set forth in each of the causes of action appear to be virtually identical. *Id.*

[1]   42 U.S.C. § 1983 does not create any independent substantive rights, but rather serves as a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

### A. State of New York

Plaintiff has named the State of New York as a Defendant. The only allegations directed to the State in the Complaint are conclusory assertions of supervisory liability. (*See, e.g.,* Dkt. No. 1 at ¶ 23.) Plaintiff's claims against the State are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The bar precludes claims against the State for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on sovereign immunity grounds.

### B. Municipal Defendants

Plaintiff has named as Defendants the County of Onondaga, City of Jamesville,[2] and the City of Syracuse. The Onondaga County Department of Corrections and Syracuse City Police Department have also been named as Defendants. However, as explained in *Baptista v. Onondaga County Dep. of Corrections,* No. 9:04–CV–0600 (LEK/GHL), 2007 WL 911854, at * 5, 2007 U.S. Dist. LEXIS 20536, at * 13 (N.D.N.Y. Mar.22, 2007), the County of Onondaga Department of Corrections and the County of Onondaga "are one in the same the County of Onondaga, a municipal corporation of the State of New York ." Furthermore, "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (citing *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 606 (W.D.N.Y.1990); *see also Dexter v. City of Syracuse,* No. 5:14–CV–0363 (TJM/DEP), 2014 WL 2611384, at *4, 2014 U.S. Dist. LEXIS 80008, at *11 (N.D.N.Y. June 11, 2014). Therefore, any claims Plaintiff might have against the County of Onondaga Department

of Corrections and City of Syracuse Police Department are properly asserted against the County of Onondaga and City of Syracuse, respectively.

> 2    The Court takes judicial notice that Jamesville, New York is a hamlet located within the Town of DeWitt, not a city. (*See* http://www.townofdewitt.com/LivingDeWitt.aspx last visited on March 24, 2015.)

**\*6** Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012) (citing *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611), *cert denied,* —— U.S. ——, 134 S.Ct. 125 (2013); *see also Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection between the policy and the deprivation of his constitutional rights.") (citing *Oklahoma v. Tuttle,* 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) (plurality opinion).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County, the hamlet of Jamesville, or the City of Syracuse which resulted in the deprivation of her and her son's constitutional rights. A municipality may be liable for deprivation of constitutional rights under § 1983 with regard to policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, Plaintiff's conclusory allegations that Onondaga County, Jamesville, and the City of Syracuse failed to properly hire, supervise, and train subordinates, without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face. *See Trombley,* 550 U.S. at 570; *Hall v. Smith,* 170 F. App'x 105, 108 (11th

Cir.2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga, Jamesville, and the City of Syracuse without prejudice; and be dismissed with prejudice as against the Onondaga County Department of Corrections and the Syracuse City Police Department, given that any claims Plaintiff may be able to plead with regard to the two departments would be properly asserted against the County of Onondaga and City of Syracuse.

### C. Plaintiffs' Official Capacity Claims For Money Damages Against the State Official Defendants

**\*7** Plaintiffs have asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants. (Dkt. No. 1 at p. 9.) The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against New York Department of Correctional and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corrections Officers,* No. 99CIV.9555(JGK), 2000 WL 1154311, at \* 2, 2000 U.S. Dist. LEXIS 11531, at \* 7 (S.D.N.Y. Aug.14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."); *James v. Suffolk County Correctional Facility,* No. 13–CV–2344 (JFB)(SIL), 2014 WL 4659300, at \*4, 2014 U.S. Dist. LEXIS 131056, at \* 10–11 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred by the Eleventh Amendment).

Therefore, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants Anthony J. Annucci ("Annucci"), Acting Director of DOCCS, Tina M. Stanford ("Stanford"), Chair of the Board of Parole, and all of the Defendant Parole Officers, including Defendants John

2015 WL 2120518

Doe 1 through 4, in their official capacities be dismissed with prejudice on Eleventh Amendment grounds.

### D. Supervisory Liability

Defendants Annucci, Stanford, Tim Cowan ("Cowan"), Commissioner of the Onondaga County Department of Correction, and John Doe No. 16, Chief of the Syracuse City Police, have all been sued in their supervisory capacities by Plaintiff.[3] (*See, e.g.,* Dkt. No. 1 at ¶ 23.)[4] In the case of Defendants Annucci and Stanford, the subordinates include the Defendant Parole Officers, including Defendants John Doe 1 through 4. (Dkt. No. 1 at ¶ 23.) Blume is identified as Cowan's subordinate. *Id.* In the case of Defendant John Doe No. 16, the subordinates include Syracuse Police Officers Defendants John Doe Nos. 5 through 15. *Id.*

[3]   Plaintiff has recommended dismissal of Plaintiff's supervisory claims against the municipal Defendants under *Monell.*

[4]   Plaintiff has repeated the identical conclusory allegations of supervisory liability against the Defendants in each of her ten causes of action. (*See* Dkt. No. 1 at ¶¶ 23, 30, 38, 46, 54, 62, 69, 76, 83, 90.)

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*") "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*8** The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 maybe found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff has alleged that Defendants Annucci, Stanford, Cowan, and John Doe 16 failed to properly hire, oversee, supervise, train, and control their subordinates. (Dkt. No. 1 at ¶ 23.) Vague and conclusory claims that a supervisory official has failed to provide proper training and supervision or created a specific policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Plaintiff has also parroted each of the *Colon* factors as grounds for supervisory liability. *Id.* "Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts," present no factual support for a supervisory liability claim. *Eldridge v. Kenney,* No. 11–CV–6459–FPG, 2014 WL 2717982, at * 3, 2014 U.S. Dist. LEXIS 84437, at * 2–3 (W.D.N.Y. June 16, 2014).

In light of Plaintiff's failure to allege facts of a nonconlusory nature showing personal involvement by Annucci, Stanford, Cowan, and John Doe No. 16 in the alleged violations of Plaintiff and her son's constitutional rights, the Court recommends that Plaintiff's § 1983 claims be dismissed without prejudice as against those Defendants.

### E. Defendant Butera

Defendant Robert Butera (Butera") is identified as a Parole Officer in Plaintiff's Complaint. (Dkt. No. 1 at p. 4.) With the exception of Plaintiff's inclusion of Butera's name in the conclusory claims of wrongdoing in each of her causes of action, *id.* at ¶ 23, the Complaint is devoid of factual allegations regarding Butera. As noted above, personal involvement in a constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon,* 568 F.2d at 934; *see also Crichlow v. Fischer,* No. 12–cv–7774 (NSR), 2015 WL 678725, * 9, 2015 U.S. Dist. LEXIS 18812, at * 17 (S.D.N.Y. Feb. 17, 2015) (dismissing defendants from the case upon initial review under 28 U.S.C. § 1915(e) where the plaintiff made no factual allegations regarding personal involvement on their part in the violation of plaintiff's rights). The complete absence of factual allegations of wrongdoing by Bufera warrants dismissal of Plaintiff's state law claims as well. Therefore, the Court recommends that the case be dismissed without prejudice as against Defendant Butera.

### F. Defendant Blume

**\*9** The sole factual allegation in the Complaint against Defendant Blume, the Assistant Director of the Onondaga County Department of Corrections is that he informed Plaintiff that he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility due to the special conditions prohibiting Davis from having contact with her and her son unless and until the condition of parole was removed. *Id.* at ¶ 17. Inasmuch as there are no factual allegations indicating that Blume was doing anything more than complying with special conditions of release to parol supervision that had been imposed by DOCCS, the Court recommends that the case be dismissed without prejudice as against him.

### G. Plaintiff's Ninth Amendment Claim

Plaintiff claims that the Defendants violated her and her son's right to privacy and other rights guaranteed under the Ninth Amendment. (Dkt. No. 1 at ¶ ¶ 42–49.) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a "rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92–93 (2d Cir.2007) (Ninth Amendment is not an independent source of individual rights but a rule of construction). Therefore, to the extent Plaintiff is asserting a § 1983 claim for an independent violation of the

Ninth Amendment, the Court recommends that the claim be dismissed with prejudice as against all of the Defendants.

### H. Plaintiff's State Law Claims for Negligence and Intentional and Negligent Infliction of Emotional Distress

Plaintiff has included state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence against the Defendants for denying her and her son the benefits that arise from familial association, for subjecting them to the unreasonable search of her home and car, and, in the case of the municipal defendants and Annucci, Stanford, Cowin, and John Doe No. 16, for failing to properly supervise their subordinates.

#### 1. *Intentional Infliction of Emotional Distress*

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." *Bender v. City of N.Y.,* 78 F.3d 787, 790 (2d Cir.1996). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). The Court finds that the allegations in Plaintiff's Complaint do not show conduct making a plausible showing of intentional infliction of emotional distress by any of the Defendants and recommends that the claim be dismissed without prejudice as to all Defendants.

#### 2. *Negligence and Negligent Infliction of Emotional Distress*

**\*10** Although Plaintiff has alleged that the Parole Officer and Syracuse Police Department Defendants intentionally and/or negligently denied her and her son's right to association and subjected them to unreasonable searches and seizures, the factual allegations in the Complaint reveal that Plaintiff's claims are premised on intentional not negligent conduct. A claim for negligent infliction of emotional distress maybe established under either (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir.2000). Both theories require an act of negligence and physical injury or the threat of danger, either to the plaintiff or to a close family member. *Id.* To recover under the "bystander theory," the plaintiff must be "threatened with physical harm

as a result of the defendant's negligence" and "consequently suffer[ ] emotional injury from witnessing the death or serious bodily injury of a member of [his or her] immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1966). To recover under the "direct duty" theory, a plaintiff must suffer an emotional injury from defendant's breach of a duty which unreasonably endangered [his or her] own physical safety." *Id.*

The Court finds that Plaintiff's Complaint fails to allege facts stating a plausible claim for either negligence or negligent infliction of emotional distress against Defendants and recommends that the claim be dismissed without prejudice as against all of the Defendants.

### I. Plaintiff's Surviving Claims

Plaintiff's Complaint asserts claims for violation of her and her son's First Amendment right of liberty in their family life and Fourteenth Amendment due process right to intimate association [5] as a result of the imposition and enforcement of the special conditions of release to parole supervision that prevent Plaintiff and her son from being with Davis, as well as her Fourth Amendment right to be free from unreasonable searches and seizures in connection with the search of her home in December of 2013 and the traffic stop and search of her car on March 11, 2014. (Dkt. No. 1 at pp. 13, 18, and 41.)

[5]  Plaintiff has also asserted a due process claim under the Fifth Amendment. (Dkt. No. 1 at p. 21.) However, the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *see also Canfield v. Douglas County,* No. 14–cv– 00461–KMT, 2014 WL 7186749, at * 5, 2014 U.S. Dist. LEXIS 173224, at * 12–13 (D.Col. Dec.16, 2014) (Fifth Amendment deprivations such as those challenging due process rights to familial association with no allegation of federal involvement are not actionable under the Fifth Amendment).

Mindful of the Second Circuit's instruction to liberally construe a *pro se* plaintiff's pleadings, *see Sealed Plaintiff,* 537 F.3d at 191, the Court recommends that Plaintiff be permitted to pursue her and her son's First, Fourth, and Fourteenth Amendment claims (first, second and fifth causes

of action) against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, and John Doe Nos. 1–15.

The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that the case be dismissed with prejudice as against: (1) Defendant State of New York on sovereign immunity grounds; (2) Defendant Onondaga County Department of Corrections on the grounds it is one and the same with Defendant County of Onondaga; and (3) Defendant Syracuse City Police Department on the grounds that it is not an entity capable of being sued; and it is further

 *11  **RECOMMENDED** that the following claims be dismissed with prejudice: (1) Plaintiff's § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4 on Eleventh Amendment grounds; and (2) Plaintiff's claim for violation of her and her son's Fifth and Ninth Amendment rights for failure to state a claim; and it is further

**RECOMMENDED** that the case be dismissed for failure to state a claim, with leave to file an amended complaint as authorized by the District Court as against Defendants: (1) County of Onondaga; (2) Jamesville; (3) City of Syracuse; (4) Bufera; (5) Blume; (6) Cowin; (7) John Doe No. 16; and (8) Annucci and Stanford (except without leave to amend § 1983 official capacity claims for money damages); and it is further

**RECOMMENDED** that the District Court direct service on Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford of the surviving claims for violation of Plaintiff and her son's First, Fourth, and Fourteenth Amendment rights; and it is further

**RECOMMENDED** that Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford be required to file a formal response to the surviving claims as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff be directed to take reasonable steps to identify Defendants John Doe Nos. 1–15,

2015 WL 2120518

and, if necessary, make an appropriate motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, bv the Clerk.* Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report–Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with

*Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**\*12** Dated: March 27, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2120518

---

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 85 of 170

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

2017 WL 6520774
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl L. HAWTHORNE, Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

1:17-CV-00716 (GTS/TWD)

|

Signed 11/14/2017

**Attorneys and Law Firms**

DARRYL L. HAWTHORNE, 40 Anne Street, New York, New York 10038, Plaintiff, pro se.

## ORDER AND REPORT-RECOMMENDATION

Therese Wiley Dancks, United States Magistrate Judge

### I. INTRODUCTION

**\*1** Plaintiff's amended complaint in this *pro se* civil rights action brought under 42 U.S.C. § 1983 is before the Court for initial review. [1] (Dkt. No. 8.) Plaintiff, Darryl L. Hawthorne, originally commenced this action against the City of Albany; Albany Police Officers Devin Anderson, Sean Perkins, and Alex Cheban; and Albany Detectives John Norris and Tyson Ruecker. [2] (Dkt. No. 1.) Plaintiff has added Albany Police Sergeant Christ as a Defendant in his amended complaint. (Dkt. No. 8.)

[1] Plaintiff submitted his amended complaint to the Clerk on October 6, 2017. (Dkt. No. 8.) On November 6, 2017, Plaintiff submitted 179 pages of supplemental exhibits to the amended complaint. (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6.) The Court has treated the supplemental exhibits as a part of Plaintiff's amended complaint in its initial review.

[2] Plaintiff has identified Norris and Ruecker as police officers in both his original and amended complaints. (Dkt. Nos. 1 at 1; 8 at 1.) However, both Norris and Ruecker have been identified as detectives with the Albany Police Department in

Plaintiff's submissions. (Dkt. Nos. 8-2 at 1; 8-3 at 2.)

The claims that survived initial review of Plaintiff's original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) are: (1) Plaintiff's Fourth Amendment claims of unreasonable search and seizure, excessive force, and false arrest asserted against Anderson and Perkins; (2) Plaintiff's Fourteenth Amendment due process claim for deprivation of property asserted against Anderson and Perkins; and (3) Plaintiff's false arrest claim against Ruecker. [3] (Dkt. No. 7 at 3. [4])

[3] On initial review, the Court considered Plaintiff's claims that Defendants planted evidence and falsified documents as a part of his claim for false arrest. (*See* Dkt. No. 4 at 12.)

[4] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

The District Court dismissed Plaintiff's remaining claims on initial review, including: (1) Plaintiff's malicious prosecution claim against Anderson and Perkins; (2) Plaintiff's conspiracy claim against Ruecker; and (3) Plaintiff's claims against Cheban, Norris, and the City of Albany. (Dkt. No. 7 at 3.) The claims were dismissed without prejudice and with leave to amend. *Id.*

### II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)

Case 5:20-cv-01489-DNH-TWD Document 31 Filed 04/21/22 Page 86 of 170

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)
2017 WL 6520774

(citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. ANALYSIS OF PLAINTIFF'S AMENDED COMPLAINT

### A. Surviving Claims Against Anderson, Perkins, and Ruecker from Plaintiff's Original Complaint

In his amended complaint, Plaintiff has realleged the unreasonable search and seizure, excessive force, false arrest, and deprivation of property claims against Defendants Anderson and Perkins which survived the initial review of his original complaint. (Dkt. No. 8 at 14-15, 17-20.) Plaintiff has also realleged the false arrest claim against Ruecker that survived initial review. [5] *Id.* at 18-19.

5    The elements of a Fourth Amendment false arrest claim under § 1983 are: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

### B. Malicious Prosecution Claims Against Anderson, Perkins, and Ruecker

The elements of a Fourth Amendment malicious prosecution claim under § 1983 are substantially the same as the elements under New York law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003). To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013); *see also Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) ("[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.") (internal quotation marks omitted).

**\*3** Plaintiff's malicious prosecution claim against Anderson and Perkins was dismissed on initial review because his original complaint was devoid of allegations showing that Plaintiff had been arraigned on criminal charges, there had been a post arraignment seizure, he had been prosecuted on the charges, and he had obtained a favorable outcome. (Dkt. No. 4 at 13.) Plaintiff has included an amended malicious prosecution claim against Anderson and Perkins and added a

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

malicious prosecution claim against Ruecker in his amended complaint. (Dkt. No. 8 at 14, 19.)

Plaintiff was arraigned on charges of criminal possession of a controlled substance and false impersonation the day following his arrest. *Id.* at 9. The trespass charge against him was dismissed by the court, and Plaintiff was released on his own recognizance. *Id.* Plaintiff was indicted on charges of criminal possession of a controlled substance in the third degree, a class B felony (N.Y. Penal Law § 220.16.16(1)) and criminal possession of a controlled substance in the fourth degree, a class C felony (N.Y. Penal Law § 220.16.09(1)) on June 19, 2005. (Dkt. No. 8-2 at 30-31.) The false impersonation charge was dismissed before trial. (Dkt. No. 8 at 10.) Plaintiff had a jury trial on the criminal possession charges in April of 2016 and was found not guilty by the jury. *Id.*; Dkt. No. 8-3 at 133-34.

Plaintiff was remanded into custody during the trial because he arrived late for jury selection. (Dkt. No. 8 at 10.) According to Plaintiff, the Judge remanded him because she and the prosecution believed they would have a better chance of having Plaintiff plead guilty if he were in jail and would have a better chance of obtaining a guilty verdict if the jury saw him in a jail jumpsuit. (Dkt. No. 8 at 11.)

The Court finds Plaintiff has alleged facts plausibly stating a claim for malicious prosecution under New York law. It is less clear whether being held in custody during his trial is sufficient for Plaintiff to satisfy the requirement of a post-arraignment seizure for a § 1983 malicious prosecution claim. Nonetheless, given that Plaintiff has adequately plead a state law malicious prosecution claim over which the District Court may elect to exercise supplemental jurisdiction and may be able to establish a malicious prosecution claim under § 1983, the Court recommends that Defendants Anderson, Perkins, and Ruecker be required to respond to Plaintiff's malicious prosecution claims.

### C. John Norris

Norris was named as a Defendant in Plaintiff's original complaint, and the Court recommended dismissal because there were no factual allegations in the complaint regarding Norris. (Dkt. No. 4 at 16.) In his amended complaint, Plaintiff alleges after he was strip searched at the precinct, Detectives Ruecker and Norris appeared "with sinister looks and smiles on their faces." (Dkt. No. 8 at 8.) They huddled with Anderson and Perkins whispering and the four then came over and told Plaintiff he was being charged with possession of crack

cocaine. *Id.* Plaintiff alleges he turned to Anderson and said "you guys never found any drugs on me," and Anderson responded "well unless you have information about drugs or people that's (sic) buying or selling drugs, you're going to jail for drug possession." *Id.* Ruecker and Norris allegedly took Plaintiff for questioning. *Id.* Plaintiff claims Norris told him "the crack we have belongs to you. If you want to change that then you need to give us information about drugs in Albany and down in New York City, and individuals bringing drugs from New York City and other cities/states to Albany." *Id.* at 8-9. According to Plaintiff, he was charged with possession of a controlled substance, false impersonation, and trespass after denying any knowledge about drugs and refusing to be interrogated. (Dkt. No. 8 at 8-9.)

**\*4** Plaintiff has asserted § 1983 claims against Norris for false arrest and malicious prosecution, with both claims involving the alleged planting of drugs and the falsification of documents in completing the DD5 on the confidential informant who allegedly provided the information leading to Plaintiff's arrest. *Id.* at 20. Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings be liberally construed, *see Sealed Plaintiff,* 537 F.3d 191, the Court recommends that Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

### D. Sergeant Christ

As noted above, Christ is newly named as a Defendant in Plaintiff's amended complaint. At Plaintiff's criminal trial, Anderson testified Christ was the booking sergeant at the time Plaintiff was brought to the precinct, and any time an officer goes into central booking, he or she has to advise the booking sergeant what is going on. (Dkt. No. 8-3 at 53.) Plaintiff alleges when Christ recognized him from an arrest in 2009, in which Anderson and Perkins had also planted crack cocaine on him and Christ had taken $3,000 from him, Christ allowed Plaintiff to be strip searched and subjected to an anal cavity search at the precinct. (Dkt. No. 8 at 17.) In his amended complaint, Plaintiff claims Christ was present during Plaintiff's strip and anal cavity searches and was at the precinct during his interrogation. (Dkt. No. 8 at 16.)

According to Plaintiff, Christ not only failed to supervise Anderson, Perkins, Ruecker, and Norris, but joined them in their wrongful conduct, including Plaintiff's false arrest and planting the drugs for which Plaintiff was charged. (Dkt. No. 8 at 16.) Plaintiff further alleges Christ failed to supervise Anderson while he was in the evidence room and while doing

Case 5:20-cv-01489-DNH-TWD Document 31 Filed 04/21/22 Page 88 of 170

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

drug testing, and Christ documented Plaintiff as having only $776 and kept the remaining $3,224. *Id.*

While recognizing that the factual allegations against Christ are somewhat sparse, the Court nonetheless finds that in light of Plaintiff's *pro se* status and the Court's duty to liberally construe his amended complaint, Christ should be required to respond to Plaintiff's § 1983 claims for false arrest and violation of Plaintiff's due process claim for deprivation of property in connection with the $3,000 he claims was taken by Christ.

### E. Alex Cheban

The Court recommended dismissal of Plaintiff's original complaint against Cheban because the sole factual allegations against him were that he was contacted by Anderson and Perkins to drive Plaintiff to the precinct and patted Plaintiff down before transporting him there. (Dkt. No. 4 at 11.)

Plaintiff's claim against Cheban relates to the alleged discovery of a plastic bag containing crack cocaine under the back seat of the car in which Cheban had transported Plaintiff to the precinct. [6] According to Anderson's trial testimony, he and Perkins did not strip search and conduct an anal cavity search on Plaintiff at Capitol Green as Plaintiff claims. (Dkt. No. 8-3 at 45-49, 74.) Anderson testified that they did search Plaintiff, including checking the several layers of clothing being worn by Plaintiff. *Id.* According to Anderson, while searching Plaintiff at Capitol Green, he saw a part of a plastic bag between Plaintiff's buttocks. *Id.* He then called for Cheban to transport Plaintiff to the precinct where he could be strip searched. *Id.*

> [6] Plaintiff has included allegations in his amended complaint that Cheban began to drive off as Plaintiff was alighting. (Dkt. No. 8 at 6.) However, Plaintiff has not alleged any injury as a result and has not stated a claim for negligence or an intentional tort.

**\*5** When no plastic bag was found during Plaintiff's strip and anal cavity searches at the precinct, Cheban was called back to the precinct so the car in which Plaintiff had been transported could be searched. *Id.* at 53-55. Anderson testified he found the plastic bag he had seen when he searched Plaintiff underneath the back seat where Plaintiff had been sitting. *Id.* at 56-57. Cheban testified he saw Perkins take the bag of drugs from under the backseat of the car where Plaintiff had been sitting. *Id.* at 99-100. According to Cheban,

he checked the interior of the car when he went on duty but did not check the back of the car after Plaintiff got out. *Id.*

Plaintiff claims Cheban was involved in planting the drugs under the back seat. (Dkt. No. 8 at 16.) The Court has construed Plaintiff's planting of drugs allegation as a part of Plaintiff's claim for false arrest against Anderson, Perkins, Ruecker, Christ, and Norris and finds that liberally construed, Plaintiff's amended complaint can be read to state claims for false arrest and malicious prosecution against Cheban for purposes of initial review. *See, e.g.*, *Paige-Bey v. City of New York*, No. 13-cv-7300 (SLT) (RER), 2016 WL 7217197, at *7-8 (E.D.N.Y. Dec. 12, 2016) [7] (allegations police officer planted evidence and perpetuated false testimony at trial sufficient to meet first element of a malicious prosecution claim at motion to dismiss stage).

> [7] Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Therefore, the Court recommends Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

### F. City of Albany

Plaintiff named the City of Albany as a Defendant in his original complaint based upon a claim that the City engaged in negligent hiring, retention, and training of it agents, servants, and employees, including the Defendant members of the Albany Police Department. (Dkt. No. 1 at 6.) The Court recommended dismissal of the claim against the City on the grounds that Plaintiff's complaint was devoid of the requisite factual allegations to support his claim (Dkt. No. 4 at 17-18), and Judge Suddaby adopted the recommendation. (Dkt. No. 7 at 2-3.)

Plaintiff, again relying solely on conclusory assertions, has not corrected the deficiencies in his claim against the City of Albany for negligent hiring, retention, and training. (*See* Dkt. No. 8 at 13.) *See* *Gray-Davis v. New York*, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (conclusory allegations of failure to properly hire, train, and supervise municipal employees "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fail to state a claim against [a municipality] that is plausible on its face.")

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 89 of 170

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

Plaintiff has added a supervisory liability claim against the City of Albany for the actions of the Defendants. (Dkt. No. 8 at 13.) However, a municipality may not be held liable under § 1983 based on the theory of *respondeat superior, see Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 691 (1978), and Plaintiff has failed to allege facts showing the deprivation of his rights was caused by a governmental custom, policy, or usage of the City of Albany. *Id.* at 690-91.

In light of the foregoing, the Court recommends the amended complaint be dismissed against the City of Albany for failure to state a claim. Because Plaintiff has already been given the opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if Plaintiff were given another opportunity to amend, *see Gomez,* 171 F.3d at 795, the Court recommends that the dismissal against the City of Albany be with prejudice.

**\*6 ACCORDINGLY**, it is hereby

**ORDERED** that the supplemental exhibits to the amended complaint submitted by Plaintiff (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6) be added to Plaintiff's amended complaint (Dkt. No. 8) and that the amended complaint and supplemental exhibits together be accepted as the operative pleading in the case; and it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 8) be **DISMISSED WITH PREJUDICE** against Defendant City of Albany; and it is further

**RECOMMENDED** that Defendants Anderson and Perkins be required to respond to Plaintiff's claims for the unreasonable search and seizure, excessive force, false arrest, and malicious prosecution; and his due process claim for deprivation of property alleged in the amended complaint (Dkt. No. 8.); and it is further

**RECOMMENDED** that Defendants Ruecker, Norris, and Cheban be required to respond to Plaintiff's claims for the false arrest and malicious prosecution claims alleged in the amended complaint (Dkt. No. 8); and it is further

**RECOMMENDED** that Defendant Christ be required to respond to Plaintiff's claim for false arrest, and his due claim for deprivation of property alleged in the amended complaint (Dkt. No. 8); and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8]    If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6520774

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 90 of 170

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

## *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

***1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

### II. *Background*

#### A. *Facts* [1]

[1] The facts are presented in the light most favorable to plaintiff.

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

#### B. *Procedural History*

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss, (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth

Case 5:20-cv-01489-DNH-TWD  Document 31  Filed 04/21/22  Page 91 of 170

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476

and Fourteenth Amendments due to deliberate indifference; (2) a *Monell* [2] claim against the City; (3) negligence; (4) a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

[2]  See *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### III. *Standard of Review*

**\*2**  The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

#### A. *Preliminary Matters*

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at *6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3**  The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at *3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 92 of 170

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476

been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

**B.** *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.*, the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

**C.** *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to

protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see Pena v. DePrisco,* 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin,* 577 F.3d at 428 (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena,* 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis,* 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 93 of 170

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476

victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

[3]    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." *Okin,* 577 F.3d at 428.

*5    The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite

to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

*6    Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability

claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at *10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014).

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby

**DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 673872
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard GUERRERO, Plaintiff,

v.

CITY OF NEW YORK and Does 1–10, Defendants.

No. 12 Civ. 2916.
|
Feb. 25, 2013.

**Attorneys and Law Firms**

Law Office of John M. Lambros, by: John M. Lambros, Esq., New York, NY, for Plaintiff.

Michael A. Cardozo, Corporation Counsel of the City of New York, by: Uriel Abt, Esq., New York, NY, for Defendant.

*OPINION*

SWEET, District Judge.

 **\*1** The defendant City of New York ("City" or "Defendant") has moved to dismiss the Amended Complaint ("AC") of plaintiff Richard Guerrero ("Guerrero" or "Plaintiff") pursuant to Fed.R.Civ.P. 12(b)(6) ("12(b)(6)"). Upon the conclusions set forth below, the City's motion is granted and the AC is dismissed with leave granted to replead within twenty days.

**Prior Proceedings**

On April 4, 2012, Guerrero filed the instant lawsuit against the City of New York alleging various state and federal claims arising out of an arrest that occurred on December 10, 2010. On July 23, 2012, Guerrero filed the AC.

As alleged in the AC, on December 10, 2010, Guerrero was involved in an altercation at a night club. AC ¶ 9. The other individuals involved in the altercation threatened to call the police, and subsequently did so. *Id.* The police arrived and arrested Guerrero (referred to hereinafter as the "First Arrest"). *Id.* After about a year, the criminal charges against Guerrero stemming from the First Arrest were dismissed. *Id.*

On July 25, 2011, Guerrero was arrested by two plainclothes police officers as he was leaving Queens Court, where he had appeared in an unrelated matter (referred to hereinafter as the "Second Arrest" and, collectively with the First Arrest, the "Arrests"). *Id.* ¶ 11. One of the arresting officers informed Guerrero that his arrest was due to a complaint made by an N.Y.P.D. traffic agent, who accused Guerrero and two other individuals of assaulting him or her at 5:30 A.M. on July 22, 2011. *Id.* Guerrero contends that he was in the hospital at that time. *Id.* The criminal charges against Guerrero stemming from the Second Arrest were eventually dismissed. *Id.*

**The Rule 12(b)(6) Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *County of Suffolk, New York v. First Am. Real Estate Solutions,* 261 F.3d 179, 187 (2d Cir.2001) (*quoting Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808 (1996)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

**Guerrero's § 1983 Claim Is Dismissed**

Guerrero asserts a claim under 42 U.S.C. § 1983 (" § 1983") against the City based upon alleged constitutional violations committed by the police officers who were involved in the Arrests. However, Guerrero has failed to allege a viable basis for the City's liability under § 1983, and has likewise failed to allege any underlying constitutional violations. Accordingly, Guerrero fails to state a § 1983 claim against the City.

*A. Guerrero Fails to Allege Facts Providing a Viable Basis for Monell Liability*

 **\*2** A municipality can only be held liable under 42 U.S.C. § 1983 in the manner set forth in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), and its progeny, and may not be held

liable under § 1983 on a theory of *respondeat superior*. *Nagle v. Marron,* 663 F.3d 100, 116 (2d Cir.2011).

In order to prevail on a § 1983 claim against a municipality, a plaintiff must show that the municipality itself caused the alleged constitutional deprivation. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). Guerrero must therefore establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." *Monell,* 436 U.S. at 694. Accordingly, in order to make a *Monell* claim, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries .... Second, the plaintiff must establish a casual connection-an 'affirmative link'—between the policy and deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985), *cert. denied* 480 U .S. 916 (1987) (*quoting Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n. 8 (1985)).

A municipal policy or custom for purposes of *Monell* liability can be established by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Bennerson v. City of New York,* No. 03 Civ. 10182, 2004 WL 9021667241, at *4 (S.D.N.Y. Apr. 28, 2004) (internal citations omitted).

At the pleading stage, the "the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Za hra v. Town of Southold,* 48 F.2d 674, 685 (2d Cir.1995); *see also Brodeur v. City of New York,* No. 99 Civ. 651(WHP), 2002 WL 424688, at *6 (S.D .N.Y. Mar. 18, 2002) (dismissing complaint against City that "flatly asserts" the existence of a policy but contains no "factual allegations sufficient to establish that a municipal policy or custom cased [plaintiff]'s alleged injury"). Indeed, while "[i]t is questionable whether the boilerplate *Monell* claim often included in many § 1983 cases ... was ever sufficient to state a claim upon which relief could be granted[,][i]n light of [*Iqbal* and *Twombly, supra* ], it is now clear that such boilerplate claims do not rise to the level of plausibility" required to state a viable *Monell* claim. *Santiago v. City of New York,* No. 09 Civ. 0856(BMC), 2009 WL 2734667, at *3 (E.D.N.Y. Aug. 25, 2009).

**\*3** The AC contains only boilerplate assertions of a municipal policy or custom, *see* AC ¶¶ 14–15, 17–18, alleging that "Plaintiff was injured by defendants because their acts were perpetrated based on custom, usage, patterns, and policies instituted by the municipal policymakers and resulting in violations of Plaintiff's civil rights," *id.* ¶ 15, without offering any accompanying factual support. As set forth above, such conclusory allegations are insufficient to state a claim for *Monell* liability.

Moreover, the two Arrests of which Guerrero complains do not, in and of themselves, suffice to state a municipal policy or custom. *Giaccio, 502 F.Supp.2d at 389.* Each arrest is factually distinct from the other, and Guerrero fails to establish any common causal thread between the two that would support a theory of *Monell* liability. Guerrero has not alleged what municipal policy or custom he believes led to his arrests, and has failed to set forth which of the four theories of *Monell* liability is the basis for the City's liability.

Accordingly, the AC does not allege facts that sufficient to make out *Monell* claim against the City of New York under any theory of liability.[1]

[1]    In an apparent effort to state a *Monell* claim under the failure-to-train prong set forth in *City of Canton v. Harris,* 489 U.S. 378 (1989), the AC refers to a newspaper article (the "Article") that suggests that NYPD does not keep statistics on lawsuits in which it is a defendant. AC at ¶ 17. However, no inference can be drawn from the Article with respect NYPD training policies, and the Article certainly does not establish the requisite "affirmative link" between

the issues it discusses and the circumstances of Plaintiff's arrests. *See Tuttle,* 471 U.S. at 823 ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Accordingly, to the extent that Guerrero seeks to assert a failure-to-train *Monell* claim based upon the Article, such a claim is unavailing.

*B. Guerrero Fails to Allege an Underlying Violation*
"*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006). Accordingly, in order for Guerrero to state a viable § 1983 claim, he must allege an underlying violation that "deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pritchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994).

To satisfy this pleading requirement, Guerrero alleges violation of his Fourth Amendment rights due to false arrest and use of excessive force. AC ¶¶ 9–11, 19–20. However, Guerrero fails to adequately plead any type of Fourth Amendment violation.

*(i) Guerrero Fails to State a Claim for False Arrest*
The elements for a § 1983 claim premised on a false arrest claim are substantially similar to the elements necessary to state a claim for false arrest under New York law. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (internal citations omitted), Thus, in order to state a § 1983 claim premised upon a false arrest, a plaintiff must allege that; (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant,* 101 F.3d at 853 (*quoting Broughton v. State,* 37 N.Y.2d 451, 456 (1975). An arrest pursuant to probable cause is privileged; thus, the existence of probable cause is a complete defense to an action for false arrest under either state law or § 1983. *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir.1999).

**\*4** In addition, when a victim complains to the police that a crime has been committed, probable cause to arrest an identified perpetrator exists absent a reason to doubt the

complaining victim. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995).

In cases where a plaintiff attempts to plead false arrest despite the existence of a complaining victim or witness, the plaintiff must, at the very least, allege facts tending to show that the victim's veracity should have been questioned. *See, e.g., Khaja–Moinuddin v. City of New York,* No. 09 Civ. 646(CBA), 2010 WL 3861003, at \*5–6 (Sept. 28, 2010).

Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti,* 124 F.3d at 128. This is because, "[i]t is up to the fact finder to determine whether a defendant's story holds water, not the arresting officer." *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989). Thus, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States,* 25 F.3d 98, 103 (2d Cir.1994).

Here, Guerrero has alleged that he was arrested due to the complaints of victims or witnesses. With regard to the First Arrest, Guerrero contends that the police were called by either the individuals with whom he had an altercation or by witnesses to that altercation. *See* AC ¶ 9; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) ( "Pl.Mem.Opp.") at 2–3. With regard to the Second Arrest, Guerrero alleged that he was arrested based on the accusations of the traffic agent who was purportedly the victim of the assault. AC ¶ 11. Moreover, Guerrero has made no allegation-with regard to *either* arrest-that the arresting officers had reason to doubt the complaints leading to the Arrests. [2] Accordingly, even if Guerrero's allegations are accepted as true and all inferences are drawn in his favor, it is evident that the officers responsible for both of the Arrests had probable cause to arrest Guerrero, and therefore Guerrero fails to state a viable claim for false arrest. [3]

[2]     Though Guerrero contends in the AC that he could not have committed the assault that precipitated the Second Arrest because he was in the hospital at the time of the alleged assault, Guerrero does not allege that he made such a contention to the arresting officers. *See* AC ¶ 11. Accordingly, there is no

allegation that the officers who were responsible for the Second Arrest had reason to doubt the criminal complaint that had been made against Guerrero. It should be noted that even if Guerrero had included such an allegation in the complaint, it would not necessarily mean that the arresting officers did not have probable cause, but rather the inclusion of such an allegation would have simply necessitated an analysis as to whether it was reasonable for the officers to arrest Guerrero despite his claim of being hospitalized at the time of the complained-of assault on the traffic officer. However, since Guerrero made no such allegation in the AC, the existence of probable cause can be assumed without delving into such an analysis.

3    In addition, to the extent that Guerrero is basing his § 1983 claim on an allegedly unreasonable search, *see* AC ¶ 9, this claim fails as well, because a search incident to a lawful arrest is *per se* reasonable. *Arizona v. Gant,* 556 U.S. 332, 338 (2009).

*(ii) Guerrero Fails to State a Claim for Excessive Force*
Guerrero has also failed to adequately allege a claim for excessive force. "Not every push or shove amounts to a Fourth Amendment violation. Indeed, a de minimus use of force will rarely suffice to state a Constitutional claim. Further, a plaintiff must allege that he sustained an injury to maintain an excessive force claim." *Acosta v. City of New York,* No. 11 Civ. 856(KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (quotations and citations omitted) (dismissing excessive force claim where plaintiff alleged that he was punched in the chest and thrown on the ground but did not allege any injury).

**\*5** With respect to the First Arrest, Guerrero alleged that his handcuffs were too tight. AC ¶ 9. Such an allegation alone does not state a claim for excessive force. *See, e.g., Wims v. New York City Police Dept.,* No. 10 Civ. 6128(PKC), 2011 WL 2946369 at *5 ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."); *Wilder v. Village of Amityville,* 288 F.Supp.2d 341, 344 (E.D.N.Y.2003) (allegation of tight handcuffs resulting in twenty-four hours of wrist inflammation and soreness does not rise to the level of excessive force).

With respect to the Second Arrest, Guerrero alleged that he was "physically abused," that the officers "threw him around like a toy," and that he was thrown into the back

of a police vehicle. AC ¶ 11. However, Guerrero alleged no injury stemming from these acts other than claiming to have "suffered mental and emotional harm." AC ¶ 32. Such a conclusory assertion, unaccompanied by allegations of a specific or identifiable mental injury, is an insufficient basis for an excessive force claim. Wims, 2011 WL 2943639, at *5.

### Guerrero's State Law Claims Are Dismissed
New York General Municipal Law 50–i(l) mandates that

> [n]o action or special proceeding shall be prosecuted or maintained against a city ... unless, (a) a notice of claim shall have been made and served upon the city ... in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based.

N.Y. Gen. Mun. L. 50–i(1) ("Rule 50–i(1)"). In addition, the required notice of claim must be filed within ninety days after the claim arises. N.Y. Gen. Mun. L. 50–e(1)(a). "The burden on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath v. Daniel,* 423 F.Supp.2d 421, 4 (S.D.N .Y.2006). In addition, "[t]he appropriate remedy for failure by the plaintiff to comply with [the][sic] statutory notice of claim requirement is dismissal of the action, even if the claim is meritorious." *Faruki v. City of New York,* No. 10 Civ. 9614(LAP), 2012 WL 1085533, at *10 (S.D.N.Y. Mar. 30, 2012) (quotation and citation omitted).

Guerrero's state law claims against the City suffer from several fatal procedural defects. First, Guerrero has not alleged that a notice of claim was filed with respect to either Arrest as required by Rule 50–i(1)(a), and moreover has failed to make the allegation required by Rule 50–i(1)(b) that "thirty days have elapsed since the service of [a notice of claim] and that adjustment or payment thereof has been neglected

or refused." Indeed, it does not appear that a notice of claim was ever filed with respect to the First Arrest, so Guerrero is barred from asserting state law claims premised upon events that occurred in connection to that event. *Faruki,* 2012 WL 1085533, at *10. In addition, even if a notice of claim had been filed with respect to Guerrero's state law claims arising from the First Arrest, such claims would nonetheless be time-barred since they were first asserted on April 4, 2012, which will over one year and ninety days after the date of the First Arrest, which is December 10, 2010. *See* Rule 50–i(1)(c).

**\*6** With respect to the Second Arrest, Guerrero does appear to have filed a notice of claim with the City, *see* Declaration of Uriel B. Abt in Support of Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6), Ex. B,[4] but the filing, which was made on March 2, 2012, came long after the expiration of the 90–day deadline mandated by N.Y. Gen. Mun. L. 50–e(1)(a). Accordingly, Guerrero's state-law claims arising from the Second Arrest are also time-barred pursuant to N.Y. Gen. Mun. L. 50–e.

[4]    Although Guerrero did not attach this document to his pleading, notice may nonetheless be taken of it because it is a document "either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Gray v. City of New York,* No. 10 Civ. 3039(SLT)(CLP), 2012 WL 947802, at *10 (E.D.N.Y. Mar. 20, 2012).

Guerrero has contended that the notice of claim filed with respect to the Second Arrest was not untimely because it was filed within 90 days of the dismissal of the criminal action stemming from the Second Arrest. Pl. Mem. Opp. at 10. However, the operative date for calculating the 90–day deadline is not the date upon which the charge was dismissed, but rather the date upon which Guerrero was released from

custody. *See Bennett v. City of New York,* 204 A.D.2d 587, 587 (N.Y.App.Div.1994). Guerrero was released from custody on or about July 25, 2011, AC ¶ 11, so the 90–day deadline for submitting a notice of claim premised upon the Second Arrest expired at the end of October 2011, more than four months prior to Guerrero's filing of the notice.[5]

[5]    To the extent that Guerrero attempts to plead an assault and battery claim stemming from the Second Arrest, that claim is **similarly time-barred. An assault and battery claim** arising from the Second Arrest would have accrued on or about July 25, 2011, which was Guerrero's final day in custody, *see Lettis v. U.S. Postal Serv.,* 39 F, Supp.2d 181, 204–05 (E.D.N.Y.1998), meaning that the 90–day period for filing a notice of assault and battery claims stemming from the Second Arrest elapsed in late October 2011.

Since Guerrero's state law claims against the City arising from the First and Second Arrests are procedurally defective and untimely, dismissal of those claims is warranted on that basis alone. *Faruki,* 2012 WL 108553, at *10.

### Conclusion

Based upon the conclusions set forth above, the City's motion to dismiss is granted and the AC is dismissed with leave to replead within twenty days.

It is so ordered.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 673872

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 4543051
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Reginald SIMMS, Plaintiff,

v.

THE CITY OF NEW YORK, John Doe and
Jane Doe, the names of the last defendants being
fictitious, the true names of the defendants
being unknown to the plaintiffs, Defendants.

No. 10–CV–3420 (NGG)(RML).
|
Sept. 28, 2011.

**Attorneys and Law Firms**

Osondu O. Anyadike, Ugochukwu Uzoh, Ugo Uzoh, P.C., Brooklyn, NY, for Plaintiff.

Brian Jeremy Farrar, New York Law Dept., New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

NICHOLAS G. GARAUFIS, District Judge.

**\*1** Plaintiff Reginald Simms ("Simms") objects to the entirety of the Report and Recommendation ("R & R") (Docket Entry # 13) of Magistrate Judge Robert Levy recommending that his complaint against the City of New York ("City") be dismissed for failure to state a claim upon which relief can be granted. [1] (Docket Entry # 16.) For the following reasons, the court agrees with Judge Levy that Simms's complaint fails to allege a plausible claim for relief under 42 U.S.C. § 1983, and grants the City's motion to dismiss (Docket Entry # 6) with respect to that claim. That done, the court declines to continue to exercise supplemental jurisdiction over Simms's remaining state-law claims, which are dismissed without prejudice.

[1]     In oral argument before Judge Levy, Simms withdrew his claims against the other named defendants, unknown police officers referred to as John Doe and Jane Doe. (*See* Tr. of Oral Argument (Docket Entry # 12) at 3–5.)

**I. BACKGROUND**

On October 14, 2010, Simms filed an amended complaint ("Complaint") raising claims against the City under 42 U.S.C. § 1983 and several provisions of the New York State Constitution. (Docket Entry # 4.) He alleges that certain acts by the New York City Police Department and the Kings County District Attorney's Office ("D.A.'s Office") violated a number of his individual rights secured by the United States and New York constitutions. Specifically, Simms alleges that he was maliciously prosecuted for a burglary he did not commit. [2] (Am.Compl.¶ 23.) He asserts that he was arrested by the police in Brooklyn without probable cause; that the police lied to the D.A.'s Office about the circumstances surrounding his arrest; and that, based on this information, the D.A's Office went forward with a prosecution before eventually dropping the case in July 2007. (Am.Compl.¶¶ 9, 10, 12, 16, 17, 20.) Simms alleges that this malicious prosecution resulted from the City's failure to properly train its police officers and prosecutors, and that such failure is endemic. (Am.Compl.¶¶ 27–33.) Simms claims that he was harmed in various ways by the ordeal and seeks relief in the form of compensatory and punitive damages. (Am.Compl.¶¶ 21, 41.)

[2]     The Complaint also alleges that Simms was falsely arrested, but Simms conceded at oral argument before Judge Levy that this claim is time-barred by the applicable statute of limitations. (*See* Tr. of Oral Argument at 4.)

The City moved to dismiss the Complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure on November 24, 2010, and court referred the motion to Judge Levy for a report and recommendation. (*See* Docket Entry of Sept. 23, 2010.) On May 19, 2011, Judge Levy submitted to the court his recommendation that the City's motion be granted, and this objection followed.

**II. DISCUSSION**

Where, as here, a party objects to the entirety of a magistrate judge's report and recommendation, the court reviews the report de novo. *See* 28 U.S.C. § 636(b)(1)(C). Accordingly, the court now examines the Complaint to determine if it states a claim upon which relief can be granted.

A plaintiff can only obtain relief for claims that are properly pled. For a claim to meet the minimum pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure,

it must contain more than a mere recitation of the elements of a cause of action or series of legal conclusions. *See Ashcroft v. Iqbal,* ––– U.S. ––––, –––– – ––––, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). The complaint instead must provide enough factual content that, when taken as true, would allow a court to draw a "reasonable inference" that the plaintiff is entitled to relief. *Id.* at 1949. This means that a claim for relief must be plausible; it must raise more than "the mere possibility of misconduct" by a defendant. *Id.* at 1949–50.

**\*2** Assuming that all of the facts asserted by Simms are true and construing the Complaint in the light most favorable to him, *see In re Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007), the court nevertheless determines that Simms has failed to allege a plausible § 1983 claim against the City.

To begin with, the constitutional injury Simms alleges—malicious prosecution—relates only to his treatment by the police and not to that by the DA.'s Office. To establish a § 1983 claim for malicious prosecution, a plaintiff must show a violation of his fourth-amendment rights and all of the elements that make up a malicious prosecution claim under relevant state law. *Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir.2010). In New York, these elements are: (1) initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of that proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for the prosecution. *Id.* at 161 (citing *Broughton v. State,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)). At the pleading stage, actual malice may be inferred from a lack of probable cause. *Cf. Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 131 (2d Cir.1997) ("[L]ack of probable cause generally raises an inference of malice sufficient to withstand summary judgment."). While it is clear that Simms asserts facts that, if true, would establish or give rise to a reasonable inference that the elements of the state tort were met as to the arresting officers, he does not adequately plead that the D.A .'s Office lacked probable cause to initiate a prosecution. On the contrary, by asserting that the arresting officers "falsely stated to prosecutors ... that plaintiff knowingly entered or remained unlawfully in a building with intent to commit a crime therein" (Am.Compl.¶ 16), the Complaint gives rise to precisely the opposite inference. While it is *possible* that the prosecutors knew or suspected that the police were lying to them, without more asserted facts, such a scenario is not plausible.

This distinction—between the alleged culpability of the D.A.'s Office and that of the police—matters because, as is well known, the City cannot be held vicariously liable under § 1983 for constitutional torts committed solely by its employees. *Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, the City is only liable for wrongs for which it is itself responsible; that is, for those torts caused by official government policy, custom, or practice. *Id.; see also DeCarlo v. Fry,* 141 F.3d 56, 61–62 (2d Cir.1997). As Simms only sufficiently pleads an injury inflicted by police officers, his § 1983 claim turns exclusively on the City's policies and customs concerning the police department and not on those related to local prosecutors.

Simms alleges that he was victimized as a result of the City's failure to properly train its police officers and its deliberate indifference to the consequences of such failure. (Am.Compl.¶¶ 27, 29) A municipality's failure to properly train its employees can under certain circumstances give rise to *Monell* liability, *see City of Canton v. Harris,* 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), but a claim based on this theory still must be properly pled under *Iqbal.* [3] Here, there is not enough factual material in the Complaint for the court to reasonably infer that the police misconduct Simms alleges was the result of anything other than the individual acts of the arresting officers.

3

    In his objection to the R & R, Simms relies on language in the Second Circuit's decision in *Amnesty America v. Town of West Hartford* that suggests that conclusory allegations about a municipality's failure to train its employees may be sufficient because "it is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." (Pl's Objection to R & R at 9 (quoting *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 130 n .10 (2d Cir.2004)) (internal quotation marks omitted).) The court notes that *Amnesty* was decided before *Iqbal* and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), which substantially reworked the federal pleading standards. Since those decisions, courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train. *See Araujo v. City of New York,*

No. 08–CV–3715 (KAM), 2010 U.S. Dist. LEXIS 26082, at *28, 2010 WL 1049583 (E.D.N.Y. Mar. 19, 2010); *Abreu v. City of New York,* 657 F.Supp.2d 357, 361 (E.D.N.Y.2009); *Bradley v. City of New York,* No. 08–CV–1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *9–*10, 2009 WL 1703237 (E.D.N.Y. June 18, 2009). *But see Ferrari v. County of Suffolk,* No. 10–CV–4218 (JS), 2011 U.S. Dist. LEXIS 61337, at *29–*30, 2011 WL 2297125 (E.D.N.Y. June 7, 2011) (Seybert, J.) (citing *Amnesty* for the proposition that failure-to-train claims are afforded a lenient pleading standard and noting that *Iqbal* and *Twombly* are "context specific"); *Michael v. County of Nassau,* No. 09–CV–5200 (JS), 2010 U.S. Dist. LEXIS 82764, at *11 n. 2, 2010 WL 3237143 (E.D.N.Y. Aug. 11, 2010) (Seybert, J.) (same).

The Court declines to give *Amnesty* the broad reading that Simms urges. For one thing, *Amnesty'* s discussion of pleading standards is dictum. The Second Circuit in that case reviewed a grant of summary judgment. For another, an interpretation of *Amnesty* that allows plaintiffs to plead only the bare elements of their cause of action simply cannot be squared with *Iqbal* and *Twombly.* It may well be that plaintiffs cannot be expected to know the details of a municipality's training program without discovery, *see Amnesty,* 361 F.3d at 130 n. 10, but that does not relieve them from the obligation to plead facts sufficient for a court to reasonably infer that some type of municipal policy, practice, or custom—including deliberate indifference to the population's constitutional rights—caused an employee training program to be deficient. The court does not speculate about what types of facts could meet this standard, but, suffice it to say, allegations limited to one or two specific constitutional violations by individual officers—all that is asserted here, *see infra*—are not enough to give rise to such an inference.

**\*3** Much of the portion of the Complaint that addresses the City's alleged failure to train its police officers is conclusory, and therefore must be disregarded. *See Iqbal,* 129 S.Ct. at 1949–50. Simms asserts that the City, "acting through the New York Police Department, had actual or de facto policies, practices, customs and or usages of failing to properly train, supervise or discipline its police officers concerning the correct practices in conducting investigations ... and [the]

obligation to effect an arrest only when probable cause exists for such arrest" (Am.Compl.¶ 27.) While this assertion does specify what type of training the officers lacked, it does not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency. Simms's assertion that the failure was a product of the City's "deliberate indifference" (*id.* at ¶ 29) does not cure the problem because it is nothing but a pure legal conclusion. In sum, these passages contain little more than boilerplate, which the court cannot accept as true.

Thus, the court is left with a scant three factual assertions, which, when read together, do not amount to a plausible claim that any City policy, practice, or custom contributed to Simms's injury. First, Simms asserts that police commanders were allowed to set "productivity goals" for their subordinates. (Am.Compl.¶ 31.) It is not reasonable, however, to equate "productivity goals"—whatever that open-ended concept may mean—with malicious prosecutions. Even less relevant is Simms's second assertion that another judge in this courthouse determined that certain allegations made in an unrelated consolidated action against the City were sufficient to survive a motion to dismiss. (*See* Am. Compl. ¶ 32 (citing *Colon v. City of New York,* Nos. 09–CV–8, 09–CV–9 (JBW), 2009 U.S. Dist. LEXIS 1105020, at *5, 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009) .) Neither the judge nor a jury found as a fact that the City employed harmful practices or policies. Instead, the court merely ruled in that a cause action based on such a theory was properly pled. *See Colon.* 2009 U.S. Dist. LEXIS 1105020, at *5, 2009 WL 4263362. Notably, the plaintiffs alleged different injuries than Simms alleges, *see id.,* at *2–*3, blamed different City policies, *see id.,* and, presumably, included more factual material in their complaints pertaining to the City's practices, customs, and policies. Finally, Simms's assertion that he was falsely arrested a second time (Am.Compl.¶¶ 33–34) is not enough, even when paired with his allegations about the instant arrest, to create a reasonable inference that the City failed to train its police officers. Rather, given the size of the City's police force, the plausible explanation for these incidents is that Simms twice had the misfortune of encountering unethical police officers.

Because Simms has not plausibly alleged that City was itself responsible for his injury, his § 1983 claim is dismissed.

**\*4** Simms's § 1983 claim against the City was the only federal claim remaining in this action. Now that it has been

dismissed, the court is left exclusively with Simms's state-law claims. The Second Circuit has "generally held that where all federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state law claims." *Astra Media Group. LLC v. Clear Channel Taxi Media, LLC,* 414 F. App'x 334, 337 (2d Cir.2011) (summary order) (citing Second Circuit cases). It is early in this litigation and the court has dismissed all of Simms's federal claims. The court therefore declines to continue to exercise supplemental jurisdiction over Simms's state-law claims and dismisses them without prejudice.

## III. CONCLUSION

For the foregoing reasons, the City's motion to dismiss is GRANTED. Simms's § 1983 claim is dismissed and his state-law claims are dismissed without prejudice to re-file in state court.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4543051

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2401722
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason IRVINE, Plaintiff,

v.

CITY OF SYRACUSE, et al., Defendants.

No. 5:14–CV–1565.
|
Signed May 19, 2015.

**Attorneys and Law Firms**

Jason Irvine, Auburn, NY, pro se.

### *DECISION and ORDER*

THOMAS J. McAVOY, Senior District Judge.

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, United States Magistrate Judge, for initial review. In his April 22, 2015 Report and Recommendation, Magistrate Judge Peebles recommends that, with the exception of plaintiffs excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, the remaining claims be dismissed with leave to replead. No objections to the Report and Recommendation [dkt. # 9] have been filed, and the time to do so has expired.

## II. DISCUSSION

After examining the record, this Court has determined that the Report and Recommendation is not subject to attack for plain error or manifest injustice.

## III. CONCLUSION

Accordingly, the Court **ADOPTS** the Report and Recommendation [dkt. # 9] for the reasons stated therein. It is hereby

**ORDERED** that with the exception of plaintiffs excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, the remaining claims in this action (including all of those asserted against

defendants Fougnier, Locastro, Walsh, and the City of Syracuse) are **DISMISSED with leave to replead.**

If plaintiff intends to the replead the dismissed claims: (1) he must do so within 30 (thirty) days from the date of this Decision and Order; and, (2) he should heed the law referenced by Magistrate Judge Peebles, especially at pages 20–22 of the Report Recommendation.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

This is an action brought by *pro se* plaintiff Jason Irvine, who is currently a New York State prison inmate, against the City of Syracuse, three employees of the Syracuse City Police Department, and the Onondaga County Sheriff, pursuant to 42 U.S.C. § 1983, claiming that they violated his civil rights. Plaintiffs complaint, together with an accompanying application for leave to proceed *in forma pauperis* ("IFP"), have been forwarded to me for review. For the reasons set forth below, plaintiffs IFP application is granted, and I recommend that plaintiffs claims against Onondaga County Sheriff Kevin Walsh, the City of Syracuse, and Sergeants Brian Fougnier and J.P. Locastro be dismissed with leave to replead.

### I. *BACKGROUND*

Plaintiff commenced this action on December 24, 2014. Dkt. No. 1. The claims set forth in plaintiffs complaint stem from an incident that occurred on May 11, 2013, and the events that followed. *See generally id.* According to the complaint, on that date plaintiff was confronted by two unidentified police officers and was thereafter taken into custody and assaulted. *Id.* at 6–7. While later being processed at police headquarters, plaintiff complained of pain and was escorted by the two officers to Upstate University Hospital ("Upstate"). *Id.* at 7. Although it is not clear from plaintiffs complaint what transpired at the hospital, he alleges that the officers informed him "that their [sic] was nothing wrong with him, and that he was fine in spite of the discharge plan that was denied to him." *Id.* Additionally, although plaintiff contends that defendants Matthew Liadka and Alexander J. Cazzolli, both of whom are Syracuse Police Officers, denied his request for further medical attention, it is not clear from the complaint whether defendants Liadka and Cazzolli are the officers who escorted

plaintiff to the hospital, or if plaintiff requested further medical attention from these individuals while confined either at police headquarters or the Onondaga County Justice Center, where plaintiff was apparently held following his visit to the hospital. *Id.*

**\*2** Plaintiff was again taken to Upstate on May 16, 2013, complaining of pain and swelling. Dkt. No. 1 at 7. Upon examination and testing, it was determined that plaintiff had suffered from pulled muscles, sprained ribs, a chest wall contusion, a swollen spleen, and other injuries as a result of the assault. *Id.*

Plaintiff alleges that defendants Brian Fougnier and J.P. Locastro, both of whom are identified as Syracuse Police Sergeants, "had a duty and obligation to investigate into the matters regarding the assault upon [him]," and that defendant Kevin E. Walsh, the Onondaga County Sheriff, is liable because defendant Walsh "is responsible for all Officers within his jurisdiction." Dkt. No. 1 at 7–8. According to plaintiff, defendant City of Syracuse "is liable for the actions of all of its Officials when their [sic] is a persistent and widespread discriminatory practice[.]" *Id.* at 8.

## II. *DISCUSSION*

### A. *Application to Proceed IFP*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [1] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application is granted. [2]

[1]  The total cost for filing a civil action in this court is $400.00 (consisting of the civil filing fee of $350.00, *see* 28 U .S.C. § 1914(a), and an administrative fee of $50.00). Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

[2]  Plaintiff is reminded that, although his IFP application is granted, he is still required to pay fees

that he incurs in this action, including copying and/ or witness fees.

### B. *Sufficiency of Plaintiff's Claims*

#### 1. *Standard of Review*

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis.*").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiffs allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99–MC–0304, 99–MC–0408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v.*

*Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998));
*see also Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct.
1827, 104 L.Ed.2d 338 (1989) ("[D]ismissal is proper only
if the legal theory ... or factual contentions lack an arguable
basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) ("[T]he
decision that a complaint is based on an indisputably meritless
legal theory, for the purposes of dismissal under section
1915(d), may be based upon a defense that appears on the face
of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the
court looks to applicable requirements of the Federal Rules
of Civil Procedure for guidance. Specifically, Rule 8 of the
Federal Rules of Civil Procedure provides that a pleading
must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed.R.Civ.P.
8(a)(2). The purpose of Rule 8 "is to give fair notice of the
claim being asserted so as to permit the adverse party the
opportunity to file a responsive answer, prepare an adequate
defense and determine whether the doctrine of res judicata is
applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15,
16 (N.D.N.Y.1995) (McAvoy, J.) (quotation marks and italics
omitted).

A court should not dismiss a complaint if the plaintiff has
stated "enough facts to state a claim to relief that is plausible
on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." *Ashcroft
v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d
868 (2009). Although the court should construe the factual
allegations in a light most favorable to the plaintiff, "the tenet
that a court must accept as true all of the allegations contained
in a complaint is inapplicable to legal conclusions." *Iqbal,* 556
U.S. at 678. "Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where
the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has
alleged—but it has not 'show[n]'—'that the pleader is entitled
to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Plaintiff has commenced this action pursuant to 42 U.S.C.
§ 1983, which "establishes a cause of action for 'the
deprivation of any rights, privileges, or immunities secured
by the Constitution and laws' of the United States." *German
v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573

(S.D.N.Y.1995) (citing *Wilder v. Va. Hosp. Ass'n,* 496 U.S.
498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting
42 U.S.C. § 1983)). It " 'is not itself a source of substantive
rights[,] ... but merely provides 'a method for vindicating
federal rights elsewhere conferred[.]' " *Patterson v. Cnty. of
Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v.
McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d
433 (1979)). To state a claim pursuant to section 1983, a
plaintiff must allege "(1) 'that some person has deprived him
of a federal right,' and (2) 'that the person who has deprived
him of that right acted under color of state ... law.' " *Velez v.
Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,*
446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

### 2. *Review of Plaintiff's Claims*

Liberally construed, plaintiff's complaint asserts three causes
of action against defendants, including excessive force, a
violation of due process, and deliberate medical indifference.
*See generally* Dkt. No. 1.

#### a. *Excessive Force*

**\*4** Plaintiff's complaint alleges that the defendants violated
his right under the Eighth Amendment to be free from cruel
and unusual punishment through the use of excessive force.
Dkt. No. 1 at 6–7, 9. It is not clear from the complaint,
however, who committed the alleged assault against him
on May 11, 2013. *Id.* at 6. Plaintiff alleges that the same
unidentified officers who assaulted him also escorted him
to Upstate the first time and informed him "their [sic] was
nothing wrong with him." *Id.* at 6–7. In the next sentence,
plaintiff alleges that "[w]hen [he] requested to speak with
the Medical Staff, regarding his injuries, he was denied by
[defendants] Liadka and Cazzolli [.]" *Id.* at 7. Accordingly,
liberally construed, it appears the excessive force claims are
asserted against defendants Liadka and Cazzolli,

The Eighth Amendment prohibits punishments that are
"incompatible with 'the evolving standards decency that
mark the progress a maturing society[,]' or 'involved[s]
the unnecessary in wanton infliction of pain[.]' " *Estelle v.
Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251
(1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct.
590, 2 L.Ed.2d 630 (1958) and *Gregg v. Georgia,* 428 U.S.
153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (citations
omitted)). The Eighth Amendment, however, only applies
to individuals convicted of a crime. *See Graham v. Connor,*
490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443
(1989) ("After conviction, the Eighth Amendment 'serves as

the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' " (quoting *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986))). In this case, because plaintiff had not been convicted of a crime at the time of the alleged use of excessive force, the Eighth Amendment does not apply to his excessive force claim. Instead, claims of excessive force during the course of an arrest are analyzed under the Fourth Amendment. *Tenn. v. Garner,* 471 U.S. 1, 7–22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *accord, Graham,* 490 U.S. at 395 (1989) ("Today we make explicit what was implicit in *Garner's* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[.]"). A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Maxwell v. City of N.Y.,* 380 F.3d 106, 108 (2d Cir.2004) (quoting *Graham,* 490 U.S. at 397). With this standard in mind, and having carefully review plaintiff's complaint, I find that the pleading contains sufficient facts to survive review under section 1915(e). In so ruling, I express no opinion regarding whether the excessive force claim as asserted in the complaint may withstand a properly filed motion to dismiss or for summary judgment.

b. *Due Process*

**\*5** Plaintiff also asserts a due process claim against the defendants, alleging they violated his rights by participating in the use of allegedly excessive force "and/or covering up the use of excessive force[.]" Dkt. No. 1 at 7. Construed liberally, it appears plaintiff asserts this claim against defendants Liadka and Cazzolli for their participation in the use of force and against unidentified individuals for their alleged concealment of evidence regarding the use of force. Dkt. No. 1 at 7, 9.

The Due Process Clause of the Fourteenth Amendment contains both a substantive and procedural component. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon,* 494 U.S. at 125 (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) ( "Substantive due process protects against

government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." (quotation marks omitted)). Courts analyzing substantive due process claims must first "identify the constitutional right at stake." *Kaluczky,* 57 F.3d at 211. "Where a [section] 1983 plaintiff alleges a cause of action protected by an explicit textual source of the Constitution, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing that claim." *Id.* (quotation marks omitted).

Plaintiff's claim against defendants Liadka and Cazzolli must fail because, as discussed above in Part II.B.2.a., it is rooted in the Fourth Amendment and does not state a generalized violation of substantive due process. As for plaintiffs claim asserted against the unidentified defendants regarding a "cover[ ] up," even assuming this allegation implicates plaintiffs constitutional rights, it must fail because plaintiff merely alleges that "the defendants ... cover[ed] up the use of excessive force and assault against [him]" without either identifying which individuals, in particular, participated in the cover up or alleging any facts to support this conclusory allegation. Without more, plaintiffs due process claim fails to allege facts plausibly suggesting that any of the named defendants violated plaintiffs due process rights. Accordingly, I recommend that plaintiffs due process claims be dismissed.

c. *Deliberate Medical Indifference*

Plaintiff also asserts a claim of deliberate medical indifference against defendants Liadka and Cazzolli. Dkt. No. 1 at 7. Because at the time plaintiff requested medical attention, he was pretrial detainee, his medical indifference claims are governed by the due process clause of the Fourteenth Amendment. *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). To state a cognizable deliberate medical indifference claim under the Fourteenth Amendment, a plaintiff must allege facts plausibly suggesting that he "had a serious medical condition that was met with deliberate indifference." *Cuoco,* 222 F.3d at 106 (quotation marks omitted).

**\*6** In this case, plaintiff alleges that defendants Liadka and Cazzolli denied his request for medical attention after he was taken into custody and complained of pain. Dkt. No. 1 at 7. Plaintiff also alleges that, once he was provided medical treatment, testing revealed that he "suffered from pulled muscles, sprained ribs, a chest wall contusion, swollen spleen, and other injuries due to the assault" by the defendant police officers. *Id.* I find these allegations are sufficient to survive

review at this early procedural juncture under section 1915(e), and defendants should be required to respond to this portion of plaintiff's complaint. Once again, in so ruling, I express no opinion regarding whether the medical indifference claim as asserted in the complaint may withstand a properly filed motion to dismiss or for summary judgment.

### d. *Municipal Liability*

Plaintiff's claims against defendant City of Syracuse implicate municipal liability under *Monell v. N.Y. City Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a claim against a municipality for a constitutional violation pursuant to section 1983, a plaintiff must allege that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell,* 436 U.S. at 690. A municipality, however, cannot be held liable under section 1983 for the "actions alleged to be unconstitutional by its employees below the policymaking level on the basis of *respondeat superior." Zahra v. Town of Southbold,* 48 F.3d 674, 685 (2d Cir.1995); *see also Monell,* 436 U.S. at 691. To prevail on a section 1983 claim against a municipality, a plaintiff must demonstrate that the policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its employee(s), caused the plaintiffs alleged constitutional deprivation. *Monell,* 436 U.S. at 691–92. This can be shown by establishing either that the policy itself is unconstitutional or that the application of an otherwise unlawful policy is unconstitutional. *Amnesty Am. v. Town of Hartford,* 361 F.3d 113, 125–25 (2d Cir.2004).

In this instance, plaintiff's complaint only alleges in conclusory terms that defendant City of Syracuse promulgated a "a persistent and widespread discriminatory practice[.]" Dkt. No. 1 at 8. Plaintiff has failed to identify a specific practice or policy, however, pursuant to which defendants Liadka and Cazzolli allegedly assaulted him. *Id.* Indeed, quite to the contrary, plaintiff characterizes those officers as "rogue agents with no regard for the rules, policies, or procedures set forth by the City of Syracuse Police Department Operations Manual." *Id.* While it is true that a municipality can be held accountable for the excessive use of force by a police officer upon proof that the municipality's policymakers were "knowingly and deliberately indifferent to the possibility that its police officers were wont" to commit constitutional violations, there are no allegations in plaintiff's complaint in this case that plausibly suggest defendant City of Syracuse possessed that specific knowledge with respect

to defendants Liadka and Cazzolli. [3] *See, e.g., Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319, 326–27 (2d Cir.1986).

[3]  In addition, it is well-established that a single incident is generally insufficient to raise the inference of the existence of a custom of policy potentially giving rise to admissible liability. *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.W. 163 (1993); *but see Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.1980) (noting that, where a plaintiff alleges excessive force by police, "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge"). In this instance, plaintiff's allegations fail to support the conclusion that the exception to this general rule should apply.

**\*7**  Municipal liability may also attach based upon the failure of a municipality to properly train "its employees where [the governmental agency] acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am.,* 361 F.3d at 129 (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). To establish liability under this theory, however, a plaintiff must identify a particular deficiency in the municipality's training regimen that " 'actually caused' " a constitutional deprivation. *Amnesty Am.,* 361 F.3d at 129 (quoting *City of Canton, Ohio,* 489 U.S. at 390–91); *see also Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003). As the Second Circuit has noted,

[t]he elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to

train theory does not collapse into *respondeat superior* liability.

*Amnesty Am.,* 361 F.3d at 130. In this instance, plaintiff's complaint does not allege any specific inadequacy in the training protocols of the Syracuse City Police Department, nor does it contain other factual allegations plausibly suggesting that municipality liability is applicable based on a failure-to-train theory. I therefore recommend that plaintiff's *Monell* claim against defendant City of Syracuse be dismissed.

e. *Remaining Claims Asserted Against Defendants Fougnier, Locastro, and Walsh*

Although plaintiff names defendant Walsh in his complaint, it is not clear what cause of action is being asserted against him. The only allegation in the complaint that involve Sheriff Walsh states that he, "as the County Sheriff [,] is responsible for all Officers within his jurisdiction, and to ensure that they are properly trained and of sound mental health in which to do their duties to the community." Dkt. No. 1 at 7. Whatever the nature of the claim plaintiff has attempted to assert against defendant Walsh may be, it is clear he intends to assert the claim based on Walsh's capacity as the head of the Onondaga County Sheriffs Department. Similarly, to the extent that plaintiffs complaint may be construed as asserting any claims against defendants Fougnier and Locastro, they are based on those individuals' supervisory capacities. Specifically, plaintiff's complaint alleges defendants Fougnier and Locastro are the "immediate supervisors" of defendants Liadka and Cazzolli and "had a duty and obligation to investigate into the matters regarding the assault upon [him] by the Officers." *Id.*

Setting aside the fact that defendant Walsh is the Onondaga County Sheriff and does not supervise police officers employed by the City of Syracuse, it is well established that, as supervisors, defendants Fougnier, Locastro, and Walsh cannot be held liable for damages under section 1983 solely by virtue of their roles as supervisors, nor can their liability be predicated upon *respondeat superior. Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright v. Smith,* 21 F.3d 496, 501 (1994). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3)

created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

**\*8** In this instance, there are no allegations in plaintiff's complaint suggesting that defendants Fougnier, Locastro, or Walsh participated in or witnessed the use of excessive force, or that, while the event was ongoing, they learned of it but failed to act to protect him from harm. *See generally* Dkt. No. 1. Moreover, because the only facts alleged involving these individuals concerns their roles and obligations as supervisors and are set forth in wholly conclusory fashion, there is no basis for a section 1983 claim against them. *See, e.g., id.* at 9 ("THE PLAINTIFF ALLEGES AGAINST THE DEFENDANTS THAT THEY FAILED IN THEIR SUPERVISORY CAPACITY TO OVERSEE AND SUPERVISE THEIR OFFICERS, AND STAFF ... THROUGH THEIR GROSS NEGLIGENCE [.]"). Under these circumstances I recommend that plaintiffs claims against defendants Fougnier, Locastro, and Walsh be dismissed for lack of personal involvement.

C. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)); *Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J .). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

## IV. *SUMMARY AND RECOMMENDATION*

*9 Plaintiff's complaint in this action asserts excessive force claims against two Syracuse Police Officers, Matthew Liadka and Alexander Cazzolli, and derivative claims against Syracuse Police Sergeants Brian Fougnier and J.P. Locastro, as well as Onondaga County Sheriff Kevin E. Walsh and the City of Syracuse, alleging that they were aware of but failed to remedy the constitutional deprivation, and that the violations

occurred as a result of a failure to properly train and supervise defendants Liadka and Cazzolli. Having carefully reviewed plaintiff's complaint I conclude that, with the exception of his excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, plaintiff's claims should be dismissed with leave to amend.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's application for leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that, with the exception of his excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, plaintiff's remaining claims in this action, including all of those asserted against defendants Fougnier, Locastro, Walsh, and the City of Syracuse, be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: April 22, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2401722

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 7

Santagata v. City of New York, Not Reported in Fed. Supp. (2017)

2017 WL 2963453

2017 WL 2963453
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, E.D. New York.

Thomas Anthony SANTAGATA, Jr., Plaintiff,
v.
CITY OF NEW YORK, New York Police
Department, Officers Edgardo Diaz and Ryan
McAvoy, Legal Aid Society, Defendants.

17-CV-3053 (PKC) (CLP)
|
Signed 07/11/2017

**Attorneys and Law Firms**

Thomas Anthony Santagata, Jr., Gouverneur, NY, pro se.

**MEMORANDUM & ORDER**

Pamela K. Chen, United States District Judge

**\*1** On April 12, 2017, Plaintiff Thomas Anthony Santagata, Jr., currently incarcerated at Gouverneur Correctional Facility, filed this *pro se* action against Defendants. By Order dated May 15, 2017, the United States District Court for the Southern District of New York transferred the action to this Court. The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). For the reasons stated below, the Complaint is dismissed as to Defendants the City of New York ("the City"), the New York [City] Police Department ("the NYPD"), and the Legal Aid Society.

**BACKGROUND**

Plaintiff alleges that he was falsely arrested on November 6, 2014, by NYPD Officer Edgardo Diaz, and that he was again falsely arrested on July 22, 2015, by NYPD Officer Ryan McAvoy. (*See* Complaint ("Compl."), Dkt. 2, at 4-5.) On November 6, 2014, according to Plaintiff's Complaint, Officer Diaz grabbed Plaintiff, who was sitting in his vehicle in his driveway, searched Plaintiff's pockets and his car, and then arrested him after finding one knife on Plaintiff and another in the armrest of Plaintiff's car. (*Id.* at 4.) Plaintiff also alleges that Officer Diaz "manipulated" evidence by loosening the blade of the knife found in Plaintiff's car and

thereby causing Plaintiff to be charged with possession of a gravity knife. (*Id.*)

On July 22, 2015, Plaintiff alleges that Officer McAvoy —who came to his house in response to neighbors' 911 calls complaining about Plaintiff—entered Plaintiff's home without a warrant by breaking down the front door and then arrested Plaintiff. (*Id.* at 5.) The charges related to both arrests were allegedly dismissed. *Id.*

Plaintiff further alleges that the Legal Aid Society committed "legal malpractice" by failing to challenge the civil forfeiture of his vehicle, a 2000 Ford Mustang. *Id.* at 5. He seeks unspecified damages. *Id.*

**STANDARD OF REVIEW**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). At the pleading stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal,* 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. In addition, a *pro se* complaint is "to be liberally construed," *Ahlers v. Rabinowitz,* 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that [it] suggest[s]," *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996); see *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) ("submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest") (internal citations and quotations omitted). However, pursuant to the *in forma pauperis* statute, the Court must dismiss a complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Courts generally should not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 112 of 170

Santagata v. City of New York, Not Reported in Fed. Supp. (2017)

2017 WL 2963453

## DISCUSSION

**\*2** The Court construes the Complaint to assert, under 42 U.S.C. § 1983, claims of false arrest, false imprisonment, unlawful searches and seizure in violation of the Fourth Amendment, fabrication of evidence, and malicious prosecution. The Court also construes the Complaint to assert a claim of municipal liability, *i.e.*, a *Monell* claim, against the City, based on his Section 1983 claims.

### I. Dismissal of *Monell* Claim Against the City

A municipality may be liable under Section 1983 if a municipal "policy or custom" causes "deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient factual detail" and not mere "boilerplate allegations" that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). A plaintiff must show the existence of an officially adopted policy or custom that caused injury *and* a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell*, 436 U.S. at 690–94. Here, Plaintiff fails to allege any facts to show that the Defendant officers acted pursuant to any municipal policy or custom. Therefore, Plaintiff's Complaint against the City is dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915A; 1915(e)(2)(B). *See Plair v. City of N.Y.*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard...."); *see also Meehan v. Kenville*, 555 Fed.Appx. 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality").

### II. Dismissal of Claims Against the NYPD

Plaintiff's claims against the NYPD must be dismissed because it is not a suable agency of the City. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C., N.Y. Charter ch. 17, § 396. That

provision has been construed to mean that the NYPD is not a suable entity. *See, e.g.*, *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (NYPD not a suable entity); *Lopez v. Zouvelos*, No. 13 CV 6474 (MKB), 2014 WL 843219, at *2 (E.D.N.Y. Mar. 4, 2014) (dismissing all claims against the NYPD); *Johnson v. N.Y.C. Police Dep't*, No. 12 CV 5423 (BMC), 2012 WL 5607505, at *3 (E.D.N.Y. Nov. 15, 2012). For this reason, Plaintiff's claims against the NYPD are dismissed for failure to state a claim. 28 U.S.C. §§ 1915A; 1915(e)(2)(B).

### III. Dismissal of Claims Against the Legal Aid Society

The Legal Aid Society is not a State actor amenable to suit under Section 1983. *See Caroselli v. Curci*, 371 Fed.Appx. 199, 201 (2d Cir. 2010) (summary order); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("a legal aid society ordinarily is not a state actor amenable to suit under § 1983."); *Szabo v Legal Aid Soc'y.*, No. 17-MC-219 (PKC), 2017 WL 1401296, at *4 (E.D.N.Y. Apr. 19, 2017) (citing cases); *Daniel v. Safir*, 135 F.Supp.2d 367, 374 (E.D.N.Y. 2001). Thus, Plaintiff's claim against the Legal Aid Society is dismissed for failure to state a claim. 28 U.S.C. §§ 1915A; 1915(e)(2)(B).

## CONCLUSION

**\*3** Accordingly, the Complaint, filed *in forma pauperis*, is dismissed as to the City of New York, the New York Police Department, and the Legal Aid Society pursuant to 28 U.S.C. §§ 1915A; 1915(e)(2)(B). No summons shall issue as to these Defendants.

Plaintiff's claims against Police Officer Edgardo Diaz, Shield No. 9558, of the 122th Precinct, and Police Officer Ryan McAvoy, Shield No. 7039, of the 122 Precinct, alleging false arrest, false imprisonment, violation of his Fourth Amendment Right against "unreasonable searches and seizures," and intentional infliction of emotional distress shall proceed. The Clerk of Court is directed to prepare a summons against Police Officers Diaz and McAvoy, and the United States Marshals Service is directed to serve the summons and complaint upon these defendants without prepayment of fees.

The Clerk of Court is respectfully directed to serve a copy of this Order, a copy of the Complaint, and a copy of the *in forma pauperis* application on the Corporation Counsel for the City of New York, Special Federal Litigation Division.

**Santagata v. City of New York, Not Reported in Fed. Supp. (2017)**

2017 WL 2963453

The Clerk of Court is also respectfully directed to mail a copy of this Order to Plaintiff. The case is respectfully referred to the Honorable Cheryl L. Pollak, United States Magistrate Judge, for pretrial supervision.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2963453

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1]  The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]  Plaintiff was granted leave to proceed with this action *in forma pauperis*. Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5425501

2014 WL 5425501
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Eileen CASINO, Plaintiff,
v.
" 'Mr R. ROHL' or 'John Doe' Owner/Administrator
of Woodhaven Nursing Home," Defendant.

No. 14–CV–2175 (SJF)(GRB).
|
Signed Oct. 23, 2014.

**Attorneys and Law Firms**

Eileen Casino, South Haven, NY, pro se.

### ORDER

FEUERSTEIN, District Judge.

**\*1** On April 3, 2014, *pro se* plaintiff Eileen Casino
("plaintiff") [1] filed a fourth *in forma pauperis* complaint
pursuant to 42 U.S.C. § 1983 ("Section 1983") challenging
the quality of care Donato J. Casino allegedly received
at, *inter alia,* Woodhaven Nursing Home ("Woodhaven"), [2]
accompanied by an application to proceed *in forma pauperis.*
On May 30, 2014, plaintiff filed an amended complaint
pursuant to Section 1983 against ' "MR. R. ROHL" or
'JOHN DOE' Owner/Administrator of Woodhaven Nursing
Home" ("defendant").

[1]     Although the caption of the complaint indicates
        that plaintiff is also asserting claims on behalf of
        her "children and grandchild," "[a] person who
        has not been admitted to the practice of law may
        not represent anybody other than himself." *Guest
        v. Hansen,* 603 F.3d 15, 20 (2d Cir.2010); *see* 28
        U.S.C. § 1654. Accordingly any claims asserted by
        plaintiff on behalf of her children and grandchild
        are dismissed without prejudice.

[2]     As set forth below, each of plaintiff's earlier cases
        were *sua sponte* dismissed.

Since plaintiff's financial status, as set forth in her declaration
in support of her application to proceed *in forma pauperis,*

qualifies her to commence this action without prepayment of
the filing fees, *see* 28 U.S.C. § 1915(a)(1), her application
to proceed *in forma pauperis* is granted. However, for the
reasons set forth below, the amended complaint is *sua sponte*
dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure
to state a claim for relief.

### I. Background

#### A. Prior Litigation

##### 1. The First Casino Action
On September 11, 2013, plaintiff filed in this Court, *inter
alia,* a complaint pursuant to Section 1983 against Brian
Cassidy ("Cassidy") and "Mr, Rohl, as owner/admin," [3]
among others, alleging violations of Mr. Casino's civil rights
relating to his treatment and care in an unidentified nursing
home and to court proceedings in which Cassidy acted as his
law guardian, which was assigned docket number 13–CV–
5095 ("the first action"). By Order dated November 8, 2013,
*inter alia:* (1) plaintiff's claims in the first action were *sua
sponte* dismissed with prejudice pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) for lack of standing and failure to state a
claim for relief; and (2) Mr. Casino's claims in the first action
were *sua sponte* dismissed without prejudice on the basis that
plaintiff, who is not an attorney, could not assert *pro se* claims
on his behalf.

[3]     In her application to proceed *in forma pauperis*
        in this action, plaintiff identifies Mr. Rohl
        as the "owner/administrator" of Woodhaven.
        (Application to Proceed *In Forma Pauperis* ["IFP
        Applic."] at 1).

##### 2. The Second Complaint
On October 28, 2013, plaintiff filed another complaint in
this court pursuant to Section 1983 against "Stonybrook
[sic] University Medical Center" ("Stony Brook"), Cassidy
and Woodhaven alleging, *inter alia,* that those defendants
were "not always acting in the best interest of [Mr.] Casino
or his family or according to all our wishes" and "unfair
competition for family time with my husband" (Compl. under
docket number 13–6357 at 1–2), which was assigned docket
number 13–CV–6357 ("the second action"). By Order dated
January 27, 2014, *inter alia:* (1) plaintiff's claims against
Stony Brook were *sua sponte* dismissed for lack of subject
matter jurisdiction pursuant to Rule 12(h)(3) of the Federal
Rules of Civil Procedure; (2) plaintiff's Section 1983 claims

against Woodhaven and Cassidy were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; and any state law claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367.

### 3. The Third Complaint

**\*2** On or about January 22, 2014, plaintiff filed a third complaint ("the third action") pursuant to Section 1983 on behalf of herself and Mr. Casino against Stony Brook, Cassidy, Woodmere Nursing Home ("Woodmere") and the New York State Mental Health Court ("the State Court") alleging, *inter alia*, that those defendants' actions concerning Mr. Casino's care were "against [the] best interest[s] & wish[es] of p[atien]t & [his] family resulting in setbacks of health at Stonybrook [sic] Hospital" (Compl. under docket number 14–CV–00629 at ¶ III), which was assigned docket number 14–CV–00629 ("the third action"). By Order dated April 10, 2014, *inter alia*: (1) plaintiff's claims against Stony Brook and the State Court were *sua sponte* dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; (2) plaintiff's Section 1983 claims against Woodmere and Cassidy were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; (3) any state law claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367; and (4) Mr. Casino's claims were *sua sponte* dismissed without prejudice because plaintiff, who is not an attorney, could not assert *pro se* claims on his behalf.

### B. The Instant Complaint [4]

[4]   All material allegations in the Complaint are assumed to be true for the purposes of this order, *see, e.g. Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 58 (2d Cir.1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true), and do not constitute findings of fact by the Court.

Since the original complaint filed by plaintiff was not signed, the Court's *pro se* office sent plaintiff a Notice of Deficiency ("Notice") on May 14, 2014, informing her that she must file a signed complaint within fourteen (14) days from the date of the Notice in order to proceed with this case. [See Docket Entry No. 5]. On May 30, 2014, plaintiff filed a signed amended complaint against defendant alleging that the "right to life[,] liberty[,] happiness guarantee [sic] in Constitution of USA was denied [and] there is now wrongful death of Donato Casino caused by criminal negligence [and] human rights

abuses." (Amended Complaint ["Am. Compl."], ¶ II(B)) (case converted to lowercase).

The following is plaintiff's statement of her claims against defendant in the amended complaint, which she alleges occurred "[b]etween June of 2013–Sept 10 of 2013," (Am.Compl., ¶ III(A));

> "At all visits from myself I found Dan in a dark room, no company, no radio or tv turned on, on his back, no care given yet that day incl. no diaper change or feeding or fluid/ice [indecipherable] Approx. 2 visits or more per [week]. Approx. 2 [weeks] per [month]. Actually Dan on their premises....
>
> [ ] No ability or available call bell[.]
>
> [ ] 'Sterile['] dressing table filthy at each visit[.]
>
> [ ] 'Sterile' dressing to be used left on table unattended, open to dirty air for who knows how long w/ointments on them open to air[ .]
>
> 5 different hosp. stays-only they sent him later rather than in timely fashion. Also-last hosp. stay at Stony Brook Hosp. was 5 months from Sept–2013 to end of Jan/Feb '14[,] which consisted of health crisis after health crisis requiring heroic means to save Dan's life during that 5 mos. After [transfer] to new home in Nassau Co. Dan was never the same-responsive, but min. interactive–1 more stay at Franklin Hosp. (2–3 wk) back to Woodmere-then final stay at S. Nassau Hosp. Dan did not get his last wish for me to be by his side in his last hour because of location. I arr[ived] at Nassau after (Cassidy) (law guardian) approved a DNR.
>
> **\*3** At Nassau Hosp.–3 handwritten pps. of meds scheduled on 1 shift shown to me[.] Feeding at 30 ml. (only 1/3 what they [brought] him up to at Franklin (90 ml) still insufficient for his frame[.] )
>
> I *saw* 5 dark spots (large) on Doplar in his stomach-they were ulcers, yet hosp. claims they could not determine cause of bleeding or infection. Nassau continued use of Tylenol, though Franklin had said they would not use it-contraindicated by a condition Dan had.
>
> Woodmere had Dan off [of] ventilator, IV P/C Line, feeding & hydration at 2 visits and failed [indecipherable] to hosp[.]"

(Am.Compl.¶¶ III–IV) (emphasis in original; case converted).

Plaintiff seeks, *inter alia,* compensatory damages in the amount of "½ a million dollars."

(Am.Compl.¶ V) (case converted).

## II. Discussion

### A. Standard of Review

Under the *in forma pauperis* statute, 28 U.S.C. § 1915(e) (2) (B), a district court must dismiss a complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

It is axiomatic that district courts are required to read *pro se* complaints liberally, *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Hogan v. Fischer,* 738 F.3d 509, 515 (2d Cir.2013), and to construe them "to raise the strongest arguments that they suggest." *Gerstenbluth v. Credit Suisse Securities (USA) LLC,* 728 F.3d 139, 142–43 (2d Cir.2013) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Harrington v. Cnty. of Suffolk,* 607 F.3d 31, 33 (2d Cir.2010); *see also Ashcroft v. Iqbal* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868; *see also In re Amaranth Natural Gas Commodities Litig.,* 730 F.3d 170, 180 (2d Cir.2013).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929); *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir.2013) (accord). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 544, 127 S.Ct. at 1959, 167 L.Ed.2d 929.

### B. Section 1983

**\*4** Section 1983 of Tile 42 of the United States Code provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...."

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color of' state law." *Filarsky v. Delia,* —— U.S. ——, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)); *see also Rehberg v. Paulk,* —— U.S. ——, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012).

Although Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it," *Nat'l Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (quotations and citation omitted); *see also Hafer v. Melo,* 502 U.S. 21, 28, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their

authority or misuse it." (quotations and citations omitted)), "[a] private actor may be liable under § 1983 * * * if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir.2013) (quotations, internal quotations and citations omitted); *see also Fabrikant v. French,* 691 F.3d 193, 206–07 (2d Cir.2012) ("Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action. * * * [T]here must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." (quotations, alterations, emphasis and citations omitted). "Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." *Filarsky,* 132 S.Ct. at 1661 (quotations and citation omitted); *see also Fabrikant,* 691 F.3d at 207 ("The fundamental question * * * is whether the private entity's challenged actions are 'fairly attributable' to the state." (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982))). "Three main tests have emerged:

> **\*5** For the purposes of section 1983, the actions of a nominally private entity are attributable to the state ... (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')."

*Fabrikant,* 691 F.3d at 207 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (alteration in original)).

Defendant, as the owner or administrator of Woodhaven, a private nursing home, was not acting "under color of state

law" for purposes of Section 1983 with respect to the conduct alleged in the amended complaint. *White v. St. Joseph's Hosp.,* 369 F. App'x 225, 226 (2d Cir. Mar.10, 2010) (summary order) ("[P]rivate actors and institutions, such as the * * * nursing home * * * are generally not proper Section 1983 defendants because they do not act under color of state law. * * * [T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action."); *Baum v. Northern Dutchess Hosp.,* 764 F.Supp.2d 410, 430–33 (N.D.N.Y.2011) (dismissing Section 1983 claims against private nursing home because it is not a state actor); *Mitchell v. Home,* 377 F.Supp.2d 361, 370 (S.D.N.Y.2005) (accord).

Moreover, in order to state a claim for relief under Section 1983, a plaintiff must allege the personal involvement of the defendant in the purported constitutional deprivation. *Spavone v. New York State Dep't of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir.2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation and quotation marks omitted)); *Grullon v. City of New Haven.* 720 F.3d 133, 138–39 (2d Cir.2013). "Personal involvement" may be established by evidence of direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003); see also *Grullon,* 720 F.3d at 139. "An individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority'...." *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. *See Costello v. City of Burlington,* 632 F.3d 41, 48–49 (2d Cir.2011).

**\*6** Since, *inter alia,* defendant is nowhere mentioned or referenced in the body of the amended complaint, plaintiff has not adequately pled his personal involvement in any of the constitutional deprivations alleged in the amended complaint. Accordingly, plaintiff's Section 1983 claims are dismissed

2014 WL 5425501

pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) for failure to state a claim for relief.

1. Leave to Amend

Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Although, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002) (quotations and citation omitted), leave to amend is not required, *inter alia,* where a proposed amendment would be futile. *See Grullon,* 720 F.3d at 140; *Anderson News, L.L.C. v. American Media, Inc.,* 680 F.3d 162, 185 (2d Cir.2012), *cert. denied sub nom Curtis Circulation Co. v. Anderson News, L.L.C.,* —— U.S. ——, 133 S.Ct. 846, 184 L.Ed.2d 655 (2013). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners. Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir.2012).

Since, *inter alia,* even a liberal reading of the amended complaint does not give any indication that plaintiff can state a plausible federal claim against defendant, and this is plaintiff's fourth unsuccessful attempt to litigate essentially the same claims, any amendment to the amended complaint to replead the Section 1983 claims against defendant would be futile. Accordingly, plaintiff's Section 1983 claims against defendant are dismissed with prejudice.

C. Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, *see Wisconsin Dep't of Corr. v. Schacht,* 524 U.S. 381, 391–92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 129 S.Ct. 1862, 1866–1867, 173 L.Ed.2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); *Lundy v. Catholic Health Svs. of Long Island Inc.,* 711 F.3d 106, 117 (2d Cir.2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court."). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. *Carnegie– Mellon Univ. v. Cohill,* 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see also Lundy,* 711 F.3d at 117– 18 (accord). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. *See Cohill,* 484 U.S. at 350 n. 7; *Lundy,* 711 F.3d at 118 ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."); *Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 170 (2d Cir.2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)).

**\*7** In light of the dismissal of all federal claims in this action prior to service of a summons and the amended complaint upon defendant, and upon consideration of all relevant factors, i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over any remaining state law claims in this action. Accordingly, to the extent the amended complaint asserts any state law claims, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order,** unless a longer tolling period is otherwise provided under state law.

D. Filing Injunction

Under the All Writs Act, district courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." *MLE Realty Assocs. v. Handler,* 192 F.3d 259, 261 (2d Cir.1999); *see also Matter of Hartford Textile Corp.,* 613 F.2d 388, 390 (2d Cir.1979) (holding that the All Writs Act "grant[s] the district court power sua sponte to enjoin further filings in support of frivolous and vexatious claims.") "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) (quotations

2014 WL 5425501

and citation omitted); *see also Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (quotations and citations omitted)); *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." (quoting *Abdullah v. Gatto.* 773 F.2d 487, 488 (2d Cir.1985) (*per curiam* )).

"The filing of repetitive and frivolous suits constitutes the type of abuse [of the judicial process] for which an injunction forbidding further litigation may be an appropriate sanction." *Shafii v. British Airways, PLC,* 83 F.3d 566, 571 (2d Cir.1996); *see also Lau,* 229 F.3d at 123 ("The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." (quotations, alterations and citations omitted)). The following factors should be considered in determining whether to restrict a litigant's future access to the courts:

> **\*8** "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.,* does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigation has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."

*Safir,* 792 F.2d at 24; *see also Iwachiw v. New York State Dep't of Motor Vehicles,* 396 F.3d 525, 528 (2d Cir.2005) (accord). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir.* 792 F.2d at 24.

The court must first provide a litigant with notice and an opportunity to be heard before imposing a filing injunction, *see Lau,* 229 F.3d at 123; *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) (*per curiam),* and the filing injunction must be narrowly tailored so as to preserve the litigant's right of access to the court, *see Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic,* 83 F.3d 44, 45 (2d Cir.1996) (holding that filing injunctions "must be appropriately narrow."); *e.g. SBC 2010–1, LLC v. Morton,* 552 F. App'x 9, 12–13 (2d Cir. Dec.18, 2013) (summary order) (affirming the district court's issuance of a filing injunction on the basis, *inter alia,* that it was "narrowly crafted"); *Malcolm v. Bd. of Educ. of Honeoye Falls–Lima Cent. Sch. Dist.,* 506 F. App'x 65, 70 (2d Cir. Dec.26, 2012) (summary order) (accord).

This lawsuit is plaintiff's fourth unsuccessful attempt in this Court to litigate essentially the same claims regarding the treatment and care of Mr. Casino since September 2013. Given the court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," *Lau,* 229 F.3d at 123, ***plaintiff is warned that similar, future actions will not be tolerated.*** If plaintiff persists in filing actions asserting claims previously asserted and dismissed by this Court with prejudice or for lack of subject matter jurisdiction, the Court will issue an order to show cause why she should not be required to seek leave of this Court before filing any future actions in this Court.

Finally, plaintiff is cautioned that Rule 11 of the Federal Rule of Civil Procedure applies to *pro se* litigants, *see Maduakolam v. Columbia Univ.,* 866 F.2d 53, 56 (2d Cir.1989) ("Rule 11 applies both to represented and *pro se* litigants * * *."); *e.g., Ginther v. Provident Life and Cas. Ins. Co.,* 350 F. App'x 494, 496 (2d Cir.2009) (affirming a district court's imposition of Rule 11 sanctions against a *pro se* litigant), and that should she file another frivolous action, it is within the Court's authority to consider imposing sanctions upon her. *See* Fed.R.Civ.P. 11. [5]

---

5    This Court's April 10, 2014 order in the third action also warned plaintiff that the Court is considering issuing an order to show cause why a filing injunction should not be imposed upon her and imposing sanctions upon her pursuant to Rule 11 of the Federal Rules of Civil Procedure based upon her filing of repetitive and frivolous lawsuits.

However, this action was commenced one (1) week before the Court issued the April 10, 2014 order.

III. Conclusion

**\*9** For the reasons set forth above, plaintiffs application to proceed *in forma pauperis* is granted; plaintiff's Section 1983 claims against defendant are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; any state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and any claims asserted by plaintiff on behalf of her children and grandchild are dismissed without prejudice. ***Plaintiff is warned that her repetitive filing of actions in this Court asserting similar claims relating to the care and treatment of Mr. Donato will not be tolerated.*** If plaintiff persists in filing actions asserting claims previously asserted and dismissed by this Court with prejudice or for lack of subject matter jurisdiction, the Court: (1) ***will issue an order to show cause why she should not be required to seek leave of this Court before filing any future actions in this Court relating to the care and treatment of Mr. Donato;*** and (2)

will consider imposing sanctions upon her pursuant to Rule 11 of the Federal Rules of Civil Procedure.

The Clerk of the Court shall close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5425501

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 268366
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Isidro ABASCAL, Plaintiff,

v.

Bryan HILTON, Psychologist, and
Mitchell Langbart, M.D., Defendants.

No. 9:04-CV-1401 (LEK/GHL).
|
Jan. 30, 2008.

**Attorneys and Law Firms**

Isidro Abascal, New York, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Richard Lombardo, Esq., Assistant Attorney General, of Counsel, Albany, NY, Counsel for Defendant Hilton.

*DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

 **\*1** This matter comes before the Court following a Report-Recommendation filed on December 28, 2007, by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 41). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Isidro Abascal, which were filed on January 7, 2008. Objections (Dkt. No. 42).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 41) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED** that Defendant Hilton's Motion to dismiss (Dkt. No. 37) is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's Motion to dismiss (Dkt. No. 37) are **DISMISSED** pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or Fed.R.Civ.P. 12(h)(3), for the reasons stated above; and it is further

**ORDERED,** that Plaintiff's claims against Defendant Langbart are **DISMISSED** with prejudice for failure to serve, for the reasons stated above; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Isidro Abascal ("Plaintiff"), while an inmate at Attica Correctional Facility, commenced this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, against, *inter alia,* two medical care providers employed (at the time) by the State of New York-Bryan Hilton and Mitchell Langbart. Generally, Plaintiff's Third Amended Complaint alleges, in pertinent part, that, between December 27, 2001, and October 29, 2002, while he was incarcerated at Auburn Correctional Facility, Defendants Hilton and Langbart violated his rights under the First, Eighth and Fourteenth Amendments by wrongfully treating or classifying him as mentally ill and wrongfully transferring him to the Central New York Psychiatric Center as a form of punishment and/or retaliation for writing to public officials about certain "symptoms and body scars" that Plaintiff had allegedly experienced or sustained while in the

2008 WL 268366

custody of DOCS. (*See generally* Dkt. No. 24 [Plf.'s Third Am. Compl.].)

**\*2** Currently pending before the Court is Defendant Hilton's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 37.) For the reasons that follow, I recommend that Defendant Hilton's motion be granted. I also recommend that those of Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's motion to dismiss be *sua sponte* dismissed pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/ or Rule 12(h)(3) of the Federal Rules of Civil Procedure. Finally, I recommend that Plaintiff's claims against Defendant Langbart be *sua sponte* dismissed with prejudice for failure to serve, pursuant to Rules 4(m) and 16(f) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. Relevant Procedural History

Throughout the course of this action, Plaintiff has, in his several pleadings, asserted claims against a number of individuals. All of those claims have been dismissed by Judge Kahn under Rules 8, 10 and/or 12 of the Federal Rules of Civil Procedure, except Plaintiff's claims against Defendants Hilton and Langbart.

Specifically, on January 5, 2005, Judge Kahn dismissed Plaintiff's claims, asserted in his original Complaint, against Defendants Jarkos, Tatum, Graham, Filion, Goodman, and Lape. (Dkt. No. 5, at 9.) On March 1, 2005, Judge Kahn struck Plaintiff's Amended Complaint from the docket, under Rules 8, 10 and 12 of the Federal Rules of Civil Procedure. (Dkt. No. 10.) On June 15, 2006, Judge Kahn dismissed Plaintiff's claims, asserted in his Second Amended Complaint, against Defendants Muse, Smith, Pena, and "Unknown HTE Operators." (Dkt. No. 23, at 8.) On November 6, 2006, Judge Kahn dismissed Plaintiff's claims, asserted in his Third Amended Complaint, against Defendants Burge, Stone, Goord and Conway. (Dkt. No. 25, at 3.)

Remaining in the case, following Judge Kahn's Order of November 6, 2006, were Plaintiff's claims against Defendants Hilton and Langbart. (*Compare* Dkt. No. 25 [Order of 11/6/06] *with* Dkt. No. 24 [Plf.'s Third Am. Compl.].)

### B. Plaintiff's Failure to Serve Defendant Langbart

Prior to Judge Kahn's Order of November 6, 2006, regarding Plaintiff's Third Amended Complaint, none of Plaintiff's prior pleadings had been served on Defendants Hilton or Langbart. (*See generally* Docket.) On November 6, 2006, Judge Kahn ordered, *inter alia,* that (1) "the Clerk shall issue summonses and forward them, along with copies of the [Third] Amended Complaint, to the United States Marshall for service on the [two] remaining Defendants," and (2) "Plaintiff shall ... comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action." (Dkt. No. 25, at 3-4.) On January 27, 2007, the summonses for Defendants Hilton and Langbart were returned unexecuted because Plaintiff had, on the USM-285 Forms, listed their addresses as Auburn C.F., and both had left Auburn C.F. several years before. (Dkt. No. 27.)

**\*3** On February 5, 2007, the Clerk's Office for this Court sent a letter to the Deputy Counsel for the New York State DOCS requesting his assistance in determining whether DOCS has a current address on file for Defendants Hilton and Langbart (or whether, perhaps, Defendants Hilton and Langbart would designate an agent for service of process). (Dkt. No. 28.) On March 21, 2007, the Deputy Counsel responded with Defendant Hilton's current address but stated that Defendant Langbart was neither currently employed by DOCS nor was he previously employed by DOCS (but by the Central New York Psychiatric Center). (Dkt. No. 29.)

On March 22, 2007, the Clerk's Office reissued summonses for Defendants Hilton and Lanbart. (Dkt. No. 30.) On March 26, 2007, an acknowledgement of service was filed as to Defendant Hilton. (Dkt .33.) However, on April 26, 2007, the summons for Defendant Langbart was returned unexecuted because Plaintiff had, on the USM-285 Form, listed his address as "750 E. Adams St., Syr. N.Y. 13210," and Langbart was "no longer [t]here." (Dkt. No. 34.)

On June 28, 2007, in his motion to dismiss Plaintiff's Third Amended Complaint, Defendant Hilton stated, *inter alia,* that "[o]n April 27, 2007, the summons was returned unexecuted as to defendant Langbart." (Dkt. No. 37, Part 2, at 1, n. 1.) However, the docket contains no record of Plaintiff having completed another USM-285 Form as to Defendant Langbart. Consequently, it appears he was never served with a copy of Plaintiff's Third Amended Complaint.

Because Plaintiff has not offered "good cause" for his failure to enable the Marshals Service to effect service on Defendant Langbart, Plaintiff has violated Rule 4(m) of the Federal

Rules of Civil Procedure. Alternatively, Plaintiff has violated Rule 16(f) of the Federal Rules of Civil Procedure due to the fact that he violated Judge Kahn's Order of November 6, 2006 (directing him to comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action," *see* Dkt. No. 25, at 4) by failing to complete new USM-285 Forms listing Defendant Langbart's current address.

As a result, the Court should dismiss Plaintiff's claims against Defendant Langbart. I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte. See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just....").

Remaining in the case, then, are only Plaintiff's claims against Defendant Hilton.

**C. Summary of Plaintiff's Claims Against Defendant Hilton**

In federal court, all pleadings must be liberally construed. *See* Fed.R.Civ.P. 8(e). Generally, pleadings filed by *pro se* civil rights litigants must be construed with an *extra* degree of liberality or leniency. This is because, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process, and because the civil rights claims they assert are of a very serious nature. However, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or extra leniency that is normally afforded *pro se* litigants. [1] Generally, the rationale for withdrawing of this extra leniency (at least in the Second Circuit) is that the *pro se* litigant's extreme litigiousness demonstrates his *experience,* the lack of which is the reason for extending extraordinary leniency to a *pro se* litigant in the first place. [2]

[1]     *Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *3 & n. 17 (N.D.N.Y. Sept.26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

[2]     *Koehl,* 2007 WL 2846905, at *3 & n. 18 [citations omitted].

**\*4** Here, Plaintiff is certainly no stranger to the court system, having filed some 13 federal or state court actions or appeals (other than the current action) [3] I note that, by the time Plaintiff filed his Third Amended Complaint in this action on July 14, 2006, Plaintiff had filed some 12 federal or state court actions or appeals. [4] Ordinarily, I would find that the Court should withdraw from Plaintiff, or at least diminish, the extraordinary leniency normally afforded to *pro se* litigants. However, because Plaintiff, may well have been laboring under a mental illness at the time he drafted his Third Amended Complaint (for the reasons discussed below in this Report-Recommendation), I will continue to afford him special solicitude. [5]

[3]     **Federal Court Actions:** *Abascal-Montalvo v. I.N.S.,* 901 F.Supp. 309 (D.Kan.1995) (habeas corpus proceeding, filed by Plaintiff *pro se* ); *Abascal v. Thornburgh,* 90-CV-1399, Order of Dismissal (W.D. Okla. filed March 13, 1991) (habeas corpus proceeding, filed by Plaintiff *pro se* ).

    **Federal Court Appeals:** *Abascal v. Thornburgh,* No. 91-6136, 1993 WL 118840 (10th Cir. Apr.13, 1993) (appeal from decision by W.D. Okla., in habeas corpus proceeding, filed by Plaintiff *pro se* ).

    **State Court Actions:** *Abascal v. Marshall,* Index No. 000520/2007 (N.Y. Sup.Ct., Bronx County) (Walker, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 1/11/07); *Abascal v. City of New York,* Index No. 401171/2006 (N.Y. Sup.Ct., New York County) (Feinman, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 5/31/06); *Abascal v. N.Y.S. Bd. of Parole,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed March 1, 2005) (Canfield, J.); *Abascal v. Maczek,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed Aug. 6, 2004) (Canfield, J.); *Abascal v. Roach,* Judgment of Dismissal (N.Y. Sup.Ct., Albany County, filed Feb. 14, 2004) (Teresi, J.) (dismissing Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Levy,* Index No. 402959/2003 (N.Y. Sup.Ct., New York County) (Wetzel, J.) (Article 78 proceeding, filed by Plaintiff *pro se* on 9/12/03).

**State Court Appeals:** *Abascal v. Maczek,* 5 N.Y.3d 713, 806 N.Y.S.2d 164, 840 N.E.2d 133 (N.Y.2005) (denying motion for poor person relief during appeal from decision by Third Department in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. N.Y.S. Bd. of Parole,* 23 A.D.3d 740, 802 N.Y.S.2d 803 (N.Y.App.Div., 3d Dept., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Roach,* 802 N.Y.S. 569 (N.Y.App. Div., 3d Dept ., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ); *Abascal v. Maczek,* 19 A.D.3d 913, 796 N.Y.S.2d 757 (N.Y.App.Div., 3d Dept., 2005) (appeal from decision by N.Y. Sup.Ct. in Article 78 proceeding, filed by Plaintiff *pro se* ).

4    (*Id.*)

5    I note that Plaintiff appears to have made a material misrepresentation to the Court in his Third Amended Complaint. Specifically, in his Third Amended Complaint (which was verified), Plaintiff swore that, as of July 8, 2006 (the date of his Third Amended Complaint), the only "lawsuit[ ] [that Plaintiff had ever filed] in any state [or] federal court relating to [his] imprisonment" was the action of *Abascal v. New York,* Index No. 107872 (N.Y. Ct. of Cl.) (Minarik, J.) (action filed on 6/12/03, and judgment entered for Plaintiff on 11/22/04). (Dkt. No. 24, ¶ 6 [Plf.'s Third Am. Compl.].) While I have not found any record of this action in the New York State Unified Court System's electronic docketing system (and I therefore have not taken it into account in assessing Plaintiff's litigation experience), I have found record of at least *seven* other actions regarding Plaintiff's imprisonment which had been filed by Plaintiff before July 8, 2006. (*See, supra,* note 3 of this Report-Recommendation.) Generally, such information is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether

the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude. While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff chose to provide the information and swore to the truthfulness of it. Ordinarily, I would find such a material misrepresentation to be sanctionable. However, because Plaintiff may well have been laboring under a mental illness at the time he drafted his Third Amended Complaint, I will not recommend that the Court sanction him for his material misrepresentation.

Construed with an *extra* degree of liberality, Plaintiff's Third Amended Complaint alleges as follows.

1. On December 27, 2001, Plaintiff was transferred from the Central New York Psychiatric Center ("CNYPC") to Auburn Correctional Facility ("Auburn C.F."), where he was interviewed by Defendant Hilton. (*Id.* at ¶ 10.) During the interview, Defendant Hilton asked Plaintiff if he wanted to live in the Intermediate Care Program ("ICP"). (*Id.*) Plaintiff responded that he neither wanted to live in ICP nor take psychotropic medication, but that he wanted to live in the prison's general population. (*Id.*)

2. At some point between December 27, 2001, and April 25, 2002, Plaintiff sent a letter to then-Governor George Pataki concerning "symptoms and body scars" that Plaintiff had experienced or sustained while in the custody of DOCS. (*Id.* at ¶ 12.) While Plaintiff does not attach a copy of this letter to his Third Amended Complaint, he does describe the substance of the letter in some detail. (*Id.* at ¶ 12.a.-12.d.) Among the symptoms described in the letter were the following: (1) the sensation that Plaintiff's "mind was being read" and that he had been subjected to the "broadcasting of [his] thoughts [by someone else]"; (2) the sensation that Plaintiff had been subjected to "sleep deprivation," "changes to [his] hearing," "waking visions ... synced with body motions," "wild flailing of arms and legs, sometimes followed by rigor mortis," "very high body heat," "sudden, violent itching" in "hard-to-reach

areas," "electrical shock[s]," "cigarette burn type scars," and "penis shriveling"; and (4) the fact that he had been "sexually provoked by female staff for many years while in the custody of the DOCS." (*Id.*)

3. Apparently, Plaintiff alleges that these symptoms and scars were caused by the "pscyho-electronic weapons" and "behavior modification experimentation" (including "personality breaking techniques") to which he has been involuntarily subjected by DOCS. (*Id.* at ¶¶ 16, 40, 41 & Ex. 8.)

4. On April 25, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had sent to Governor Pataki. (*Id.* at ¶ 12.)

**\*5**  5. At some point before June 17, 2002, Plaintiff sent a letter to DOCS Deputy Commissioner of Corrections Lucien LeClaire, concerning the above-described "symptoms and body scars." (*Id.* at ¶ 13 .)

6. On June 17, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had sent to Deputy Commissioner LeClaire. (*Id.*) During the meeting, Defendant Hilton asked Plaintiff if the symptoms he alleged were becoming worse, and Plaintiff responded that they were. (*Id.*)

7. At some point before July 18, 2002, Plaintiff sent a letter to the DOCS Inspector General concerning the above-described "symptoms and body scars." (*Id.* at ¶ 14.)

8. On July 18, 2002, a correctional sergeant informed Plaintiff that he could not leave his cell until he had been interviewed by a Mental Health Unit psychologist because of the letter he had written to the DOCS Inspector General, concerning the above-described "symptoms and body scars." (*Id.*)

9. On July 19, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had written to the DOCS Inspector General. (*Id.* at ¶ 15.) During the meeting, Plaintiff told Defendant Hilton that he just wanted to be left alone so that he could pursue his college education. (*Id.*) In addition, Plaintiff showed Defendant Hilton his "irritated face," which bore "multiple little bumps, and patches of redness." (*Id.*)

10. At some point before October 24, 2002, Plaintiff sent a letter to a New York State senator concerning the above-described "symptoms and body scars." (*Id.* at ¶ 16.)

11. On October 24, 2002, Defendant Hilton "interviewed" Plaintiff because of the letter he had written to the New York State senator. (*Id.*) During the meeting, Defendant Hilton (and Dr. Mitchell Langbart, who was also present) tried to persuade, or "coerce," Plaintiff to stop writing such letters. (*Id.*) Specifically, Dr. Langbart asked Plaintiff, "Do you want to be transferred to CNYPC and miss your college semester, or stay in the facility and be able to finish it?" (*Id.*) [6] Plaintiff responded that he would "do what he had to do," and that Langbart and Hilton would do "what they wanted to do." (*Id.*) Defendant Hilton responded that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (*Id.*) Subsequently, Plaintiff was placed in a "strip cell" with just his underwear and a mattress. (*Id.*)

[6]     Apparently, during the time in question, Plaintiff had already received his college degree and was pursuing an advanced degree at Cornell University. (Dkt. No. 24, Ex. 5 [Plf.'s Third Am. Compl., attaching Plaintiff's letter of 31/1/03 to James L. Stone, Commissioner of New York State Office of Mental Health]; *see also* Dkt. No. 24, Ex. 8 at 3 [attaching medical record summarizing Plaintiff's education].)

12. On October 29, 2002, Plaintiff was transferred back to CNYPC. (*Id.* at ¶ 18.) While at CNYPC, Plaintiff was told by Dr. Qamar Abassi that he had been sent to CNYPC because he had not been eating. (*Id.*) Plaintiff responded that that was false. (*Id.*)

13. On December 6, 2002, Plaintiff was again transferred from CNYPC to Auburn C.F. (*Id.* at ¶ 28.) Plaintiff alleges that, during the two months that followed the transfer, he wrote a letter to a politician concerning the above-described "symptoms and body scars," and that he was "interviewed" by "an individual from [the Mental Health Unit" because of the letter (and apparently urged not to write such letters). (*Id.* at ¶ 29.) He also alleges that, during the six months that followed the interview, he was interviewed by two other psychologists. (*Id.* at ¶¶ 37, 39.) However, he does not allege that any of these three interviews were conducted by, or even were caused by, Defendant Hilton. (*See generally id.* at ¶¶ 28-45 [not mentioning Defendant Hilton]; *see also id.* at Exs. 1-3, 5 [attaching grievances and complaint-letters not mentioning Defendant Hilton].)

**D. Summary of Arguments on Defendant Hilton's Motion to Dismiss**

2008 WL 268366

**\*6** In his memorandum of law, Defendant Hilton argues that Plaintiff's claims against him, asserted in Plaintiff's Third Amended Complaint, should be dismissed for failure to state a claim for two alternative reasons: (1) Plaintiff fails to allege facts plausibly suggesting that Defendant Hilton was personally involved in any of the constitutional violations alleged by Plaintiff; and (2) even assuming as true all of the factual allegations of Plaintiff's Third Amended Complaint, Defendant Hilton is protected from liability by the doctrine of qualified immunity, as a matter of law. (Dkt. No. 37, Part 2, at 4-7.)

In his memorandum of law, Plaintiff responds to both of Defendant Hilton's arguments. With regard to Defendant Hilton's personal-involvement argument, Plaintiff argues that (1) Paragraphs 10, 15 and 18 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "arbitrarily classified plaintiff as mentally ill," (2) Paragraphs 12, 13, 14 and 16 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "persecuted him for writing to public officials," (3) Paragraph 16 of his Third Amended Complaint alleges facts plausibly suggesting that Defendant Hilton "threatened" and "coerced" him not to write to public officials, (4) Paragraphs 14 and 16 of his Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton, wrongfully "secluded" him in a "strip cell," and (5) Paragraph 18 of his Third Amended Complaint alleges facts plausibly suggesting that Defendant Hilton transferred Plaintiff to the Central New York Psychiatric Center for writing to a State Senator. (Dkt. No. 40, Part 1, at 3-6.)

With regard to Defendant Hilton's qualified immunity argument, Plaintiff essentially argues that Defendant Hilton fails to appreciate that it was clearly established that the First Amendment forbade Defendant Hilton from inhibiting Plaintiff from, or retaliating against him for, exercising his right to send letters of complaint to public officials about his prison conditions. (*Id.* at 6-9.)

## II. GENERAL LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[7] or (2) a challenge to the legal cognizability of the claim.[8]

7   See 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

8   See *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at \*4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal

sufficiency of the cause of action under Rule 12[b] [6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002)* (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [9] The purpose of this rule is to "facilitate a proper decision on the merits." [10] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [11]

[9] *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley,* 355 U.S. at 47).

[10] *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

[11] *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

**\*7** The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [12] However, it is well established that even this liberal notice pleading standard "has its limits." [13] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [14]

[12] *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[13] 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

[14] *See, e.g., Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-412, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002)] (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1968-1969, 167 L.Ed.2d 929 (2007).[15] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-1974. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly]* is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original],

[15]    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

It must be remembered that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[16] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se."*[17] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[18] Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[19]

[16]    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

[17]    *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

[18]    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[19]    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

**\*8** Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[20] Moreover, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[21] This is because, even when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[22]

[20]    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed.*

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 131 of 170
Abascal v. Hilton, Not Reported in F.Supp.2d (2008)

2008 WL 268366

*Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

21    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

22    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

## III. ANALYSIS

### A. Whether Plaintiff Has Failed to State a First Amendment Claim

Liberally construed, Plaintiff's Third Amended Complaint asserts two related but different types of First Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton retaliated against Plaintiff for engaging in speech or activity that was protected by the First Amendment; and (2) a claim that Defendant Hilton impermissibly interfered with Plaintiff's right to petition the government for the redress of grievances. (Dkt. No. 24, ¶ 47 & Prayer for Relief, ¶ A.1.)

### 1. Retaliation for Engaging in Protected Activity

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[23] Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[24] Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[25] As the Second Circuit has noted,

23    *See Gill v. Pidlypchak,* 389 F.3d 379, 380-81 (2d Cir.2004).

24    *See Gill,* 389 F.3d at 381-383.

25    *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.[26]

26    *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) [citations omitted], *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S .C. § 1983, a plaintiff must prove by a preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff-namely, action that would deter

a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. [27] Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. [28]

[27]    *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ).

[28]    *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) [citations omitted].

**\*9** Here, Plaintiff appears to argue that the "protected" speech or conduct in which he had engaged when he was punished by Defendant Hilton consisted of sending letters to four New York State officials (Governor George Pataki, DOCS Deputy Commissioner Lucien LeClaire, the DOCS Inspector General, and a New York State senator) concerning "symptoms and body scars" that he had allegedly experienced or sustained while in the custody of DOCS. (Dkt. No. 24, ¶¶ 12-14, 16.) Although Plaintiff does not specifically allege that his letters contained complaints of mistreatment and requests for intervention, I liberally construe them as doing so. Furthermore, for the sake of argument, I will assume that such letters constituted speech or conduct that was "protected" by the First Amendment.

The first problem with Plaintiff's retaliation claim is that, by and large, it fails to allege any facts plausibly suggesting that Defendant Hilton took any "adverse action" against Plaintiff. For example, Plaintiff alleges that, following his letters to Governor Pataki, Deputy Commissioner LeClaire, and the Inspector General, Defendant Hilton only "interviewed" Plaintiff about the subject matter of the letters. (Dkt. No. 24, ¶¶ 12, 13, 15, 16.) It is difficult for me to imagine circumstances under which an inquiry by a prison psychologist about a prisoner's complaints that his "mind was being read," and he was being subjected to "waking visions," "changes to [his] hearing," and the involuntary "flailing of [his] arms and legs" could be construed as anything other than sound medical treatment. (I certainly cannot conceive of it as being "adverse action.") I note that, in the sole detailed account of these "interviews" that Plaintiff provides in his

Third Amended Complaint, he acknowledges that Defendant Hilton had asked him if the symptoms alleged in his letters were getting worse. (*Id.* at ¶ 13.)

The only "adverse action" that Plaintiff has even remotely alleges is Plaintiff's placement in a "strip cell with just his underwear and mattress" on October 24, 2002, after Defendant Langbart tried to "coerce" Plaintiff to stop writing letters like his recent letter to a New York State senator concerning his alleged "symptoms and body scars," and Plaintiff had responded that he would "do what he had to do." (*Id.* at ¶ 16.) For the sake of argument, I will assume this is "adverse action." Even it were an "adverse action," Plaintiff's retaliation claim would fail.

This is because the second problem with Plaintiff's retaliation claim is that he alleges absolutely no facts plausibly suggesting that this particular instance of "adverse action" was *causally connected* to the "protected conduct" in which Plaintiff had engaged. Plaintiff's allegation that, immediately before he was placed in a "strip cell," Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge" is too cryptic and innocuous to plausibly suggest a causal link between the "protected conduct" and the "adverse action." (*Id.*) Moreover, any shred of a conceivable causal connection between Defendant Hilton's statement and Plaintiff's placement in a "strip cell" is severed when one considers the *nature* of the symptoms of which Plaintiff had complained, which included a belief that his "mind was being read," that his hearing was being manipulated, that he saw "waking visions," that he felt "violent itching" which could not be stopped, that he lacked control of his arms and legs, that he was being scarred and burned by "electrical shock[s]," and that he was being "provoked by female staff." (*Id.* at ¶ 12.) By any rational assessment, it was these symptoms, and not Defendant Hilton, that *caused* Plaintiff to be placed in a strip cell.

**\*10** Indeed, Plaintiff does not even allege sufficient facts to plausibly suggest that it was Defendant Hilton, and not Defendant Langbart, who took the "adverse action" of placing Plaintiff in the "strip cell." (*Id.* at ¶ 16.) I note that it was Defendant Langbart, not Defendant Hilton, whom Plaintiff alleges wrongfully transferred him to the CNYPC less than a week after this October 24, 2002, placement in a "strip cell." (Dkt. No. 24, ¶ 18 & Exs. 1-2.) As a result, I am persuaded that Defendant Hilton's lack-of-personal-involvement argument serves as an alternative ground for

dismissing Plaintiff's retaliation claim against Defendant Hilton. [29]

29    I note that none of the paragraphs (of Plaintiff's Third Amended Complaint) cited in Plaintiff's opposition memorandum of law actually alleges facts plausibly suggesting Defendant Hilton's personal involvement in any constitutional violation. (Dkt. No. 40, Part 1, at 4.) For example, Paragraphs 10, 15 and 18 of Plaintiff's Third Amended Complaint do not allege facts plausibly suggesting either that it was Defendant Hilton who "classified" Plaintiff as mentally ill or that such classification was "arbitrary," as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶¶ 10, 15, 18.) Nor do Paragraphs 12, 13, 14 and 16 of Plaintiff's Third Amended Complaint allege facts plausibly suggesting that Defendant Hilton "persecuted" Plaintiff for writing to public officials, as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶¶ 12-14, 16.) Nor does Paragraph 18 of Plaintiff's Third Amended Complaint allege facts plausibly suggesting that it was Defendant Hilton who caused Plaintiff to be transferred to CNYPC, as Plaintiff argues in his memorandum of law. (*See* Dkt. No. 47, ¶ 18.)

For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's First Amendment retaliation claim against Defendant Hilton.

**2. Interference with Right to Petition Government**

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances." [30] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." [31] "However, this right is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.' " [32] As a result, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. [33] It is worth noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need

in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." [34] " 'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.' " [35]

30    *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

31    *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *modified on other grounds, Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Bourdon v. Loughren,* 386 F.2d 88, 92 (2d Cir.2004) [citations omitted].

32    *Collins v. Goord,* 438 F.Supp.2d 399, 415 (S.D.N.Y.2006) (quoting *Lewis v. Casey,* 518 U.S. 343, 351 [1996] ).

33    *Lewis,* 518 U.S. at 353; *Renelique v. Duncan,* 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr.12, 2007) (Strom, J.); *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994) (Hurd, M.J.).

34    *Collins,* 423 F.Supp.2d at 415-16 (quoting *Lewis,* 518 U.S. at 355).

35    *Id.*

Here, Plaintiff has not alleged facts plausibly suggesting that Defendant Hilton acted *deliberately* and *maliciously* in interfering with Plaintiff's right to petition government officials for the redress of grievances. The closest that Plaintiff comes to doing so is when he alleges that, immediately before he was placed in a "strip cell" on October 24, 2002, Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (Dkt. No. 24, ¶ 16.) Again, this is too cryptic and innocuous a statement to plausibly suggest deliberate malice, especially when one considers Plaintiff's other allegations, which plausibly suggest that Defendant Hilton (who was a prison psychologist) rather promptly responded to Plaintiff's claims of experiencing delusional symptoms, at least one time

Abascal v. Hilton, Not Reported in F.Supp.2d (2008)

2008 WL 268366

with an inquiry as to whether the symptoms were getting worse. (*Id.* at ¶¶ 12, 13, 15, 16.)

**\*11** Even if Plaintiff had alleged such facts, he has not alleged facts plausibly suggesting that Plaintiff suffered any actual injury or that such actual injury was *caused* by Defendant Hilton (as opposed to being caused by someone else, such as Defendant Langbart). For example, as stated earlier, it was Defendant Langbart, not Defendant Hilton, whom Plaintiff alleges wrongfully transferred him to the CNYPC less than a week after this October 24, 2002, placement in a "strip cell." (*Id.* at ¶ 18 & Exs. 1-2.) As a result, I am persuaded that Defendant Hilton's lack-of-personal-involvement argument serves as an alternative ground for dismissing Plaintiff's interference claim against Defendant Hilton. [36]

[36]    As stated earlier, I note that none of the paragraphs (of Plaintiff's Third Amended Complaint) cited in Plaintiff's opposition memorandum of law actually allege facts plausibly suggesting Defendant Hilton's personal involvement in any constitutional violation. (*See, supra,* note 29 of this Report-Recommendation.)

For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's First Amendment interference claim against Defendant Hilton.

### B. Whether Plaintiff Has Failed to State an Eighth Amendment Claim

Liberally construed, Plaintiff's Third Amended Complaint asserts two related but different types of Eighth Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton was deliberately indifferent to Plaintiff's serious medical needs (for example, by "arbitrarily classifying him as mentally ill"); and (2) a claim that Defendant Hilton subjected Plaintiff to "cruel and unusual" prison conditions by harassing him for writing to public officials, and by placing him, without justification, in a "strip cell with just his underwear and a mattress." (Dkt. No. 24, ¶¶ 16, 47 & Prayer for Relief, ¶ A.1.)

#### 1. Deliberate Indifference to a Serious Medical Need

Generally, to prevail on such a claim, a plaintiff must show two things: (1) that the plaintiff had a sufficiently serious medical need; and (2) that the defendant was deliberately indifferent to that serious medical need. *Estelle v. Gamble,*

*429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976);* *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Here, the only serious medical needs that Plaintiff plausibly alleges are (1) a mental illness involving delusions and/or (2) a collection of skin irritations coupled with possible exposure to cold temperatures (due to his placement in a "strip cell" with only his underwear and a mattress for five days). (Dkt. No. 24, ¶¶ 15, 16, 18, 47.) For the sake of argument, I will set aside the fact that Plaintiff appears to deny that he is, in fact, mentally ill. (*Id.* at ¶¶ 10, 47.) I will also assume that, taken together, these conditions constitute a *serious medical need* for purposes of the Eighth Amendment.

The problem is that Plaintiff has asserted no facts plausibly suggesting that Defendant Hilton acted with any deliberate indifference with regard to this (presumed) serious medical need. To the contrary, Plaintiff alleges facts plausibly suggesting that Defendant Hilton "interviewed" him five times regarding his mental condition, always promptly responding to Plaintiff's claims of experiencing delusional symptoms, and at least once specifically inquiring as to whether the symptoms were getting worse. (*Id.* at ¶¶ 10, 12, 13, 15, 16.) [37] Granted, Plaintiff also alleges that, immediately before he was placed in a "strip cell" on October 24, 2002, Defendant Hilton told him that "all the pain and discomfort that plaintiff was suffering was maybe a revenge." (*Id.* at ¶ 16.) However, this statement-in addition to being cryptic in nature-is too innocuous to plausibly suggest that Defendant Hilton possessed the state of mind necessary to be *deliberately indifferent,* which is a state of mind akin to *criminal recklessness.* [38] Plaintiff is not alleging facts plausibly suggesting criminal recklessness, only facts plausibly suggesting negligence or malpractice. (*See, e.g., id.* at 47 [alleging that Defendant Hilton "arbitrarily classif[ied] plaintiff as mentally ill"].) A claim of negligence or malpractice by a prison medical care provider is not actionable under 42 U.S.C. § 1983. [39]

[37]    I note that Plaintiff also alleges facts plausibly suggesting that, during the relevant time period (December 27, 2001, to October 29, 2002), he received medical care from other employees of Auburn C .F. (*See, e.g.,* Dkt. No. 24, ¶ 11, 16.)

[38]    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a

familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at \*17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at \*15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at \*10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

39    *Farmer,* 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at \*4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or

disagreement with treatment are not actionable under section 1983.") [citations omitted].

*\*12  For both of these alternative reasons, I recommend that the Court dismiss Plaintiff's Eighth Amendment inadequate-medical-care claim against Defendant Hilton.

### 2. Inadequate Prison Conditions

Generally, to prevail on such a claim, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious;* and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005).

Here, the only serious conditions of confinement that Plaintiff plausibly alleges are (1) repeated "interviews" by Defendant Hilton (regarding Plaintiff's complaints of the symptoms described above in Part I.C. of this Report-Recommendation), which conceivably caused Plaintiff to experience anxiety or pressure, and/or (2) incarceration in a "strip cell" for five days (with only his underwear and a mattress) when Plaintiff was suffering from a skin irritation and presumably a mental illness. (Dkt. No. 24, ¶¶ 15, 16, 18, 47.) I have some difficulty concluding that these conditions of confinement, even taken together, are *sufficiently serious* for purposes of the Eighth Amendment. *See Lock v. Clark,* 90-CV-0327, 1992 U.S. Dist. LEXIS 21991, at \*1, 11-12, 1992 WL 559660 (N.D.Ind. March 17, 1992) ("The deprivations alleged by Mr. Lock in this case [which consisted of being confined for seven days in a "strip cell" in a segregation unit] fail to satisfy the objective component of his Eighth Amendment conditions claim, and they do not rise to the level of a constitutional violation."); *Dunkley v. Tate,* 07-CV-0465, 2007 U.S. Dist. LEXIS 73166, at \*2-4, 2007 WL 2900169 (W.D.Va. Oct. 1, 2007) (confinement in "strip cell" for three days did not violate Eighth Amendment as a matter of law). [40]  For example, Plaintiff does not allege that, while in the "strip cell" for five days, he was deprived of "the minimal civilized measure of life's necessities," *Farmer,* 511 U.S. at 834, such as medical care, food, water, warmth or a toilet.

40    *See also Lewis v. Angelone,* 00-CV-0161, 2001 U.S. Dist. LEXIS 25539, at \*12 (E.D.Va. May 16, 2001) ("Lewis has failed to allege facts which suggest his [24-hour] confinement in the strip cell and his confinement in segregation were sufficiently severe and prolonged as to give

rise to an Eighth Amendment claim.") [citation omitted]; *Winn v. Delaware Dept. of Corr.*, 02-CV-0034, 2003 U.S. Dist. LEXIS 18678, at *11, 2003 WL 21456628 (D.Del. Sept. 30, 2003) ("Plaintiff has not presented any facts proving that State Defendants' placing him on strip cell status involves the wanton and unnecessary infliction of pain [sufficient to establish an Eighth Amendment claim.").

Moreover, I note that, in this cruel-and-unusual *punishment* claim, Plaintiff has alleged facts plausibly suggesting that he was placed in a strip cell not as *punishment* but for non-punitive reasons such as (1) to protect his own safety,[41] (2) to protect other prisoners' safety,[42] (3) to protect prison employees' safety,[43] and/or (4) to await a transfer to CNYPC.[44]

[41]    (Dkt. No. 24, ¶¶ 7, 9, 12 [alleging that he was physically assaulted by other inmates on November 23, 2001, and December 24, 2001, and that, *inter alia,* he felt "violent itching" which could not be stopped, and he lacked control of his arms and legs].)

[42]    (*Id.* at ¶ 7 [alleging that, on November 23, 2001, Plaintiff got in a fight with another inmate].)

[43]    (*Id.* at ¶¶ 12, 40, 42 [alleging that the symptoms he experienced included a belief that his "mind was being read" by DOCS, that his hearing was being manipulated by DOCS, that he was being scarred and burned by "electrical shock[s]" administered by DOCS, and that he was being "sexually provoked by female staff."].)

[44]    (*Id.* at ¶¶ 16, 18 [alleging that, five days after Plaintiff was placed in a "strip cell," he was transferred to CNYPC].)

However, even if one were to assume that, taken together, the conditions of confinement alleged by Plaintiff are *sufficiently serious* for purposes of the Eighth Amendment, Plaintiff's inadequate-prison-condition claim would fail. This is because, again, Plaintiff has asserted no facts plausibly suggesting that Defendant Hilton acted with any deliberate indifference to Plaintiff's health or safety. (*See, supra,* Part III.B.1. of this Report-Recommendation.) Indeed, the allegations of Plaintiff's Third Amended Complaint plausibly suggest that Defendant Hilton acted with due regard to

Plaintiff's health or safety. (*Id.*) I note that the "symptoms" of which Plaintiff repeatedly complained to public officials included a belief that his "mind was being read," that he saw "waking visions," that he felt "violent itching" which could not be stopped, that he lacked control of his arms and legs, that he was being scarred and burned by "electrical shock[s]," and that he was being "provoked by female staff." (*Id.* at ¶ 12.) Simply stated, Plaintiff's allegations plausibly suggested that he was a danger to himself (and others) and in need of "interviews" conducted by Defendant Hilton, and placement in a "strip cell" for five days pending a transfer to the CNYPC, where he could receive further evaluation and appropriate treatment.

**\*13**    For this reason, I recommend that the Court dismiss Plaintiff's Eighth Amendment prison-conditions claim against Defendant Hilton.

### C. Whether Plaintiff Has Failed to State a Fourteenth Amendment Claim

Liberally construed, Plaintiff's Third Amended Complaint asserts two different Fourteenth Amendment claims against Defendant Hilton: (1) a claim that Defendant Hilton violated Plaintiff's substantive due process and/or procedural due process rights; and (2) a claim that Defendant deprived Plaintiff of equal protection under the laws. (Dkt. No. 24, ¶ 47 & Prayer for Relief, ¶ A.1.)

#### 1. Due Process

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks and citation omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law." Id.* at 125-126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

### a. Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91-CV-1196, *Memorandum-Decision and Order* (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

The first step in a substantive due process analysis is to identify the constitutional right at stake. Plaintiff does not indicate what right he is claiming. For the sake of argument, I will assume that Plaintiff possessed a protected liberty interest in remaining free from confinement in a strip cell and/or transfer to CNYPC unless DOCS has obtained reasonable grounds to believe that he was suffering from a mental illness involving delusions to such an extent that he poses a threat to himself or others in the correctional facility. [45]

[45]
> I note that I do *not* liberally construe Plaintiff's Third Amended Complaint as alleging that he was forcibly injected with anti-psychotic medications (or that he possessed a protected liberally interest in being free from such forcible injections)-a constitutional claim that I understand that he tried to assert in his original Complaint. (*See* Dkt. No. 5, at 5-6 [Order of Judge Kahn, referring to this attempted claim].) The closest Plaintiff comes to making this claim is when he alleges that, on December 27, 2001, he told Defendant Hilton that he did not want to "take any psychotrophic medication." (Dkt. No. 24, ¶ 10.) Notably missing is any allegation that he was subsequently forced (by Defendant Hilton or anyone) to take any such medication.

The next step in a substantive due process analysis is to consider whether the state action was arbitrary in the constitutional sense and therefore violative of substantive due process. Here, I find that Plaintiff has alleged no facts plausibly suggesting that the state action was arbitrary in the constitutional sense and therefore violative of substantive due process. Indeed, Plaintiff has alleged facts plausibly suggesting that, far from being arbitrary, the actions of Defendant Hilton were reasonable and appropriate. In addition to the litany of delusional symptoms acknowledged by Plaintiff (described above), I note that, when "interviewed"

about them, Plaintiff steadfastly persisted in his beliefs, [46] and refused treatment. [47]

[46]
> (Dkt. No. 24, ¶¶ 13, 15, 16.)

[47]
> (*Id.* at ¶¶ 10, 15 & Exs. 8-9.)

**\*14** As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Hilton.

### b. Procedural Due Process

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient...." *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Here, I find that the Due Process Clause does not give Plaintiff a liberty interest in remaining free from confinement to a "strip cell," given the duration and conditions of that confinement, as alleged by Plaintiff (described above). *See Dunkley v. Tate,* 07-CV-0465, 2007 U.S. Dist. LEXIS 73166, at *2-4, 2007 WL 2900169 (W.D.Va. Oct. 1, 2007) ("In this case, while the conditions of Dunkley's confinement in the strip-cell [for three days] were more restrictive than those applied to inmates in the general population and possibly even segregation, they were not nearly so restrictive and atypical as those at issue in *Wilkinson [v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ]. Therefore, the court finds that Dunkley did not have a liberty interest in remaining out of the strip-cell and, thus, his due process claim fails."). [48]

[48]
> *See also Winn v. Delaware Dept. of Corr.,* 02-CV-0034, 2003 U.S. Dist. LEXIS 18678, at *8, 14, 2003 WL 21456628 (D.Del. Sept. 30, 2003) ("Because plaintiff does not have a constitutionally protected liberty interest at issue, plaintiff's claims [arising from his placement in a 'strip cell' apparently several times for periods of 24 hours] will be dismissed.").

Even if I were to find that Plaintiff possessed a limited such liberty interest, I would find that Plaintiff was, according to his own allegations, given all the process to which he was due under the circumstances. For example, I note that Plaintiff's placement in a "strip cell," and transfer to the CNYPC, was

immediately proceeded by not only three "interviews" with a psychologist about claims of delusional symptoms but a fourth "interview" with both a psychologist *and* a psychiatrist. (Dkt. No. 24, ¶¶ 12, 13, 15, 16.) This last "interview," conducted by two doctors, is reminiscent of the examination conducted by two physicians, under the New York State law, prior to a patient's involuntary commitment to a psychiatric hospital. *See* N.Y. Correction Law § 402(1); N.Y. Mental Hygiene Law ¶ 9.27(a). Furthermore, here, Plaintiff was not even involuntarily *committed* to a psychiatric hospital, only temporarily *transferred* to one (where he previously had been committed) on an emergency basis (for "closer observation" and "diagnostic clarification" as stated in one medical record).[49]

[49]    (Dkt. No. 24, ¶¶ 8, 10, 18 & Ex. 9.)

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Hilton.

### 2. Equal Protection

To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole,* 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11, 1998 WL 34002605 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted,* 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.). Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. *Travis,* 1998 U.S. Dist. LEXIS 23417, at *11, 1998 WL 34002605. However, neither prisoners nor the mentally ill comprise a suspect or quasi-suspect class for Equal Protection purposes. *See Holley v. Carey,* 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23, 2007 WL 2533926 (E.D.Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Coleman v. Martin,* 04-CV-72534, 363 F.Supp.2d 894, 902 (E.D.Mich.2005). As a result, the alleged classification is subject to only "rational basis scrutiny." *Holley,* 2007 U.S. Dist. LEXIS 64699, at *23, 2007 WL 2533926; *Coleman,* 363 F.Supp.2d at 902. To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest." *Holley,* 2007 U.S. Dist. LEXIS 64699, at *23, 2007 WL 2533926; *Coleman,* 363 F.Supp.2d at 902.

*15 Here, Plaintiff has not even alleged facts plausibly suggesting there has been any *classification* at all in this case, i.e., that he was treated differently from anyone else. In any event, he has not alleged any facts plausibly suggesting that the "discrimination" he allegedly experienced was not rationally related to a legitimate state interest, namely, the preservation of safety and order in its prisons, and the diagnosis and treatment of mentally ill prisoners.

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Hilton.

### D. Defendant Hilton's Qualified Immunity Argument

Because I have already concluded that adequate grounds exist upon which to base a recommendation of dismissal of Plaintiff's claims against Defendant Hilton, I need not, and do not, reach the merits of Defendant Hilton's alternative argument in favor of dismissal, namely, his qualified immunity argument.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendant Hilton's motion to dismiss (Dkt. No. 37) be ***GRANTED;*** and it is further

**RECOMMENDED** that those of Plaintiff's claims against Defendant Hilton that are not the subject of Defendant Hilton's motion to dismiss (Dkt. No. 37) be ***DISMISSED*** pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b), and/or Fed.R.Civ.P. 12(h)(3), for the reasons stated above; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Langbart be ***DISMISSED*** with prejudice for failure to serve, for the reasons stated above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

2008 WL 268366

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 268366

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1849454
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Miguel DIAZ, Plaintiff,

v.

K.G. HENLEY et al., Defendants.

9:19-CV-1611 (GLS/DJS)
|
Signed 04/13/2020

**Attorneys and Law Firms**

MIGUEL DIAZ, 18-A-2702, Plaintiff, pro se, Southport
Correctional Facility, P.O. Box 2000, Pine City, NY 14871.

**DECISION AND ORDER**

GARY L. SHARPE, Senior United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Miguel Diaz commenced this action by filing
a pro se civil rights complaint pursuant to 42 U.S.C. § 1983
("Section 1983"), together with an application for leave to
proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt.
No. 2 ("IFP Application"). By Decision and Order filed on
January 8, 2020, plaintiff's IFP Application was granted, but
following review of the complaint pursuant to 28 U.S.C. §
1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court found
that it was subject to dismissal for failure to state a claim
upon which relief may be granted. Dkt. No. 4 ("January 2020
Order"). In light of his pro se status, plaintiff was afforded an
opportunity to amend his complaint. *Id.* at 17-19.

Thereafter, plaintiff timely filed an amended complaint.
Dkt. No. 6 ("Am. Compl."). By Decision and Order filed
on February 28, 2020, the Court reviewed the amended
complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28
U.S.C. § 1915A(b) and found that it was subject to dismissal
for failure to state a claim upon which relief may be granted.
Dkt. No. 8 ("February 2020 Order"). In light of plaintiff's pro
se status, the Court afforded plaintiff a final opportunity to
amend. *Id.* at 5-6.

Presently before the Court is plaintiff's second amended
complaint. Dkt. No. 11 (SAC).

**II. DISCUSSION**

The legal standard governing the dismissal of a pleading for
failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)
(B) and 28 U.S.C. § 1915A(b) was discussed at length in the
January 2020 Order and it will not be restated in this Decision
and Order. *See* January 2020 Order at 2-4.

In his original complaint, plaintiff asserted claims against
the following individuals based on alleged wrongdoing
that occurred while plaintiff was incarcerated at Great
Meadow Correctional Facility ("Great Meadow C.F."):
Chief Hearing Officer K.G Henley; Corrections Sergeant
Waldren; Corrections Lieutenant Fisher; Superintendent
Christopher Miller; Deputy Superintendent of Security
Caron; Corrections Officer Burns; and Acting Superintendent
Donita McIntosh. *See generally* Compl. The complaint was
construed to assert Eighth Amendment failure-to-protect
claims, Eighth Amendment conditions-of-confinement
claims, Fourteenth Amendment equal protection claims, and
Fourteenth Amendment due process claims against each of
the aforementioned defendants in their individual capacities.
*See* January 2020 Order at 4-6.

Plaintiff's amended complaint was virtually identical to his
original complaint, except that the amended complaint did
not include any allegations of wrongdoing by defendants
McIntosh, Caron, and Burns, and expressly identified the
constitutional amendments under which plaintiff asserted his
claims for relief. *See* Am. Compl. at 5-6. As a result, the Court
construed the amended complaint to assert the same claims
as the original complaint against only defendants Henley,
Waldren, Fisher, and Miller. *See* February 2020 Order at 3.

Plaintiff's second amended complaint re-asserts claims
against the same seven individuals named in the original
complaint, but with no more detail than the prior
pleadings. *See generally* SAC. Thus, the Court construes
the allegations in the second amended complaint only to re-
assert Eighth Amendment failure-to-protect and conditions-
of-confinement claims, and Fourteenth Amendment equal
protection and due process claims.

**\*2** With respect to plaintiff's Eighth Amendment claims,
the second amended complaint does not contain any new
allegations regarding the conditions of plaintiff's SHU
confinement, such as who deprived him of amenities, or who
knew that he was denied amenities. *See generally* SAC. Thus,
the Court has no basis to plausibly infer that any of the
named defendants were either responsible for, or acted with

deliberate indifference to, the conditions of plaintiff's SHU confinement. Accordingly, and for the reasons set forth in the January 2020 Order, plaintiff's Eighth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Similarly, plaintiff's second amended complaint does not contain any new allegations in support of his equal protection claim. *See generally* SAC. Accordingly, and for the reasons set forth in the January 2020 Order, plaintiff's Fourteenth Amendment equal protection claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Lastly, with respect to plaintiff's Fourteenth Amendment due process claim, plaintiff's second amended complaint alleges only that, at the time plaintiff received a misbehavior report from defendant Waldren, he "was in the SHU for prior issues that had nothing to do with this matter." SAC at 5. As with the prior pleadings, the second amended complaint lacks any allegations indicating when plaintiff's SHU confinement for "prior issues" was scheduled to end. Thus, the Court still has no basis to plausibly infer that plaintiff was confined in SHU for any amount of time as a result of defendant Henley's disciplinary determination arising out of the misbehavior report issued by defendant Waldren, which was reversed on August 19, 2019. Accordingly, and for the reasons set forth in the February 2020 Order, plaintiff's Fourteenth Amendment due process claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

In light of the foregoing, plaintiff's second amended complaint is subject to dismissal in its entirety. Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *Abascal v. Hilton,* No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) ("Of course, granting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd,* 357 F. App'x 388 (2d Cir. 2009); *accord Shuler v. Brown,* No. 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. Mar. 23, 2009); *Smith v. Fischer,* No. 07-

CV-1264, 2009 WL 632890, at *5 & n.20 (N.D.N.Y. Mar. 9, 2009).

Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord Brown v. Peters,* No. 6:95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile." (citation omitted)); *see Foman,* 371 U.S. at 182 (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." (citation omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice." (citation omitted)); *Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied"). [1] This rule applies even to pro se plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at *1.

---

[1]     The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez,* 171 F.3d at 796; *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007). The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007). *See Gomez,* 171 F.3d at 796 (relying on *Branum v. Clark,* 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson,* 355 U.S. 41, 45-46 [1957]). Thus, this standard does not appear to be an accurate recitation of the governing law.

**\*3** Here, plaintiff has already been given two opportunities to amend, with specific explanations as to why his allegations failed to state one or more claims upon which relief may be granted, and he has nonetheless failed to adequately address these deficiencies. Thus, the defects in plaintiff's claims are substantive rather than merely formal, such that further amendment would be futile. Accordingly, this action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**WHEREFORE**, it is hereby

**ORDERED** that the second amended complaint (Dkt. No. 11) is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall **TERMINATE** all defendants and close this case; and it is further

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 1849454

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Bivona v. McLean, Not Reported in Fed. Supp. (2019)

2019 WL 2250553

2019 WL 2250553
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joseph BIVONA, Plaintiff,

v.

Bryan S. MCLEAN, et al., Defendants.

9:19-CV-0303 (MAD/TWD)
|
Signed 05/24/2019

**Attorneys and Law Firms**

JOSEPH BIVONA, 18-R-1155, Plaintiff, pro se, Franklin
Correctional Facility, P.O. Box 10, Malone, NY 12953.

**DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff Joseph Bivona commenced this action by filing
a pro se civil rights complaint pursuant to 42 U.S.C. § 1983
("Section 1983"), together with an application for leave to
proceed in forma pauperis. Dkt. No. 2 ("Compl."); Dkt. No.
7 ("IFP Application"). [1] By Decision and Order of this Court
filed April 9, 2019, plaintiff's IFP Application was granted,
but following review of the complaint pursuant to 28 U.S.C.
§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found
that the complaint was subject to dismissal for failure to state
a claim upon which relief may be granted. Dkt. No. 10 (the
"April 2019 Order"). In light of his pro se status, plaintiff was
afforded an opportunity to submit an amended complaint. *Id.*
Presently before this Court is plaintiff's amended complaint.
Dkt. No. 11 ("Am. Compl.").

[1]    This case was transferred to the Northern District
of New York from the Southern District of New
York on March 6, 2019. *See* Dkt. No. 5. Thereafter,
the action was administratively closed based on
plaintiff's failure to comply with the filing fee
requirement. Dkt. No. 6. Plaintiff then properly
filed his IFP Application, together with an inmate
authorization form, and this action was re-opened.
Dkt. Nos. 7, 8, and 9.

**II. DISCUSSION**

 **A. The Complaint and April 2019 Order**
In his original complaint, plaintiff asserted claims based
on alleged wrongdoing that occurred while he was in the
custody of the New York State Department of Corrections and
Community Supervision ("DOCCS") at Ulster Correctional
Facility ("Ulster C.F."). *See generally* Compl.

The complaint was construed to assert Fourteenth
Amendment due process claims against Corrections
Officer McLean, Corrections Officer Crandall, Senior
Offender Rehabilitation Coordinator C. Loarca, and DOCCS
Commissioner Annucci based on allegations that plaintiff was
wrongfully confined in a special housing unit ("SHU") for
seventy-three days as a result of a false misbehavior report,
false statements, and a denial of procedural due process at a
disciplinary hearing. *See* April 2019 Order at 4-5.

Following review of the complaint pursuant to 28 U.S.C. §
1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's claims
were dismissed without prejudice for failure to state a claim
upon which relief may be granted. *See* April 2019 Order at
8-10.

 **B. Review of the Amended Complaint**
Because plaintiff is proceeding in forma pauperis and is an
inmate suing government employees, his amended complaint
must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)
(B) and 28 U.S.C. § 1915A(b). The legal standard governing
the dismissal of a pleading for failure to state a claim pursuant
to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was
discussed at length in the April 2019 Order and it will not be
restated in this Decision and Order. *See* April 2019 Order at
2-4.

Plaintiff's amended complaint contains new allegations
regarding the incident giving rise to the misbehavior report at
issue, the conditions of his SHU confinement, and defendant
Annucci's alleged personal involvement in the identified
constitutional violations. *See generally,* Am. Compl. The
following facts are set forth as alleged by plaintiff in his
amended complaint.

 **\*2** On June 17, 2018, defendant McLean "found
contraband ... in an area in which any inmate or correction
officer has access." Am. Compl. at 3. Plaintiff "was not
present" when the contraband was located. *Id.*

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 144 of 170
Bivona v. McLean, Not Reported in Fed. Supp. (2019)
2019 WL 2250553

Instead of conducting an investigation, defendant McLean determined that plaintiff was responsible for the contraband. Am. Compl. at 3. Defendant McLean spoke with his supervisor, defendant Crandall, who "made a fabricated statement" that resulted in a false misbehavior report prepared by defendant McLean, which charged plaintiff with responsibility for the contraband. *Id.* Plaintiff was "illegally" placed in SHU following the discovery of the contraband, prior to being afforded a disciplinary hearing. *Id.*

Thereafter, plaintiff received a disciplinary hearing, where defendant Loarca acted as the hearing officer. Am. Compl. at 3. Although the false statements in the misbehavior report were "not hard to comprehend[,]" and defendant Loarca "knew something was sadly wrong[,]" defendant Loarca found plaintiff guilty of the charges and sentenced him to an unidentified amount of time in SHU. *Id.*

While in SHU, plaintiff "suffered breathing problems ... due to pepper spray used at the facility[,]" was deprived of fresh air because "the windows were broken and made to stay shut[,]" had only cold water for showering, with no curtain for privacy, and was denied hot meals and one of his daily meals on six different days. Am. Compl. at 4-5. Plaintiff was released from SHU on August 28, 2018, following a reversal of the disciplinary hearing determination. *Id.* at 5. As of that date, plaintiff had spent a total of seventy-three days confined in SHU. *Id.*

Liberally construed, the amended complaint asserts Fourth Amendment privacy claims, Eighth Amendment conditions-of-confinement and failure-to-protect claims, Fourteenth Amendment due process claims, and related state law claims against each of the defendants. *See generally,* Am. Compl. Plaintiff's claims against defendant Annucci are asserted under a theory of supervisory liability. *Id.* at 6.

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### 1. Fourth and Eighth Amendment Claims

Plaintiff's Fourth and Eighth Amendment claims are based on the alleged constitutional violations that occurred while plaintiff was confined in SHU. The amended complaint lacks any allegations which plausibly suggest that any of the named defendants directly participated in any of the alleged

deprivations plaintiff suffered while in SHU, or were aware of the conditions of plaintiff's SHU confinement at any point prior to his release from SHU.

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)); *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to ... § 1983 suits." *Iqbal* 556 U.S. at 676; *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.").

**\*3** Prior to *Iqbal,* the Second Circuit held that supervisory personnel may be considered "personally involved" in an alleged constitutional violation only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir. 1986)). [2]

[2]     The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer,* 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 145 of 170

Bivona v. McLean, Not Reported in Fed. Supp. (2019)

2019 WL 2250553

a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon, 720 F.3d at 139*)). For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

With respect to the third *Colon* factor, "[a] policy or custom can be explicitly established in an adopted rule or regulation, or may exist if the 'violative practice is persistent and widespread,' and if the acts of subordinate employees 'imply the constructive acquiescence of senior policy-making officials.' " *Mitchell v. Cuomo*, No. 9:17-CV-0892 (TJM/DJS), 2017 WL 8780773, at *5 (N.D.N.Y. Dec. 6, 2017) (quoting *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 453 (S.D.N.Y. 2004)). "Allegations that an abusive policy existed are not enough to state a claim." *Mitchell*, 2017 WL 8780773, at *5. Rather, a plaintiff "must allege facts that suggest how and when the supervisory defendant was on notice of previous incidents." *Id.* (citing *Carpenter v. Apple*, No. 9:15-CV-1269 (GTS/CFH), 2017 WL 3887908, at *10 (N.D.N.Y. Sept. 5, 2017) (finding that the plaintiff adequately plead liability under the third *Colon* factor because he alleged that the defendant was on notice of previous incidents at the facility involving male corrections officers having inappropriate sexual contact with female detainees); *Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011) (dismissing the plaintiff's allegations of a policy or custom due to "the passage of time and the installation of a new DOC Commissioner and other supervisory staff between the prior violent incidents and the alleged abuse of Plaintiff")); *see also Rahman v. Fischer*, No. 08-CV-4368, 2010 WL 1063835, at *5 (S.D.N.Y. Mar. 22, 2010) (finding allegation that defendant "received 'several' complaints of staff assaulting prisoners" to be "an insufficient allegation of notice of any policy or custom of assaults by correction officers"); *Martin v. Patterson*, No. 9:09-CV-1372 (LEK/ATB), 2010 WL 3033796, at *3 (N.D.N.Y. July 16, 2010) ("Plaintiff's conclusory allegations that defendants failed to properly train staff and investigate the matter, and that current policy condones excessive force, is not enough to establish that defendant Carlsen (or any defendant) was aware of any history of excessive force toward plaintiff or at Ulster in general."), *report and recommendation adopted by* 2010 WL 3033809 (N.D.N.Y. Aug. 3, 2010).

 *4  With respect to the fourth *Colon* factor, a "plaintiff must show that the defendant knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable

supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). "Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability." *White v. Fischer*, No. 9:09-CV-0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010).

Plaintiff's allegation that defendants Crandall, McLean, and Loarca were responsible for his wrongful SHU confinement is not enough to plausibly suggest their personal involvement in any constitutional violation that occurred while plaintiff was in SHU. Moreover, with respect to defendant Annucci, plaintiff's allegations of personal involvement based on defendant Annucci's alleged creation or ratification of a policy under which the alleged constitutional violations occurred, and failure to adequately hire and train DOCCS employees, are entirely conclusory. For example, plaintiff has not articulated in any respect the nature of any purported custom or policy at Ulster C.F. under which any alleged constitutional violations occurred. Similarly, the amended complaint lacks any allegations which plausibly suggest that defendant Annucci knew or should have known that there was a high degree of risk that officials overseeing the SHU at Ulster C.F. would take steps to deny plaintiff access to a shower curtain, hot water for showering, meals, and a working window. *See, e.g., Nash v. McGinnis*, 585 F. Supp. 2d 455, 460 (W.D.N.Y. 2008) ("Although plaintiff need not plead facts in great detail, the formulaic allegation that [the Superintendent] was aware of the alleged violations and did nothing to stop them from occurring, without some factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that [the Superintendent] was personally involved in the alleged constitutional deprivations.").

Accordingly, plaintiff's Fourth and Eighth Amendment claims against defendants Crandall, McLean, Loarca, and Annucci are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Fourteenth Amendment Claims

In the April 2019 Order, the Court discussed the applicable legal standard governing plaintiff's Fourteenth Amendment

Bivona v. McLean, Not Reported in Fed. Supp. (2019)

2019 WL 2250553

due process claims, which will not be repeated herein. *See* April 2019 Order at 5-8.

As with the original complaint, plaintiff's amended complaint once again lacks any allegations explaining how plaintiff was denied due process during his disciplinary hearing. Plaintiff does not allege, for example, that he was denied (1) access to an assistant, (2) requested documents or witnesses, or (3) an opportunity to testify or challenge documents or witnesses presented. [3] Nor does he allege that defendant Loarca relied solely on a false misbehavior report in finding him guilty of the charges therein. [4] Instead, plaintiff alleges, in entirely conclusory fashion, that defendant Loarca "did not know how hearings are to proceed[,]" failed to "comprehend the false statements in the misbehavior report[,] ... refused to properly investigate[,]" and conducted a "one sided" hearing despite knowing "something was sadly wrong[.]" Am. Compl. at 3. These allegations are insufficient to plausibly suggest that plaintiff was not afforded the requisite process to which he was entitled. *See, e.g., Gillard v. Rovelli*, No. 9:12-CV-083 (LEK/CFH), 2014 WL 4060025, at *2, *13 (N.D.N.Y. Aug. 14, 2014) (granting motion for judgment on the pleadings and dismissing due process claim against hearing officer, noting that inmate's allegation that hearing officer failed to act as an impartial hearing officer and "staged" the hearing was entirely conclusory); *De Ponceau v. Bruner*, No. 9:09-CV-0605 (GTS/DEP), 2012 WL 1030415, at *10 (N.D.N.Y. Feb. 21, 2012) (noting that plaintiff's allegation that hearing officer conducted a "one sided" Tier III disciplinary hearing was entirely conclusory, and recommending dismissal of procedural due process claim for failure to state a claim upon which relief may be granted), *report and recommendation adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012); *Rush v. Canfield*, 649 Fed. App'x 70, 71 (2d Cir. 2016) ("Rush's assertion that he was 'denied the right to call witnesses and the right to assistance,' ... is a bare legal conclusion incapable of surviving a motion to dismiss").

[3]  Plaintiff also does not allege how long he was confined in SHU prior to the conclusion of his disciplinary hearing, or any facts which plausibly suggest that the conditions of his SHU confinement during this unidentified period were "atypical" in relation to the ordinary incidents of prison life.

[4]  The amended complaint is also devoid of any facts which plausibly suggest that defendants McLean and/or Crandall made false statements

in retaliation for plaintiff's engagement in some protected activity.

**\*5** Accordingly, plaintiff's Fourteenth Amendment due process claims against defendants Crandall, McLean, Loarca, and Annucci are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. State Law Claims

Based on the dismissal of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims at this time. *See* 28 U.S.C. § 1367(c)(3); *Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed). The Court would add only that "[v]iolations of state law do not give rise to liability under § 1983." *Price v. Cully*, No. 9:11-CV-0977 (LEK/TWD), 2012 WL 4109024, at *3 (N.D.N.Y. Aug. 30, 2012) (citing *Doe v. Conn. Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990)), *report and recommendation adopted by* 2012 WL 4107753 (N.D.N.Y. Sept. 18, 2012); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) ("A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ...").

### III. CONCLUSION

After reviewing plaintiff's amended complaint, and according it the utmost liberality in light of his pro se status, the Court is not able to discern either a factual or legal basis for this action. Accordingly, and in light of the foregoing, plaintiff's amended complaint is dismissed in its entirety.

Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.)

2019 WL 2250553

("Of course, granting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 Fed. App'x 388 (2d Cir. 2009); *accord, Shuler v. Brown*, No. 07-CV-0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. Mar. 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.), *Smith v. Fischer*, No. 07-CV-1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. Mar. 9, 2009) (Hurd, J., adopting Report-Recommendation by Lowe, M.J.). [5]

[5]    *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend was not an abuse of discretion where movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 Fed. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of pro se plaintiff's amended complaint without leave to amend, for failure to state a claim upon which relief can be granted, without engaging in analysis of whether second amended complaint would be futile); *Yang v. New York City Trans. Auth.*, No. 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) ("Yang's amended complaint fails to remedy this defect in his pleadings.... His equal protection claim is dismissed."), *aff'd*, 71 Fed. App'x 90 (2d Cir. 2003).

**\*6**  In this case, plaintiff has already been afforded an opportunity to amend his complaint. In addition, plaintiff was specifically advised of the deficiencies in his original complaint with respect to his Fourteenth Amendment disciplinary due process claims, yet he once again failed to offer any non-conclusory allegations regarding his disciplinary hearing, and the process he was not afforded.

Accordingly, this action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983. [6]

[6]    Although plaintiff's federal constitutional claims are dismissed with prejudice, plaintiff is free to pursue any available state law claims in the appropriate state court.

**WHEREFORE**, it is hereby

**ORDERED** that this action alleging federal claims under Section 1983 is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. The Clerk is directed to terminate all of the defendants and close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2250553

---

End of Document                                     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4055296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Haithem HASAN, Plaintiff,

v.

ONONDAGA COUNTY, et al., Defendants.

5:18-CV-806 (GLS/ATB)
|
Signed 08/02/2018

**Attorneys and Law Firms**

HAITHEM HASAN, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

*1 The Clerk has sent to the court an amended [1] civil rights complaint ("AC"), together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Haithem Hasan. (Dkt. Nos. 3, 4).

[1]  The court notes that plaintiff's "Amended Complaint" is a copy of his original complaint attached to a form-civil rights complaint. The defendants, facts, and claims are identical in both complaints. (Dkt. Nos. 1, 3).

**I. IFP Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. [2] (Dkt. No. 4). This court agrees, and finds that plaintiff is financially eligible for IFP status.

[2]  Plaintiff filed his original complaint on July 9, 2018. (Dkt. No. 1). Plaintiff's action was administratively closed due to his failure to comply with the filing fee requirement. (Dkt. No. 2). Plaintiff was given the opportunity to file the appropriate documents for IFP or pay the filing fee. (*Id.*) On July 11, 2018, plaintiff filed his amended complaint with a new motion for IFP status. (Dkt. Nos. 4, 4, 5). Although plaintiff's motion for IFP was still incomplete, plaintiff argued that

the facility in which he is incarcerated refused to provide him with the information necessary for him to properly complete his motion. (Dkt. No. 4). On July 11, 2018, the Honorable Gary L. Sharpe, Senior District Court Judge reopened the action, and on July 19, 2018, he issued a Text Order, excusing plaintiff from the certification requirement and determining that the motion for IFP was complete and ready for my review. (Dkt. No. 8).

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

*2 To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4055296

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 149 of 170

## II. Complaint

In this civil rights amended complaint, plaintiff has sued Onondaga County; William Fitzpatrick, the District Attorney of Onondaga County; Michael Manfredi, an Assistant District Attorney; seventeen Syracuse Police Officers/Detectives; a "P.I./ex-Detective, and Frank Fowler, the City of Syracuse Chief of Police. (Dkt. No. 3). Plaintiff's amended complaint is a statement of facts ("SOF") which describes encounters with police officers, detectives, and prosecutors, occurring on July 10, 2015, December 26, 2015, May 18, 2016, August 7, 2016, and February 2017. [3] (SOF ¶¶ 1-5) (Dkt. No. 3).

[3]     Plaintiff has numbered the paragraphs of his SOF, and he has numbered the pages of his amended complaint at the bottom of the page. Thus, the court will cite to the SOF paragraph number as well as the page number on which the relevant fact appears.

### 1. July 15, 2015

Plaintiff alleges that on July 15, 2015, apparently as the result of an incident in Armory Square in the city of Syracuse, he was charged with second degree assault, third degree criminal possession of a weapon, second degree harassment, and second degree menacing. (SOF ¶ 1 at 3). Plaintiff claims that defendant Police Officer ("PO") Szekecs arrived on the scene and arrested plaintiff. Shortly thereafter, several officers arrived "with witnesses" for a "show-up" identification. Plaintiff alleges that he was removed from the police vehicle in which he had been seated by defendant Szekecs so that defendants PO Robert Jones, PO David Ciciriello, PO Jason Springer, and PO Ryan Blake could have their "witnesses" identify the plaintiff. Plaintiff alleges that the show-up witnesses all identified plaintiff as the perpetrator, but when defendant Detective Tara Kelil and PO J.M. Giarusso conducted photo arrays with "other" witnesses, those individuals were unable to identify the plaintiff. (Id.)

Plaintiff claims that defendant ADA Manfredi continued to prosecute plaintiff even though Keila Carrasquillo admitted to the assault for which plaintiff was being prosecuted. Plaintiff states that Ms. Carasquillo "through sworn statements, grand jury, and trial testimony" tried to take responsibility for the crimes. Plaintiff claims that, when ADA Manfredi heard about this, he threatened Ms. Carasquillo with perjury if she testified on plaintiff's behalf. Based on this threat, Ms. Carasquillo "pled the Fifth" on all matters, and plaintiff was convicted of the charges. Plaintiff also alleges that after his conviction, but prior to sentencing, Ms. Carasquillo

again attempted to take the blame for the crimes, but defendant Manfredi told her that he was asking for a lengthy prison sentence for the plaintiff because the Syracuse Police Department had numerous interactions with plaintiff that did not result in convictions. Plaintiff was sentenced to 25 years incarceration. [4] (SOF ¶ 1 at p.4). Plaintiff states that the defendants' actions were "the direct cause of plaintiff's injuries." (Id.)

[4]     Plaintiff is currently incarcerated.

### 2. December 26, 2015

**\*3** Plaintiff states that on December 26, 2015, he was charged with second degree criminal possession of a weapon, resisting arrest, and first degree reckless endangerment as the result of an incident at the Mobile Gas Station on South Geddes Street in Syracuse, New York. (SOF ¶ 5 at 4). Plaintiff states that defendants PO J.M. Giarusso and Ryan Blake "charged" plaintiff, even though plaintiff did not have a weapon. Plaintiff states that the officers told him that they had an eyewitness, but that individual never provided a "statement." Plaintiff claims that defendant Manfredi still proceeded to present the case to a grand jury. Although the grand jury returned a "no bill," defendant Manfredi stated that plaintiff should have been indicted because he was well-known to the Syracuse police. (Id.)

### 3. May 18, 2016

On May 18, 2016, plaintiff states that he was charged with criminal possession of a controlled substance in the fifth and seventh degrees. (SOF ¶ 3 at 4). Plaintiff claims that defendants Detectives Scott Henderson and J. Ballagh of the Syracuse Police Department were investigating the residents of 303 Merriman Avenue in Syracuse, New York, and plaintiff was arrested when he walked by this location, while the defendants were getting out of their vehicles, "in the process of their raid," even though plaintiff was not "named in the investigation. (Id.) Plaintiff claims that "John Doe[s] 1-10 [and] Jane Doe[s] 1-10, [5] Detective Scott Henderson and Detective J. Ballagh" arrested plaintiff "as part of their investigation." (SOF ¶ 3 at 4-5).

[5]     The John and Jane Does are not named defendants in this action.

Plaintiff claims that while arresting the plaintiff "the officers" proceeded to "beat" him, causing visible bruises on plaintiff's face "and other parts of his body." (SOF ¶ 3 at 5). Plaintiff

2018 WL 4055296

states that, while he was being arraigned on May 19, 2016, he was charged with the additional crimes of resisting arrest and obstructing governmental administration. (*Id.*) Plaintiff states that after six months, the grand jury returned a "no-bill." (*Id.*)

#### 4. August 7, 2016

On August 7, 2016, plaintiff was arrested at the Mobile gas station at 631 South Geddes Street in Syracuse, New York. (SOF ¶ 4 at 5). Plaintiff was charged with criminal possession of a weapon, second degree. Plaintiff states that defendants PO Chad King; PO Ryan Blake; PO Chad Picotte; PO Jacob Breen; PO Joseph Taylor; PO Sean Ryan; and PO John Tassani were "involved with the incident." (*Id.*) Plaintiff claims that he was on a "different street" when the "shots fired" incident occurred. PO King was the first to respond, and when he found "nothing of significance," he began to "roam around." He found plaintiff in a "driveway," where he and other individuals were sitting in a vehicle. Plaintiff states that he and two other individuals ran away as defendant King approached the car. Defendant King radioed for help, and defendants Picotta and Blake ultimately arrested the plaintiff. Plaintiff claims that, after he sat in the police vehicle for two hours, "they" came back and told plaintiff that he "beat [them]" when he was arrested at the same location the last time, but he would not get away "this time," because they had a gun in evidence. (*Id.*)

Plaintiff claims that one of the other two occupants of the car claimed ownership of the gun, but defendant Blake "coerced" him into stating that the gun belonged to plaintiff. Plaintiff claims that when he appeared before the grand jury on August 12, 2016, defendants ADA Manfredi and Private Investigator James Quatrone "guarantee[ed]" plaintiff that he would be indicted, and he would be put in prison where he belonged. (*Id.*) Plaintiff was later indicted for second degree criminal possession of a weapon. Plaintiff states that he had a "suppression hearing" on June 19, 2017, at which defendant King testified. (SOF ¶ 4 at 6). The court denied suppression. [6] Plaintiff states that, since he was already incarcerated on the first degree assault charge, he offered to plead guilty to an unidentified charge. Defendant Manfredi turned down plaintiff's offer because he believed that plaintiff was "public enemy #1." (*Id.*) Plaintiff states that he was acquitted of the charges by a jury on November 15, 2017. (*Id.*)

[6]    Plaintiff did not exactly state what evidence he moved to suppress. The court assumes that he may have moved to suppress the gun, and there is no

indication if any other evidence or statements were obtained that may have been included in the motion to suppress.

#### 5. February 2017

**\*4**  Finally, plaintiff alleges that he filed a notice of appeal in the "July 2015 conviction" in February of 2017. (SOF ¶ 5 at 6). Plaintiff states that defendant District Attorney William Fitzpatrick was "put on notice through the direct appeal about the actions of the Syracuse Police Department," defendant Manfredi, and defendant Quatrone. (*Id.*) Plaintiff claims that, "through his office," defendant Fitzpatrick "vigorously" defended the appeal and the actions of defendants Manfredi and Quatrone. Plaintiff claims that "defendants [sic] actions was [sic] the direct cause of plaintiff's injuries." (*Id.*)

In a section, entitled "Injuries," plaintiff states that he lives "in constant fear to walk the streets," because he will be "constantly harassed and arrested by defendants." (SOF ¶ IV(e) at 6). Plaintiff claims that he has "lost his liberty interest," his job, and his ability to provide for his children, due to the defendants' unconstitutional actions. (*Id.* at 6-7). Plaintiff seeks substantial compensatory and punitive damages.

### III.  Proscutorial Immunity

#### A. Legal Standards

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 151 of 170

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4055296

## B. Application

Plaintiff has named ADA Manfredi and DA William Fitzpatrick as defendants in this action. However, the only actions that plaintiff attributes to ADA Manfredi deal with his prosecution of plaintiff's criminal charges. Absolute immunity protect him from suit under the facts stated by plaintiff, regardless of whether ADA Manfredi called plaintiff "public enemy #1," and even if he refused to accept plaintiff's offer of a plea to some unidentified charge. This immunity applies whether plaintiff was convicted or acquitted of the charges. Thus, the case must be dismissed with prejudice as against defendant Manfredi.

The same is true for District Attorney Fitzpatrick. The only facts alleged against defendant Fitzpatrick are that he "vigorously," "through his office," defended plaintiff's appeal. The district attorney is protected by absolute immunity. In addition, plaintiff has failed to allege that defendant Fitzpatrick was personally involved in any constitutional violation. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Simply alleging that defendant Fitzpatrick vigorously defended the appeal "through his office" is insufficient to allege personal involvement even if the prosecutor were not already protected by absolute immunity. Thus, the complaint may be dismissed with prejudice as against District Attorney Fitzpatrick.

## IV. Plaintiff's Claims

### A. Legal Standards

**\*5** A civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

### B. Application

### 1. July 2015 (SOF ¶ 1)

Plaintiff states that he is still incarcerated on the July 2015 conviction for first degree assault. [7] He also states that he filed a notice of appeal in February of 2017. Plaintiff does not indicate that there has been any decision on the appeal, and if he is still incarcerated, either the appeal has not been decided, or the appeal was denied. Because plaintiff's conviction has not been overturned by a state appellate court nor called into question by a federal habeas action, plaintiff may not sue defendants at this time if the resolution of the claim in plaintiff's favor would necessarily invalidate that conviction.

[7]    In the SOF, plaintiff alleges that in November of 2017 (after the August 7, 2016 incident), he was already incarcerated on "an assault 1st" conviction. (SOF ¶ 4 at 6). However, at the beginning of the complaint, he states that, in July of 2015, he was arrested for, inter alia, **second degree** assault, and that he was convicted and sentenced to 25 years. (SOF ¶ 1 at 3-4). A check of the Department of Corrections and Community Supervision ("DOCCS") "inmate lookup" shows that plaintiff is currently incarcerated for a conviction of **first degree assault**. for which he was sentenced to 25 years incarceration. http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000. He was received by DOCCS on February 23, 2017. (*Id.*) Plaintiff states that he was convicted of the 2015 charges, and there is no indication that they were reversed. Thus, it is possible that the amended complaint may contain a typographical error in the first paragraph of the SOF, and that the July 2015 arrest involved first degree assault, not second degree assault.

Thus, in this case, plaintiff may not sue any defendants who were involved in the 2015 conviction if a decision in plaintiff's favor would render the 2015 conviction invalid. Plaintiff alleges that he was forced to stand in handcuffs next to defendant Szakecs, while defendants Jones, Ciciriello, Springer, and Black conducted a "show-up" identification of plaintiff, during which all of the eyewitnesses identified him, while defendants Giarusso and Kalil subsequently conducted unsuccessful photo arrays. Plaintiff seems to be arguing that the show-up identification violated his constitutional rights, evidenced by the fact that two other witnesses did not identify plaintiff in a photo array.

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4055296

Plaintiff also claims that another individual, who initially confessed to the crime, asserted the Fifth Amendment, after being threatened with perjury by defendant Manfredi. (SOF ¶ 1 at 3). As stated above, ADA Manfredi would be entitled to absolute immunity. In addition, a decision in plaintiff's favor regarding improper identification or prosecutorial misconduct would clearly affect the validity of the conviction.[8] Thus, plaintiff's may not sue any of the defendants who he claims were involved in the alleged improprieties at this time, and may not sue defendant Manfredi, even if plaintiff's conviction is ever overturned.

[8]    If the identification procedures were unfairly suggestive, plaintiff's constitutional rights would not have been violated until he was convicted on the basis of the suggestive identifications. *See Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) (there is no constitutional right not to be subjected to an unconstitutionally suggestive identification). *See also Delamota v. City of New York*, 683 F. App'x 65, 66-67 (2d Cir. 2017) (when an officer creates false information likely to influence a jury's decision and forwards that information to the prosecutor, he or she violates the plaintiff's right to a fair trial). In addition, in order to state a claim, plaintiff would have to show that the officers misled or pressured the prosecution or the trial judge. *Id.* It is the admission of the testimony carrying a likelihood of misidentification which violates a defendant's right to due process. *Wray, supra*. In the plaintiff's amended complaint, he cites no facts beyond the alleged show-up identification. In fact, he states that two photo arrays were unsuccessful in identifying the plaintiff. It is unclear what evidence was admitted at trial. Thus, at this time, there are multiple reasons to dismiss any claims against the officers who plaintiff alleges were involved in the alleged show up.

**\*6** It is unclear why plaintiff has named detective Kalil and officer Giordano because the only facts stated against them are that they conducted a photo array, after which plaintiff was **not** identified. It is also unclear why plaintiff has named Officer Patricia Sargent. Plaintiff only asserts that defendant Sergeant detained a suspect who later confessed to the crime of which plaintiff was convicted. Plaintiff makes no other claims against this individual, nor does he state how she violated his rights in any way. Thus, the plaintiff's claim may

also be dismissed as against defendants Kalil, Giordano, and Sargent.

## 2. December 26, 2015 (SOF ¶ 2)

Plaintiff alleges that the grand jury returned a "no bill" after the December 26, 2015 arrest. (SOF ¶ 2 at 4). Thus, *Heck* does not bar plaintiff's action. Plaintiff names three individuals in this section of his amended complaint. Plaintiff claims that defendant Officer Ryan Blake and defendant Giarusso arrested plaintiff for criminal possession of a weapon, resisting arrest, and reckless endangerment, even though plaintiff did not have a weapon, nor did the officers have any eyewitnesses "that the prosecutor could present." Plaintiff claims that ADA Manfredi prosecuted plaintiff notwithstanding the lack of evidence. (*Id.*)

As stated above, defendant Manfredi has absolute immunity. Although it is unclear what plaintiff may be attempting to allege against defendants Giarusso and Blake, pro se pleadings must be read to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). With respect to defendants Blake and Giarusso, plaintiff may be attempting to assert a claim for false arrest.[9] In order to prevail on a false arrest claim, plaintiff must plausibly allege that the defendant intended to confine him, plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not "otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted). An arrest by a police officer is privileged if it is based on probable cause. *Id.* at 135. However, " '[t]he defendant has the burden of raising and proving the affirmative defense of probable cause.' " *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (citations omitted).

[9]    The court has also considered whether plaintiff may be attempting to allege claims of malicious prosecution. Malicious prosecution has four elements. *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). The defendants must have commenced or continued a criminal proceeding against the plaintiff, the proceeding terminated in the plaintiff's favor, there was no probable cause for the criminal proceeding, and the proceeding was instituted with "actual malice." *Id.* (citations omitted). Police officers do not generally

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 153 of 170

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4055296

commence or continue criminal proceedings against an individual, but malicious prosecution claims may still be maintained if the officer is found to play an active role in the prosecution, such a giving advice and encouragement to the authorities to act. *Id.* (citations omitted). As it is written, most of plaintiff's allegations are insufficient to state claims for malicious prosecution. However, if plaintiff amends his complaint, he may add any facts that he believes would assert a claim for malicious prosecution as against the officers.

In this case, although plaintiff alleges that the defendants arrested him for weapons possession without a weapon, he also states that he was arrested for resisting arrest and reckless endangerment. Plaintiff does not describe the facts surrounding the particular arrest. It is well-established that a law enforcement official has probable cause to arrest if he has received information from some person, normally the putative victim or an eyewitness. *Felix v. New York State DOCCS*, No. 16-CV-7978, 2018 WL 3542859, at *7 (S.D.N.Y. July 23, 2018) (citing inter alia *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ).

**\*7** In the amended complaint, plaintiff states that the officers "claimed they had an eyewitness." (SOF ¶ 2 at 4). However, the "eyewitness" "never provided a statement to these officers." The failure to give a statement does not show that the eyewitness did not exist. However, if there was no witness, and there was no weapon, it is plausible that the officers did not have probable cause to arrest plaintiff. The facts surrounding this arrest are not clear, and as stated above, the plaintiff was also arrested for resisting arrest and reckless endangerment. The court will allow this claim to proceed at this time against officers Blake and Giarusso, but notes that this ruling is not meant to suggest that the claim would survive a supported motion for summary judgment.

### 3. May 18, 2016 (SOF ¶ 3)

Plaintiff appears to claim that he was improperly arrested on May 18, 2016 because he was not "named" as a suspect in a drug investigation, involving the residents of 309 Merriman Avenue. (SOF ¶ 3 at 4). Plaintiff states that he was arrested by defendants Henderson and Ballagh for just "walking by the residence" as the officers were getting out of their vehicles.[10] (*Id.*) Plaintiff states that while arresting him, the "officers beat plaintiff," causing multiple bruises on plaintiff's face

and other parts of his body. (SOF ¶ 3 at 5). Plaintiff states that, at his May 19, 2016 arraignment, he was charged with the "additional crimes" of resisting arrest and obstructing governmental administration. (*Id.*) Plaintiff claims that, after six months, the grand jury returned a "no-bill."

[10]  Plaintiff also states that, in addition to defendants Handerson and Ballagh, "officers John Dos [sic] 1-10 [and] Jane Doe [sic] 1-10 "arrested plaintiff." (SOF ¶ 3 at 4). Plaintiff has not named any John or Jane Does in the caption of his amended complaint, and he would not be able to serve unnamed officers without obtaining their names. It also seems unlikely that it took twenty-two officers to arrest the plaintiff. Each individual sued must have had personal involvement in the arrest in order to be liable under section 1983. *Minott v. Duffy*, No. 11 Civ. 1217, 2014 WL 1386583, at *11 (S.D.N.Y. Apr. 8, 2014) (quoting *Travis v. Vill. of Dobbs Ferry*, 355 F. Supp. 2d 740, 747 (S.D.N.Y. 2005) ). Plaintiff has named the two individuals who he claims were the principle officers involved in his August 7, 2016 arrest. Thus, the court will not consider the John or Jane Does as defendants.

*Heck* does not bar plaintiff's claim on the false arrest issue. In addition, plaintiff seems to be claiming that some officers used excessive force while they were arresting him. The Fourth Amendment prohibits the use of unreasonable force by a police officer in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989) ). A claim of excessive force during the arrest would not be barred by *Heck* even if plaintiff had been subsequently convicted of a crime, because a finding in favor of plaintiff on a claim of excessive force would not necessarily invalidate his conviction.

However, plaintiff does not specify which of the officers were involved in beating him as he was being arrested. In the previous sentence, he stated that defendants Henderson and Ballagh, along with John and Jane Does 1-10 arrested him. As stated above, plaintiff must allege personal involvement by specific defendants in his claims. As written, plaintiff's amended complaint does not state a claim of excessive force as against any particular officer or officers with respect to this incident. Thus, the court will recommend dismissing the excessive force claim without prejudice to amendment.

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 154 of 170

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)
2018 WL 4055296

However, the court will not recommend dismissing the false arrest claim for the May 18, 2016 arrest at this stage of the proceedings. Plaintiff claims that defendants Henderson and Ballagh arrested him for "walking by" the residence that was being raided "as part of their investigation." (SOF ¶ 3 at 4-5). If defendants arrested plaintiff without probable cause, then plaintiff could have a claim for false arrest. The court is not making any determination of the merits of this claim, or whether such a claim could withstand a properly supported dispositive motion.

### 4. August 7, 2016 (SOF ¶ 4)

**\*8** Plaintiff alleges that on August 7, 2016, he was arrested for second degree criminal possession of a weapon, and that defendants King, Blake, Picotta, Breen, Taylor, Ryan, and Tassini were "all" involved in "the incident." (SOF ¶ 4 at 5). Plaintiff then states that defendant PO King responded to a "shots fired" call, but found nothing of "significance" at the relevant location, so he decided to "roam" around, when he found plaintiff and "other occupants in a vehicle" in a driveway. (*Id.*) Plaintiff states that when defendant King got out of his vehicle and approached plaintiff and the other occupants of the car, plaintiff and two others ran away. (*Id.*) Plaintiff states that Officer King pursued and radioed a description of plaintiff's clothing to other officers. Plaintiff was ultimately apprehended and arrested by defendants Picotte and Blake. (*Id.*) A weapon was found, but plaintiff maintains that one of the other occupants told defendant Blake that it was his weapon, until defendant Blake "coerced" him into stating that it was the plaintiff's weapon. Plaintiff was indicted, and subsequently moved to suppress the weapon, but the motion was denied. Plaintiff states that he was acquitted by a jury. Because plaintiff was acquitted of the charges, *Heck* does not bar an action for false arrest or malicious prosecution.

The only officers that plaintiff alleges were involved in his "arrest" were defendants King, Picotta, and Blake. Thus, none of the other officers that plaintiff names as "involved in the incident" may be held liable for false arrest. *See Minott v. Duffy, supra,* 2014 WL 1386583, at \*11 (quoting *Travis v. Vill. of Dobbs Ferry,* 355 F. Supp. 2d 740, 747 (S.D.N.Y. 2005) ) (Each individual sued must have had personal involvement in the arrest in order to be liable under section 1983.) Plaintiff never states how defendants Breen, Taylor, Ryan, and Tassini were "involved" in the arrest, and therefore the action may be dismissed without prejudice as to these defendants.

The issue in a false arrest claim is whether the defendants had probable cause to arrest plaintiff. [11] If the complaint itself establishes that the defendants had probable cause, the complaint may be dismissed for failure to state a claim. *Overby v. Fabian,* No. 17-CV-3377, 2018 WL 3364392, at \*9 (S.D.N.Y. July 10, 2018). Plaintiff concedes that defendant King reported to a "shots fired" call, even though he did not find anything "of significance" at the location of the alleged shots fired. The fact that defendant King decided to "roam" around the area is not unusual, given that often individuals who fire weapons do not stand around waiting for the police to arrive. When defendant King found plaintiff and other individuals in a car, plaintiff states that he and two other occupants ran from the officer. However, under New York law, "running from the police is not itself a crime." *Parker v. Bulik,* No. 11-CV-5412, 2017 WL 3396440, at \*12 (E.D.N.Y. Aug. 5, 2017) (citing *People v. Howard,* 50 N.Y.2d 583, 586 (1980) ). [12] Plaintiff concedes that a weapon was ultimately found, and that one of the other occupants admitted that the weapon was his. However, the other occupant allegedly recanted his original statement when defendant King "coerced" him into saying that the gun belonged to the plaintiff. Given the factual issues raised by plaintiff, this claim of false arrest survives initial review. [13]

---

[11]     Probable cause is also a defense to malicious prosecution. *Wright v. Stephens,* No. 3:17-CV-1499, 2018 WL 3241352, at \*3 (D. Conn. July 3, 2018) (citation omitted).

[12]     "Although flight alone is generally not sufficient to justify a stop or pursuit, petitioner's flight may be considered in conjunction with other attendant circumstances such as time and location, as well as the police officers' knowledge that a crime had been committed, to establish probable cause." *Morgan v. Superintendent,* 88 F. Supp. 2d 312, 318 n. 48 (S.D.N.Y. 2000) (citing, inter alia, *Sibron v. State of New York,* 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.") ).

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 155 of 170

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)

2018 WL 4055296

[13]    The court notes, however, that the fact that plaintiff was acquitted at trial does not indicate that probable cause to arrest him was lacking in the scenario that plaintiff described. *See McClenic v. Shmettan*, No. 15-CV-705, 2016 WL 3920219, at *4 (E.D.N.Y. July 15, 2016) (citing inter alia *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001) ("The existence of probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges.") ). This is true regardless of plaintiff's claim that the officer told plaintiff that he would not "beat" the charges "this time." (SOF ¶ 4 at 5). Thus, even though I am allowing the claim to proceed, the court makes no findings regarding the ultimate issue of probable cause.

*\*9* Finally, plaintiff claims that when he appeared before the grand jury, defendant Quatrone (an ex-detective) and the prosecutor stated that "we guarantee that you will be indicted today ... and you will rot in prison where you belong." The prosecutor is entitled to absolute immunity, and it is unclear what plaintiff is alleging against defendant Quatrone. Thus, the complaint may be dismissed as to the officers who plaintiff does not claim were "involved" in the arrest as well as defendant Quatrone, who was not involved in anything other than perhaps verbal abuse of plaintiff. It is well established that verbal abuse and profanity is not actionable conduct under 42 U.S.C. § 1983, because it does not violate any protected federal right. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Crown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997); *Beal v. City of New York*, No. 92 Civ. 0718, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994) ("mere verbal abuse, and even vile language, does not give rise to a cognizable claim under Section 1983"), *aff'd*, 89 F.3d 826 (2d Cir. 1995).

## V. Municipal Liability

### A. Legal Standards

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

### B. Application

Plaintiff has named Onondaga County as a defendant in this action, but the municipal defendants are employees of the City of Syracuse, and when prosecuting a criminal matter, the district attorneys are acting in a quasi-judicial capacity, and they represent the State, not the County. [14] *Shanks v. Otsego County New York*, No. 6:17-CV-719, 2017 WL 4220463, at *7 (N.D.N.Y. July 24, 2017) (Rep't-Rec.), *adopted*, 2017 WL 4221070 (N.D.N.Y. Sept. 21, 2017) (citing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ). None of the defendants is employed by Onondaga County in the circumstances described in plaintiff's complaint. Plaintiff makes no separate claim against Onondaga County for municipal liability. Thus, the complaint may be dismissed with prejudice as against Onondaga County.

[14]    It is only where claims center on the administration or management of the district attorney's office that a district attorney may be found to have acted as a "policy maker" for purposes of section 1983 liability. *Shanks, supra* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ). In this case, plaintiff challenges only the district attorney's decisions regarding prosecution of plaintiff's criminal cases, and therefore, the district attorney is not an Onondaga County policy maker.

## VII. Chief of Police Frank Fowler

### A. Legal Standards

As stated above, personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d at 435. In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 156 of 170

Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)
2018 WL 4055296

continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* *See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*10** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft. See Conklin v. County of Suffolk*, 859 F. Supp 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011) ). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at \*8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

In this case, plaintiff does not allege that defendant Fowler, the Chief of police was actually present during any of the police encounters that plaintiff described. Plaintiff never mentions defendant Fowler at all in the amended complaint. It appears that defendant Fowler was added to the caption solely because he is the Chief of Police in an attempt to establish liability based upon respondeat superior. Plaintiff may not bring such a claim. There is no indication that supervisory liability has been alleged in any of the ways described above in *Williams*. There is no allegation that defendant Fowler even knew about the plaintiffs arrests or had any involvement in the acts plaintiff described. Thus, the complaint may be dismissed in its entirety without prejudice as against defendant Fowler based on a lack of personal involvement.

### VIII. Opportunity to Amend

#### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v.*

*Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, the court finds that any attempt by the plaintiff to amend some of the claims in this complaint would be futile, but finds that he should be allowed to amend others as discussed herein.

### B. Application

The claims against both district attorneys may be dismissed **with prejudice** to the extent that plaintiff challenges any decisions or actions by the district attorneys related the prosecution of criminal charges against plaintiff or the prosecution of plaintiff's still-pending appeal. The complaint may be dismissed in its entirety as against Onondaga County because plaintiff makes no claims against Onondaga County, and the County is not the relevant municipality by which any of the defendants are employed. The claims against defendants Kalil, Giarusso, and Sergeant may also be dismissed with prejudice as stated above with respect to the July 2015 arrest.

Although any claims regarding the July 18, 2015 arrest should be dismissed without prejudice, as against defendants Jones, Ciciriallo, Springer, Blake, and Szakecs, plaintiff may not amend his complaint until the charges have been reversed by an appellate tribunal or been called into question by a successful habeas corpus petition. Plaintiff's claims relative to the December 2015 may go forward as against defendants Giarusso and Blake without requiring amendment. The claims surrounding the August 7, 2016 incidents should be dismissed without prejudice as against defendants Breen, Taylor, Ryan, and Tassini, but may be allowed to go forward as against defendants King, Picotta, and Blake.

**\*11** Although the court is ordering that the complaint go forward as to the December 2015 arrest as against defendants Giarusso and Blake; the May 18, 2016 incident as against defendants Henderson and Ballagh; and the August 2016 arrest as against King, Picotta, and Blake, any service of process on these defendants should await the District Court's decision on this recommendation.[15] I will issue my recommendation below based on the individual incidents for ease of understanding.

[15]    If plaintiff ultimately amends his complaint with respect to any of the claims dismissed without prejudice, he is advised that any amended complaint must be a complete pleading which shall repeat all the surviving claims including any amendments. Any amended complaint will

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 157 of 170
**Hasan v. Onondaga County, Not Reported in Fed. Supp. (2018)**
2018 WL 4055296

**supercede** the original, must stand on its own, and must not incorporate any facts by reference to another pleading.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS AGAINST DEFENDANTS FITZPATRICK, MANFREDI, KALIL, and SARGENT**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITH PREJUDICE AS AGAINST DEFENDANT GIARUSSO - ONLY WITH RESPECT TO THE JULY 2015 INCIDENT**, and it is

**RECOMMENDED**, that the amended complaint be **DISMISSED WITHOUT PREJUDICE AS TO:**

1. Defendants Jones, Ciciriello, Springer, Blake, and Szakecs with respect to the July 2015 incident.

3. Defendants Breen, Taylor, Ryan, and Tassini with respect to the August 7, 2016, and it is

**ORDERED**, that the amended complaint go forward as against defendants **BLAKE and GIARUSSO (Dec. 26, 2015 incident); HENDERSON** and **BALLAGH (May 18, 2016 incident)**, and defendants **KING, PICOTTA, and BLAKE (Aug. 7, 2016 incident)**, but that service of process as against these defendants await the District Court's decision on this recommendation, and it is

**ORDERED**, that when the District Court issues a decision on this Recommendation, the case be returned to me for further proceedings, including any necessary orders regarding service of the complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4055296

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

2019 WL 2646616
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

David VANN, Plaintiff,

v.

The CITY OF ROCHESTER, a municipal entity, Police Officer Matthew Drake, IBM # 1956, Police Officer Steven Mitchell, IBM # 2134, Investigator Jeffrey Kester, IBM # 2230, Sergeant Jeffrey Lafave, II, IBM # 1634 Police Officer David E. Kephart, IBM # 2074, Police Officer Adam Brodsky, IBM # 2478, Police Officer Timothy Dempsey, IBM # 2122, Investigator Christopher Muscato, IBM # 1331, Captain Gary Moxley, Police Officer Angel Pagan, IBM # 2421, Police Officer Christopher J. Barber, IBM # 1949, Sergeant Daniel J. Zimmerman, IBM # 295, Police Officer Eric McGraw, IBM # 2131, Sergeant Joseph Laiosa, IBM # 1180, Investigator Tomesha Angelo, IBM # 1665, Technician Stephanie Mintz, IBM # 2496, , Police Officers "John Does 1-10" (whose names are currently unknown), and other unidentified members of the Rochester Police Department, The County of Monroe, Sandra Doorley, individually and as District Attorney of the County of Monroe, and Michael Harrigan, as an employee of the Monroe County District Attorney's Office and individually, Defendants.

No. 6:18-cv-06464(MAT)
|
Signed 06/27/2019

**Attorneys and Law Firms**

Elliot Dolby Shields, Roth & Roth, LLP, New York, NY, for Plaintiff.

John M. Campolieto, City of Rochester Law Department, Rochester, NY, for Defendants The City of Rochester, Police Officer Matther Drake, Police Officer Steven Mitchell, Investigator Jeffrey Kester, Police Officer Christopher J. Barber, Police Officer David E. Kephart, Investigator Tomesha Angelo, Technician Stephanie Mintz, Sergeant Daniel J. Zimmerman, Sergeant Jeffrey Lafave, II, Police Officer Adam Brodsky, Police Officer Timothy Dempsey, Investigator Christopher Muscato, Captain Gary Moxley,

Police Officer Angel Pagan, Police Officer Eric McGraw, Sergeant Joseph Laiosa.

Matthew D. Brown, Monroe County Department of Law, Rochester, NY, for Defendants The County of Monroe, Sandra Doorley, Michael Harrigan.

**DECISION AND ORDER**

HON. MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

 **\*1** David Vann ("Vann" or "Plaintiff"), represented by counsel, instituted this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging violations of his constitutional rights by the City of Rochester ("the City"), the County of Monroe ("the County"), and the various individual defendants, who are either employees of the Monroe County District Attorney's Office ("MCDA") or the City of Rochester Police Department ("RPD"). On March 25, 2019, the Court issued a Decision and Order (Docket No. 27) denying the City's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). In this Decision and Order, the Court addresses the County's Motion to Dismiss (Docket No. 14) the Amended Complaint pursuant to Rule 12(b)(6). For the reasons discussed below, the County's motion is granted in its entirety.

**II. Factual Background and Procedural History**

The Court assumes the parties' familiarity with its previous Decision and Order summarizing the Amended Complaint's allegations regarding the incident on September 4, 2015, involving the alleged excessive use of force against Vann by various RPD officers, including Matthew Drake ("Drake"), Jeffrey Kester ("Kester"), and Steven Mitchell ("Mitchell"), in effecting Vann's arrest.

After he was arrested, Vann was arraigned on two counts of Assault in the Second Degree (New York State Penal Law ("P.L.") § 120.05(3)), Assault in the Third Degree (P.L. § 120.00(2)), Resisting Arrest (P.L. § 205.30), and Trespass (P.L. § 140.10). RPD Investigator Tomesha Angelo ("Angelo") referred the felony complaints to defendant Assistant District Attorney Michael Harrigan ("Harrigan") for presentation to a Monroe County grand jury. The packet of materials sent to Harrigan included a DVD of the portion of the security camera video collected by the RPD.

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

While preparing Vann's case for presentation to the grand jury, Harrigan reviewed the DVD with three of the RPD officers involved in the September 4, 2015 incident, Mitchell, Kester, and Drake. Harrigan discussed with them how they were going to testify before the grand jury. Am. Compl. ¶¶ 319-26.

Mitchell, Kester, and Drake subsequently testified falsely before the grand jury that, among other things, Vann resisted arrest, fought with the officers, and was not handcuffed until he was taken to the ground the first time. Id. ¶¶ 327-36. Harrigan's presentation to the grand jury was misleading and incomplete because, among other things, the security camera footage that allegedly exculpated Vann was not introduced. Id. ¶¶ 340-41. The grand jury returned an indictment on April 29, 2016, charging Vann with two counts of assaulting a police officer. Id. ¶ 329, 337.

After the grand jury proceeding, Harrigan continued to investigate the case against Vann by interviewing witnesses, including D.M., who was at the A&Z Market on the night in question. Upon reviewing the security camera video, D.M. informed Harrigan that it showed the police officers overreacting and using excessive force. Harrigan disagreed and responded that the video could be interpreted differently. Am. Compl. ¶¶ 346-48. Harrigan reviewed the video with D.M. and discussed how to testify about certain material facts.

 *2 Harrigan also requested that Kester, Mitchell, Drake, and Angelo produce all records regarding Vann's arrest. Although Angelo provided Harrigan with copies of the Subject Resistance Reports completed by Kester, Mitchell, and Kephart regarding their use of force against Vann, Harrigan never provided them to Vann's attorney. Am. Compl. ¶¶ 349-55.

At trial, Harrigan elicited testimony from D.M., Kester, Mitchell, Drake that he knew was false and contradicted by the security camera video. Am. Compl. ¶¶ 370-78. The jury asked to see multiple playbacks of the security camera video, including a request to have the video paused at the moment Vann was being handcuffed. Id. ¶ 383. After deliberating less than three hours, the jury returned a verdict acquitting Vann of all charges. Id. ¶ 384.

In their Motion to Dismiss (Docket Nos. 14 to 14-2), the County Defendants seek dismissal of the fourteenth claim (denial of the right to a fair trial against Harrigan) and fifteenth claim (municipal liability against the County for Doorley's failure to supervise or discipline prosecutors for violating defendants' constitutional rights), as well as dismissal of Doorley as a defendant due to Vann's failure to allege her personal involvement in any constitutional violations. Vann filed a Memorandum of Law in Opposition ("Pl.'s Opp. Mem.") (Docket No. 20). The County Defendants filed a Reply Memorandum of Law ("Reply") (Docket No. 22). The matter was submitted without oral argument on December 15, 2018 (Docket No. 26).

### III. **Rule 12(b)(6)** Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint pleads a claim with facial plausibility when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint that consists merely of "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or " 'naked assertion[s]' devoid of 'further factual enhancement' " does not meet the plausibility standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557). In deciding a motion to dismiss under Rule 12(b) (6), a court must accept the complaint's well pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. J.P. Morgan Chase Co., 533 F.3d 187, 196 (2d Cir. 2009).

### IV. Discussion

#### A. Overview of the Law on Prosecutorial Immunity

"Absolute immunity bars a civil suit against a prosecutor for advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.' " Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " Id. (quoting Imbler, 424 U.S. at 431 n. 33).

Since Imbler, the Supreme Court has followed a functional approach to determining whether immunity applies. Burns v. Reed, 500 U.S. 478, 486 (1991) (citing Imbler, 424 U.S. at 430-31; collecting cases). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " Hill v. City of N.Y., 45 F.3d

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 160 of 170

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

653, 661 (2d Cir. 1995) (quoting Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994); alteration in original). Whether or not an activity is protected by absolute immunity depends upon the function the prosecutor was performing. See Kalina v. Fletcher, 522 U.S. 118, 127 (1997) ("[W]e examine the nature of the function performed, not the identity of the actor who performed it....").

**\*3** On a motion to dismiss a claim against a prosecutor based on absolute immunity, the plaintiff's allegations are taken as true. Kalina, 522 U.S. at 122 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 261 (1993)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns, 500 U.S. at 486–87 (citations omitted). The key inquiry is whether the prosecutors' alleged wrongdoing took place in the course of "administration or investigation not undertaken in preparation for judicial proceedings[,]" Hill, 45 F.3d at 661 (citing Buckley, 509 U.S. at 269; Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987)), in which case the prosecutor will not be subject to absolute immunity, id. Stated another way, "[t]he ultimate 'question ... is whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they' engaged in the challenged conduct." Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting Buckley, 509 U.S. at 273; ellipsis in original).

### B. Harrigan Is Entitled to Absolute Immunity for his Actions

Vann contends that Harrigan's actions were investigative rather than advocacy in nature and therefore outside the scope of the traditional prosecutorial functions covered by absolute immunity. The County responds that Harrigan was acting as an advocate preparing for judicial proceedings at all relevant times and therefore is protected by absolute immunity.

As an initial matter, Vann's repeated invocation of the adjective "investigative" to describe Harrigan's conduct is immaterial to the Court's inquiry. See Watson v. Grady, No. 09-CV-3055 KMK, 2010 WL 3835047, at \*16 (S.D.N.Y. Sept. 30, 2010) ("[The] [p]laintiff's labeling of the prosecutor's actions as investigatory does not make it so.") (citing Crews v. Cty. of Nassau, No. 06–CV–2610, 2007 WL 4591325, at \*15 n. 15 (E.D.N.Y. Dec. 27, 2007) (stating that the plaintiffs' "labeling various actions 'investigative' or 'administrative' in the complaint is of no moment")). In other

words, although Vann affixes the "investigatory" label to Harrigan's actions, the Court must look at the actual substance of those actions—whether they were the "work of an advocate and ... integral to the initiation of the prosecution." Kalina v. Fletcher, 522 U.S. 118, 130 (1997). Furthermore, while the timing of the prosecutor's conduct is relevant in drawing a distinction between investigative and advocatory functions, DiBlasio v. Novello, 344 F.3d 292, 300-01 (2d Cir. 2003) (citations omitted), it is "not necessarily determinative," Genzler v. Longanbach, 410 F.3d 630, 640 (9th Cir. 2005) (citations omitted).

The actions by Harrigan about which Vann complains fall generally into two categories—actions taken in preparation for, and during the grand jury; and actions taken in preparation for, and during, the trial. The Court addresses them in turn below.

### 1. Harrigan's Actions Prior to and During the Grand Jury

#### a. Decision to Prosecute Plaintiff

Vann alleges that Harrigan, despite viewing the DVD of the security camera footage which allegedly exculpated him, did not recommend dropping the charges but instead convened a grand jury to present Vann's case.

It is well-settled that "[t]he decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function." Ogunkoya v. Monaghan, 913 F.3d 64, 71 (2d Cir. 2019) (citing Imbler, 424 U.S. at 431; Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993) ("A prosecutor ... has absolute immunity in connection with the decision whether or not to commence a prosecution.")). Harrigan is thus entitled to absolute immunity with regard to his decision to pursue the charges against Vann by grand jury indictment. See Ogunkoya, 913 F.3d at 71; see also, e.g., Williams v. City of N.Y., No. 06–CV–6601, 2009 WL 3254465, at \*10 (E.D.N.Y. Oct. 9, 2009) ("[E]valuating evidence and deciding whether to initiate a prosecution are exactly the sort of actions for which absolute immunity shields prosecutors from liability."); Bhatia v. Gaetano, No. 06–CV–1771, 2008 WL 901491, at \*3 (D. Conn. Mar. 31, 2008) (finding that the prosecutor's decision to institute a criminal prosecution "after considering the weight of evidence in the case" was protected

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 161 of 170

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

by absolute immunity, despite the prosecutor's knowledge of evidence that witnesses were lying).

### b. Meeting With Witnesses Prior to Grand
### Jury and Elicitation of False Testimony

**\*4** Vann alleges that Harrigan met with RPD officers Mitchell, Kester, and Drake prior to their appearance before the grand jury. Am. Compl. ¶¶ 319-21. At this meeting, Harrigan reviewed the DVD of the security camera footage with the officers and "instructed [them] on how to testify to nullify their constitutionally objectionable conduct, as depicted in the DVD of the incident." Id. ¶ 321. Then, at the grand jury proceeding, Harrigan knowingly permitted Mitchell, Kester, and Drake to testify as to "facts that were contradicted by the security camera video of the incident pursuant to the City and RPD's policy, practice and custom of fabricating evidence and 'testifying' to nullify constitutional deficiencies in their reasons for making arrests and using force against arrestees." Id. ¶ 339.

The Second Circuit has "consistently stated that prosecutors are immune from § 1983 liability for their conduct before a grand jury." Hill, 45 F.3d at 661 (citing Burns, 500 U.S. at 490 n.6 (listing other circuit court cases which have so held); Maglione v. Briggs, 748 F.2d 116, 118 (2d Cir. 1984) (per curiam); other citation omitted). In Hill, the Second Circuit emphasized that even the plaintiff's allegations of a conspiracy among the prosecutor and others to present falsified evidence to the grand jury did not "alter this rule[,]" Hill, 45 F.3d at 662 (citing Dory, 25 F.3d at 83). Dory, which established that absolute prosecutorial immunity extends even to conspiracies to present false evidence at trial, "compels the same result in the grand jury setting." Hill, 45 F.3d at 662. "'The fact that such a conspiracy is not something that is properly within the role of a prosecutor is immaterial,'" id. (quoting Dory, 25 F.3d at 83), "because immunity attaches to the function the prosecutor is performing, not the way in which it is performed." Id.

Nonetheless, the Second Circuit in Hill declined to find that, as a matter of law, absolute immunity protected a prosecutor's actions in fabricating evidence against the plaintiff. The prosecutor in Hill allegedly instructed a minor witness to accuse his mother of criminal child abuse during a videotaped interview, and then used this falsified videotape in the grand jury presentation against the mother while deliberately suppressing an earlier videotape that exonerated her. Hill,

45 F.3d at 662. The Second Circuit noted that since the prosecutor did not order Hill's arrest until *after* filming the second, fabricated interview, "it was possible to conclude that [the videotape] was made, at least in part, to provide probable cause for Hill's arrest." Id. Applying the Supreme Court's "objective" functional test for absolute immunity, the Second Circuit found that it was impossible to determine whether the making of the videotape was "performed by the prosecutor in an advocacy or an investigatory role[.]" Id. at 663.

Subsequently, in Bernard v. Cty. of Suffolk, 356 F.3d 495 (2d Cir. 2004), the Second Circuit observed that

> the line between advocacy and investigative functions is frequently difficult to draw, but, as a rule, the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement, rests on the advocacy side of this line[.]

Id. at 506 (internal citation omitted; citing Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1149 (2d Cir. 1995) ("Case law from this circuit clearly establishes that the district attorneys' activities with respect to the malicious prosecution claim, as well as all the claims relating to Pinaud's plea agreement and the presentations to the grand jury, are covered by absolute immunity."); Hill, 45 F.3d at 661).

Here, despite Vann's repeated assertion that Harrigan "fabricated" evidence during an "investigatory" phase of the proceeding, the Amended Complaint does not plausibly suggest such conduct. At the time Harrigan interviewed the RPD officers and civilian witnesses, Vann already had been arrested, unlike the plaintiff in Hill. Furthermore, in contrast to the prosecutor in Hill, Harrigan did not assemble or create evidence himself. Rather, he conducted a "professional evaluation of the evidence assembled" by the RPD officers, such as viewing the security camera DVD and reading any available witness statements. Even the human witnesses themselves—the RPD officers and the civilian witnesses at the store—are best described as "evidence assembled by the police" since it was not Harrigan who went out and found these individuals and brought them in to interview. After evaluating the evidence assembled by the police, Harrigan's subsequent activities involving that evidence,

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 162 of 170

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

including conducting interviews of the RPD officers and the civilian witnesses, constituted "preparation for ... presentation [of the evidence] ... before a grand jury[.]" Buckley, 509 U.S. at 273 (reaffirming adherence to "the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity").

### c. Failure to Present Exculpatory Evidence to the Grand Jury

**\*5** Vann complains that Harrigan withheld exculpatory evidence from the grand jury by not informing the jurors that, among other things, the "RPD failed to collect, copy and preserve exculpatory evidence, to wit, the beginning of the store's security camera videos that depicted the interaction between [eyewitness] D.A. and Mr. Vann prior to defendants arriving at the store[.]" Am. Compl. ¶ 336(c); see also id. ¶ 336(a)-(b), (d)-(i). However, even the act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process." Bernard, 356 F.3d at 503 (citing Imbler, 424 U.S. at 431 & n. 34 (holding prosecutor is absolutely immune from liability for initiating a prosecution and from claims that he willfully used perjured testimony); other citations omitted).

In Bernard, the plaintiff "accuse[d] defendants of knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from, the various grand juries that returned these flawed indictments." 356 F.3d at 503. The district court concluded that if, as the plaintiffs alleged, "defendants pursued prosecutions without probable cause and engaged in misconduct before the grand jury as part of a political 'witch hunt,' then that motive would remove their conduct from the scope of official duties shielded by absolute immunity." Id. The Second Circuit reversed the district court, noting that where a prosecutor's charging decisions are not linked to any unauthorized actions by him, such as a demand for a bribe or sexual favors, "the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity." Id. (citation omitted). Based on Bernard, the Court finds that Harrigan is shielded by absolute immunity with regard to any alleged misconduct in his presentation of evidence to the grand jury. Id. at 505.

### 2. Harrigan's Actions Prior to and During the Trial

#### a. Failure to Disclose Exculpatory Evidence

Vann asserts that Harrigan violated his State and Federal constitutional obligations to disclose all material favorable to the defense, as well as his duty under New York State law to disclose all recorded statements of prosecution witnesses, including the "use of force" or Subject Resistance Reports completed by the RPD officers in this case. See Am. Compl. ¶¶ 358-69. In addition, Vann accuses Harrigan of failing to inform his defense attorney that RPD officers had spoken to witness A.M. at the A&Z Market but did not take a written statement from A.M., even though A.M. witnessed the incident. According to Vann, this also constituted exculpatory material. See id. ¶ 256-57.

Harrigan's alleged failure to turn over any material having exculpatory or impeachment value to the defense falls into the category of an advocacy function. Therefore, he is entitled to absolute immunity in this regard. See, e.g., Warney v. Monroe Cty., 587 F.3d 113, 125 (2d Cir. 2009) ("If the conduct challenged by Warney had occurred during Warney's trial, that is, if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); but they would be absolutely immune from personal liability.... The reason that is so is that the disclosure of evidence to opposing counsel is an advocacy function.") (internal citation omitted).

#### b. Meeting With Witnesses Prior to Trial and Elicitation of False Testimony at Trial

Vann alleges that Harrigan spoke with Mitchell, Kester, Drake, and D.M. prior to their testimony at Vann's trial. Then, when Harrigan called them as witnesses, they all presented false testimony that Harrigan knew was untruthful. Harrigan's actions in preparing witnesses for trial and eliciting testimony from witnesses at trial likewise represent the performance of an advocacy function. Therefore, he is entitled to absolute immunity for this conduct. See Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (federal prosecutor's activities in trying case, presenting allegedly false testimony, allegedly using guilty plea allocution for investigative purposes, and

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 163 of 170

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

allegedly transmitting false information to parole authorities were intimately associated with judicial phase of criminal process and entitled prosecutor to absolute immunity in § 1983 action).

### C. Doorley Is Entitled to Absolute Immunity for her Actions

**\*6** Doorley is not named in any of the enumerated causes of action. Indeed, her name appears only sparsely throughout the Amended Complaint. Vann only alleges that Doorley attended a meeting at which the store surveillance DVD was reviewed and nevertheless allowed his criminal case to proceed. See Am. Compl. ¶¶ 462-66. "[P]rosecutorial decisions as to whether or not to institute a prosecution, and if so on what charges ... plainly decisions as to which [a prosecutor] is entitled to absolute immunity." Ying Jing Gan, 996 F.2d at 531. Vann cannot hold Doorley liable for failing to terminate his prosecution as she is entitled to absolute immunity for this decision, assuming for the sake of argument she was even involved in making it. See id.

Vann also asserts that Doorley is liable as Harrigan's supervisor. It is beyond debate that the doctrine of respondeat superior is not a basis for imposing liability under § 1983. Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691 (1978). Because vicarious liability is inapplicable in § 1983 actions, Vann must plead that Doorley, through her "own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. To that end, Vann alleges that Doorley "[h]as failed to properly supervise, train, instruct, and discipline prosecutors" who, among other things, "fabricate evidence ... and then knowingly make use of said fabricated evidence in the grand jury, at trial and in other court proceedings[.]" Am. Compl. ¶ 467. However, all of the topics as to which Vann claims Doorley provided substandard supervision and training are subject to absolute prosecutorial immunity. See Van De Kamp v. Goldstein, 555 U.S. 355, 344-46 (2009).

In Van De Kamp, the respondent claimed that the district attorney and his chief assistant violated their constitutional obligation to provide his attorney with impeachment-related information because they failed to adequately train and supervise deputy district attorneys on that subject and failed to create any system for the deputies handling criminal cases to access information pertaining to the benefits provided to jailhouse informants and other impeachment information. 555 U.S. at 343–44 (quotation to record omitted). The Supreme Court agreed that such claims attacked the district attorney's office's administrative procedures and assumed, for

argument's sake, that the Fifth Amendment imposes certain obligations on district attorney's as to training, supervision, or information-system management. Id. at 344.

Even so, the Supreme Court concluded, "absolute immunity must follow" because the claims "focus[ed] upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial." 555 U.S. at 344. The fact that general methods of supervision and training were challenged in Van de Kamp versus the actions of a particular prosecutor was not "critical" because "[t]hat difference does not preclude an intimate connection between prosecutorial activity and the trial process." Id. at 362. As the management tasks at issue in Van de Kamp "concern[ed] how and when to make impeachment information available at a trial[,]" they were "thereby directly connected with the prosecutor's basic trial advocacy duties." Id. at 363. Given Imbler's function-based approach, "every consideration ... militate[d] in favor of immunity." Id.

**\*7** As in Van De Kamp, the administrative obligation which Doorley is accused of neglecting is "a kind that itself is directly connected with the conduct of a trial." 555 U.S. at 344. That is, the subjects on which Doorley allegedly failed to provide sufficient training, supervision, and discipline to her trial assistants, including Harrigan, "are directly connected with the prosecutor's basic trial advocacy duties." Id. Indeed, this conclusion follows from the Court's analysis of Harrigan's conduct, supra. Because Doorley has established entitlement to absolute immunity with regard to the claims alleging the failure to train, supervise, and discipline, she is dismissed as a defendant. See id. at 349.

### D. The Monell Claim Against the County Fails as a Matter of Law

In Monell, the Supreme Court held that municipalities and other bodies of local government are "persons" within the meaning of § 1983 and, as such, they may be sued directly if they are alleged to have caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. In addition, § 1983 authorizes a plaintiff to sue "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the [municipality]'s official decisionmaking channels." Id. at 690–91.

The County Defendants assert that prosecutors are state actors when performing prosecutorial functions, and therefore

Case 5:20-cv-01489-DNH-TWD   Document 31   Filed 04/21/22   Page 164 of 170
Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)
2019 WL 2646616

Doorley and Harrigan's actions or omissions do not represent any official policy of the County. It is true that "State law determines whether a particular official has the requisite policymaking authority that can render a governmental unit liable for unconstitutional actions taken in pursuance of that policy[.]" Baez v. Hennessy, 853 F.2d 73, 76 (2d Cir. 1988) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 124-25 (1988)). And, in New York State, it is well settled that a district attorney prosecuting a criminal matter acts in a quasi-judicial capacity and "represents the State and not the County." Baez, 853 F.2d at 77 (citing McGinley v. Hynes, 51 N.Y.2d 116, 123 (1980) (stating that "the public prosecutor has the obligation of representing the State in its efforts to bring individuals accused of crimes to justice"); other citations omitted).

In a decision issued after the County's motion was fully briefed, Bellamy v. City of New York, 914 F.3d 727 (2d Cir. 2019), the Second Circuit altered the legal landscape again and further restricted the holding in Baez, characterizing that case as representing a "narrow exception." Id. at 759. The Court need not delve into this thorny area of law because the motion may be resolved on an alternative basis. Even assuming that Monell liability potentially could attach to the County based on Doorley's failure to train prosecutors in the MCDA, Plaintiff has not plausibly alleged a municipal policy or custom.

The Supreme Court has emphasized that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–23 (1985) (plurality opn.) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell[.]")). To satisfy § 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " Id. (quotation omitted; brackets in original). To fulfill the "stringent standard[,]" id. at 61 (quotation omitted), of demonstrate deliberate indifference in the context of a failure-to-train claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' ...." Id. at 62 (quotation omitted).

*8 In an attempt to show a "policy" or "custom" of deliberate indifference to citizens' constitutional rights, Vann cites cases involving reversals of convictions by the Appellate Division,

Fourth Department based on prosecutorial misconduct during trial, e.g., improper remarks on summation. See Am. Compl. ¶ 458 (collecting cases). None of the cases dealt with the constitutional violations alleged in this case, i.e., fabrication of evidence and the presentation of false testimony. Only one of the cases dealt with a Brady violation. In other words, these cases do not suffice to show "a pattern of similar constitutional violations[.]" Connick, 563 U.S. at 62-63 (respondent alleged that during the 10 years preceding his armed robbery trial, Louisiana courts had overturned four convictions because of Brady violations by prosecutors in the district attorney's; Supreme Court found that those "four reversals could not have put Connick on notice that the office's Brady training was inadequate with respect to the sort of Brady violation at issue here" because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind"). Because the violations that occurred in the intermediate appellate cases cited by Vann are "not similar to the violation at issue here, they could not have put [Doorley] on notice that specific training was necessary to avoid this constitutional violation." Id. at 63. Therefore, Vann has failed to allege a plausible Monell claim based on a policy or custom.

While Canton v. Harris, 489 U.S. 378 (1989), "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference[,]" 563 U.S. at 64 (quotation omitted), the Supreme Court in Connick stated that "[f]ailure to train prosecutors in their Brady obligations does not fall within the narrow range of Canton's hypothesized single-incident liability." Id. "In light of th[e] regime of legal training and professional responsibility" to which lawyers are subject, the Supreme Court explained, "the unconstitutional consequences of failing to train" district attorneys on Brady was not "so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 66-67. Accordingly, Vann may not avail himself of the "single-incident" theory of Monell liability.

**E. Summary of the Remaining Claims in the Amended Complaint**

The Amended Complaint originally asserted fifteen causes of action. Following the Court's Decision on the City's Motion to Dismiss, these claims against the City Defendants remain pending: first claim (warrantless arrest without probable cause against Kester, Drake, and Mitchell); second claim (malicious prosecution under § 1983 against Kester, Drake, Mitchell, Kephart, Mintz, Angelo, Zimmerman, and

Vann v. City of Rochester, Not Reported in Fed. Supp. (2019)

2019 WL 2646616

LaFave); third claim (malicious prosecution under New York State law against Kester, Drake, Mitchell, Kephart, Mintz, Angelo, Zimmerman, and LaFave); fourth claim (denial of the right to a fair trial against Kester, Drake, Mitchell, Kephart, Mintz, Angelo, Barber, Zimmerman, and LaFave); fifth claim (excessive force against Kester, Mitchell, Drake, Kephart, Dempsey, and Brodsky); sixth claim (failure to intervene against Drake, Mintz, Barber, Dempsey, LaFave, and Angelo); eighth claim (supervisory liability against Zimmerman, Angelo, LaFave, Moxley, and Laiosa); tenth claim (deliberate indifference to serious medical needs against the City and RPD defendants); eleventh claim (municipal liability against the City for failure to discipline officers who use excessive force); and twelfth claim (municipal liability against the City for failure to discipline officers who fabricate evidence and commit perjury). The City Defendants have filed an Answer to the Amended Complaint.

**\*9** Following the instant Decision on the County's Motion to Dismiss, no claims against the County Defendants remain pending. The fourteenth claim (denial of the right to a fair trial against Harrigan); and fifteenth claim (municipal liability against the County based on Doorley's failure to train, supervise, or discipline prosecutors for violating defendants' constitutional rights) are dismissed for failure to state claim. Harrigan and Doorley are dismissed as defendants.

**V. Conclusion**

For the foregoing reasons, the County Defendants' Motion to Dismiss is granted in its entirety; Michael Harrigan and Sandra Doorley are dismissed as defendants; and the Clerk of Court is directed to enter judgment in their favor.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2646616

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2511734
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gregory DAVIS, Plaintiff,
v.
CITY OF NEW YORK, New York City
Police Department, Police Officer George
Lopez Police Officer "John Doe", Defendants.

No. 07 Civ. 1395(RPP).
|
June 19, 2008.

**Attorneys and Law Firms**

Mark Lubelsky & Associates, Attn: Mark L. Lubelsky, New York, NY, for Plaintiff.

Office of the Corporation Counsel, New York City Law Dep't, Attn: Sabrina Melissa Tann, New York, NY, for Defendants.

**OPINION AND ORDER**

ROBERT P. PATTERSON, JR., District Judge.

**\*1** Plaintiff Gregory Davis filed a complaint against Defendants City of New York, New York City Police Department ("NYPD"), Police Officer George Lopez and Police Officer "John Doe" alleging a cause of action under 42 U.S.C. § 1983. Defendants City of New York and NYPD move to dismiss the complaint in its entirety pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion for summary judgment (Doc. No. 12) is granted.

BACKGROUND
On February 26, 2007, Plaintiff initiated this action by filing the complaint with the Court. (Defs.' Rule 56.1 Stmt. ¶ 4; Pl.'s Rule 56.1 Stmt. ¶ 4.) The complaint alleges that on or about March 16, 2004, Police Officers George Lopez and "John Doe" used excessive force while arresting Plaintiff near the intersection of Broadway and 136th Street for minor drug possession, caused him physical injury, and subsequently denied him medical treatment in violation of Plaintiff's constitutional rights. (Compl. ¶¶ 15-34; Defs.' Rule

56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Stmt. ¶ 2.) The complaint also alleges that the City of New York failed to properly train and supervise its officers, resulting in the deprivation of Plaintiff's constitutional rights. (Compl. ¶¶ 65-66; Defs.' Rule 56.1 Stmt. ¶ 3; Pl.'s Rule 56.1 Stmt. ¶ 3.

By letter dated April 25, 2007 and copied to Plaintiff's counsel, Sabrina Tann, Esq., counsel for Defendant City of New York, requested an adjournment of the initial pretrial conference scheduled for the following day on the grounds that "none of the named defendants in this action have been served with a copy of the summons and complaint." (Tann Decl., Ex. C; Defs.' Rule 56.1 Stmt. ¶ 6.) On May 10, 2007, Plaintiff served Corporation Counsel of the City of New York, located at 100 Church Street, New York, New York 10007, with two copies of the summons and complaint. (Tann Decl. ¶ 7; Defs.' Rule 56.1 Stmt. ¶ 7; Pl.'s Rule 56.1 Stmt. ¶ 7.) Each of the two summons, dated February 26, 2007, were addressed to "Police Officer George Lopez," "Police Officer John Doe," "City of New York," and "The New York City Police Department" at "100 Church Street, Fourth Floor, New York, New York 10026." [1] (Tann Decl., Ex. D; id. ¶ 8; Defs.' Rule 56.1 Stmt ¶ 8; Pl.'s Rule 56.1 Stmt. f 8.) Plaintiff never filed any affidavits of service of the summons and complaint with the Court. (Tann Decl. ¶ 11; Defs.' Rule 56.1 Stmt. ¶ 10; Pl.'s Rule 56.1 Stmt. ¶ 10.)

[1]    Plaintiff acknowledges that the zip code was written as "10026" in error and that the correct zip code is 10007. (Tann Decl. at 2 n. 1.)

On June 12, 2007, Defendants City of New York and NYPD filed their answer to the complaint. (Tann Decl. ¶ 12; Defs.' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.) In their answer, Defendants City of New York and NYPD stated "[u]pon information and belief, the individual identified in the caption of the complaint as George Lopez, has not been served with a copy of the Summons and Complaint or requested representation from the office of Corporation Counsel." (Tann Decl., Ex. E; Defs.' Rule 56.1 Stmt. ¶ 12; Pl.'s Rule 56.1 Stmt. ¶ 12.)

**\*2** On September 11, 2007, at an initial conference with both counsel present before the Court, Defendants' counsel stated that service of process had not been effected on the named defendant George Lopez. (Tann Decl. ¶ 13; Defs.' Rule 56.1 Stmt. ¶ 13.) At that conference, the Court set a briefing schedule for Defendants' proposed motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure

Case 5:20-cv-01489-DNH-TWD    Document 31    Filed 04/21/22    Page 167 of 170

12(c). (Tann Decl. ¶ 15; Defs.' Rule 56.1 Stmt. ¶ 15; Pls.'
Rule 56.1 Stmt. ¶ 15.) By letter dated September 26, 2007,
Defendants withdrew their request to submit the motion to
dismiss, and by order dated September 26, 2007, the Court
directed the parties to complete discovery by January 1, 2008
and submit a proposed Pre-Trial order by January 18, 2008.
(Tann Decl., Ex. F; Defs.' Rule 56.1 Stmt. ¶¶ 16-17; Pl's Rule
56.1 Stmt. ¶¶ 16-17.)

Following the Court's September 27, 2007 Order, Plaintiff
failed to seek leave from the Court for a further period in
which to serve Defendant George Lopez with process. (Tann
Decl. ¶ 18; Defs.' Rule 56.1 Stmt. ¶ 18.) Ms. Tann, counsel for
Defendants City of New York and NYPD, has not contacted
Mr. Lopez with respect to the claims asserted against him
in the complaint, nor has Mr. Lopez contacted the office of
Corporation Counsel to request legal representation in this
matter. (Tann Decl. ¶ 19; Defs.' Rule 56.1 Stmt. ¶ 19.) Upon
information and belief of Defendants, to date, George Lopez
has had no notice of this action. (Tann Decl. ¶ 20; Defs.' Rule
56.1 Stmt. ¶ 20.)

On November 19, 2007, Plaintiff served the City of New
York with a first demand for production of documents and
first set of interrogatories. (Pl.s' Affirmation, Ex. C.) On
December 12, 2007, Plaintiff's counsel sought a two-month
stay of discovery on the grounds that counsel, despite ardent
efforts, was unable to contact Plaintiff to assist him with
the prosecution of this matter. (Tann Decl., Ex. G; Defs.'
Rule 56.1 Stmt. ¶ 23; Pl's Rule 56.1 Stmt. ¶ 23.) By letter
dated December 18, 2007, Defendants opposed Plaintiff's
application for a stay and sought leave to file a motion
pursuant to Federal Rule of Civil Procedure 56. (Tann Decl.,
Ex. H; Defs.' Rule 56.1 Stmt. ¶ 24; Pl.'s Rule 56.1 Stmt. ¶
24.) By order dated December 20, 2007, the Court granted
Plaintiff's application in part and stayed discovery until
February 12, 2008. (Pl.s' Affirmation, Ex. B; Pl.s' Rule 56.1
Stmt. ¶ 25.)

Defendants City of New York and NYPD filed the instant
motion for summary judgment on January 18, 2008. At the
time the motion was filed, Plaintiff had not sought to depose
any witnesses in this matter or identified "Police Officer John
Doe." (Tann Decl. ¶¶ 21, 22; Defs.' Rule 56.1 Stmt. ¶ 21, 22;
Pl.s' Rule 56.1 Stmt. ¶ 21, 22.) Nor had Defendants responded
to Plaintiffs' document demands and interrogatories. (Pl.s'
Rule 56.1 Stmt. ¶ 21 .)

Defendants City of New York and NYPD move for summary
judgment on the grounds that the NYPD is not a suable
entity and that the complaint fails to state a claim against the
City of New York for failure to properly train and supervise
the defendant officers. Defendants also argue that the claims
against Officers Lopez and "John Doe" should be dismissed
pursuant to Federal Rule of Civil Procedure 4(m) because
Plaintiff failed properly to serve Officer Lopez within 120
days of filing this action despite having notice that his service
was defective and also failed to apply for an order extending
the 120-day period.

## DISCUSSION

### I. Summary Judgment Standard

**\*3**  A court may grant summary judgment only where
the "pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c). When considering a motion for summary
judgment, the court must view the facts in the light most
favorable to the nonmoving party and draw all reasonable
inferences in its favor. *Anderson v. Liberty Lobby,* 477 U.S.
242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Braham v.
Clancy,* 425 F.3d 177, 181 (2d Cir.2005). Summary judgment
is inappropriate if, after resolving all ambiguities and drawing
all inferences against the moving party, there remains a
dispute about a material fact "such that a reasonable jury could
return a verdict for the nonmoving party." *Anderson,* 477 U.S.
at 248.

### II. Plaintiff's Claim against Police Officers George Lopez and "John Doe"

Defendants move for summary judgment in favor of the
individual police officers against whom Plaintiff alleges §
1983 violations on the grounds that they were never served
with the summons and complaint. Defendants argue that the
claim against the defendant officers should be dismissed
with prejudice because Plaintiff cannot show good cause for
his failure to timely serve, the statute of limitations ran on
Plaintiff's claim on March 16, 2007, and Officer Lopez would
be prejudiced by an extension for service at this time.

### A. Whether service was effected on the defendant officers

2008 WL 2511734

Federal Rule of Civil Procedure 4(e)(1) provides that service of process is effected on an individual in one of three ways: (1) pursuant to the law of the state in which the district court is located, or in which the service is effected; (2) by delivering a copy of the summons and complaint to the individual personally, or by leaving copies at the individual's "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein"; or (3) by delivering a copy of the summons and complaint to an agent authorized by law to receive service of process. Under New York law, service can be made by delivering the summons "to a person of suitable age and discretion at the actual place of business ... and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business." N.Y. C.P.L.R. 308 (McKinney 2007). Under this section, " 'actual place of business' shall include any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." *Id.*

Plaintiff argues that he complied with New York law by serving Police Officers George Lopez and "John Doe" at the office of Corporation Counsel. Under C.P.L.R. § 311, Corporation Counsel is an authorized agent permitted to accept service on behalf of the City of New York. N.Y. C.P.L.R. § 311. Plaintiff contends because the police officers are employees of the City of New York, service on the City is proper. Section 311 of the C.P.L.R., however, pertains to "personal service upon a corporation or governmental subdivision" and does not authorize the City of New York to accept service on behalf of individuals. See *id.* Nor is the office of Corporation Counsel the "actual place of business" for Officer Lopez or the unnamed officer "John Doe," under C.P.L.R. § 308. The police precinct to which they report and where they conduct their business is their actual place of business. Moreover, Plaintiff made no effort to serve the officers personally or at their actual residences. Under these circumstances, service on the City of New York constitutes improper service on the defendant police officers. See *Moultry v. City of Poughkeepsie,* 154 F.Supp.2d 809, 811 (S.D.N.Y.2001) (holding that service on the police officers who allegedly violated plaintiff's civil rights was not proper where the summons and complaint were served on an official in a city office never frequented by the officers, and no effort was made to serve them personally or leave papers at their residences).

**B. Whether an extension for service should be granted**

**\*4** Under Rule 4(m) of the Federal Rules of Civil Procedure, a plaintiff must properly serve the defendants within 120 days of filing of the complaint. Fed.R.Civ.P. 4(m). If a plaintiff fails to timely serve, the district court must either "dismiss the action without prejudice as to that defendant or direct that service is effected within a specified time." *Id.* The district court is required to grant an appropriate extension of time to effect service if the plaintiff shows good cause for failure to serve and has discretion to grant such an extension even in the absence of good cause. *Id.; Zapata v. City of New York,* 502 F.3d 192, 197 (2d Cir.2007) (holding that under Rule 4(m) "district courts have discretion to grant extensions even in the absence of good cause" but are not required to do so). The policy behind Rule 4(m) and the statute of limitations is to promote the "diligent prosecution of civil cases." *Nat'l Union Fire Ins. Co. v. Sun,* No. 93 Civ. 7170, 1994 U.S. Dist. LEXIS 11934, at \*7 (S.D.N.Y. Aug. 18, 1994); *accord Gordon v. Hunt,* 116 F.R.D. 313, 320 (S.D.N.Y.1987) (noting that the policy behind Rule 4(m) and the statute of limitations is "to encourage prompt movement of civil actions in the federal courts").

In this case, Plaintiff cannot show good cause for failure to serve the defendant police officers within the 120-day period. Plaintiff and Plaintiff's counsel were put on notice on June 8, 2007, when Defendants filed their answer, and again on September 11, 2007, at the initial pretrial conference before the Court, that the defendant police officers had not been served. (Tann Decl. ¶¶ 12, 13.) Despite this notice, Plaintiff took no steps to serve Officer Lopez, request an extension of the 120-day period (Tann Decl. ¶ 18), or request assistance in locating the officers. An attorney's inadvertence, neglect, or ignorance of the rules does not constitute good cause for untimely service. *McKibben v. Credit Lyonnais,* No. 98 Civ. 3358, 1999 U.S. Dist. 12310, at \*9 (S.D.N.Y. Aug. 9, 1999) (citing *Klein v. Williams,* 144 F.R.D. 16, 19-20 (E.D.N.Y.1992)). Under the circumstances in this case, Plaintiff fails to establish good cause for untimely service. *See Bogle-Assegai v. Connecticut,* 470 F.3d 498, 508 (2d Cir.2006) (holding that the plaintiff failed to establish good cause where she knew that defendants thought service was improper and made no effort to remedy this defect or ask the court to extend her time to effect service).

Nor is this a case where an extension should be granted in the Court's discretion despite the absence of good cause. In considering whether or not to grant an extension absent a showing of good cause, the Court must weigh the impact a dismissal or extension would have on the parties. *Zapata,*

502 F.3d at 197. Dismissing the complaint without prejudice in this case would have serious consequences for Plaintiff because the statute of limitations would bar him from re-filing. On the other hand, these consequences are attributable in large part to Plaintiff and his counsel's neglect and failure to prosecute. Plaintiff's counsel filed the complaint on February 16, 2007, only three weeks shy of the expiration of the three-year statute of limitations on his § 1983 claims. Even after being notified that the defendant officers had not been served, Plaintiff's counsel failed to make any further attempts to effect service or seek an extension of the 120-day period. Importantly, Plaintiff's counsel did not inform the Court that he had lost contact with Plaintiff until his December 12, 2007 letter requesting a stay of discovery, which the Court had ordered completed by January 1, 2008. In his letter, Plaintiff's counsel stated that he had "recently attempted to contact Mr. Davis on numerous occasions in order to respond to defendant's [discovery] demands" but had been unable to reach him by either phone or mail. (PL's Affirmation, Ex. B.) Although the Court granted counsel's request for a 60-day stay of discovery to "provide plaintiff the needed time to effectuate contact" (id.), counsel has not informed the Court that any contact has been restored. Furthermore, more than four years have passed since the alleged incident took place. Officer Lopez never received notice of this litigation, as he was never served and no depositions were ever taken to make him aware of the case against him. Were Plaintiff granted leave to effect service at this point, Officer Lopez would suffer considerable prejudice in defending against the case, as the facts would have certainly faded from memory. Under these circumstances, the Court declines to exercise its discretion to grant an extension for service under Zapata.

### III. Plaintiff's Claim against the City of New York

**\*5** Plaintiff alleges that the City of New York failed to properly train and supervise the police officers who deprived Plaintiff of his constitutional rights. (Compl.¶¶ 65-66.) Defendants seek to dismiss Plaintiff's claim against the City of New York on the grounds that the complaint fails adequately to state a claim for municipal liability and that, even if the claim is adequately plead, Plaintiff fails to proffer any evidentiary support for the claim.

A municipality may not be held liable under 42 U.S.C. § 1983 for the conduct of its employees based on a theory of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability attaches only if the plaintiff can show that a municipal policy or custom caused the deprivation of his

constitutional rights. Id. at 690-91. Where a plaintiff alleges municipal liability based on a failure to train and supervise, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and therefore amounts to an actionable city "policy or custom." City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court held that district courts may not apply a "heightened pleading standard" beyond what is generally required by Federal Rule of Civil Procedure 8(a) to Section 1983 complaints alleging municipal liability. Id. at 164. Leatherman appears to reject the pleading standard applied by the Second Circuit in Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993), which held that the allegation of a single incident involving only actors below the policymaking level does not suffice to state a claim of municipal liability under Section 1983. See Simpkins v. Bellevue Hosp., 832 F.Supp. 69, 73 n. 3 (S.D.N.Y.1993); see also Cooper v. Metro. Transp. Auth., 2006 U.S. Dist. LEXIS 47970, at \*9-10 (S.D.N.Y. July 13, 2006). Since Leatherman. courts in this district have denied motions to dismiss complaints alleging that an individual officer's conduct conformed to official policy or custom or that an individual officer was empowered to make policy decisions on behalf of the municipality. See, e.g., Cooper, 2006 U.S. Dist. LEXIS 47970, at \*9-10 (holding that "[u]nder the Leatherman rule ... Plaintiff's bare allegations that Harrington was a "policy maker" and that both Harrington and Paul were empowered to make policy decisions on behalf of Metro-North/MTA are sufficient" to withstand a motion to dismiss); Lucas v. New York City, 1995 U.S. Dist. LEXIS 17017, at \*7, 1995 WL 675477 (S.D.N.Y. Nov. 14, 1995) (denying the motion to dismiss plaintiff's § 1983 claim under Leatherman to the extent plaintiff alleges he was arrested pursuant to the long established policy of racially selective law enforcement attributable to the City). Plaintiff, represented by counsel in this case, fails adequately to plead a claim of municipal liability against the City of New York. Even the usual pleading standard of Rule 8(a) still requires more than conclusory allegations. Bell Atlantic v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (stating that Rule 8(a) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); see also Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (stating that on a motion

to dismiss, a district court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Plaintiff makes only the conclusory allegation that the City of New York "failed to properly train the person(s) who deprived [Plaintiff] of his civil rights" and "failed to properly supervise the person(s) who deprived [Plaintiff] of his civil rights ."

**\*6** Such conclusory allegations that a municipality failed to train and supervise its employees is insufficient to state a *Monell* claim. *See McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 705 (S.D.N.Y.1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation."); *Oparaji v. City of New York,* 1997 U.S. Dist. LEXIS 23686, \*10, 1997 WL 139160 (E.D.N.Y. Mar. 21, 1997) (dismissing a *Monell* claim for failure to state a claim where plaintiff alleged only that the City had a policy, practice or custom of failing to adequately screen, hire and train police officers which resulted in the violation of his constitutional rights).

Plaintiff argues that summary judgment is inappropriate at this stage because no discovery has taken place. The Court granted Plaintiff's request for a stay of discovery from December 20, 2007 to February 12, 2008, and prior to the stay, Defendants had not responded to Plaintiff's document demands and interrogatories served on November 19, 2007.

Generally, before summary judgment may be granted, the nonmoving party "must have had the opportunity to discover information that is essential to his opposition to the motion ... [and] only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veteran Affairs,* 201 F.3d 94, 97 (2d Cir.2000) (internal quotations omitted). If, however, the allegations of a plaintiff's Section 1983 claim are insufficient as a matter of law or could not be aided by discovery, a district court may grant summary judgment even without discovery. *M.B. v. Reish,* 119 F.3d 230, 232 (2d Cir.1997) (concluding that the district court's denial of discovery was within its discretion because plaintiff's claims were insufficient as a matter of law and plaintiff failed to present a credible basis to suggest discovery would produce favorable evidence). In rejecting the heightened pleading

standard for Section 1983 claims in *Leatherman,* the Supreme Court noted that "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman,* 507 U.S. at 168-169.

In this case, Plaintiff has not made any showing that further discovery is likely to lead to evidence supporting Plaintiff's claim against the City of New York. Moreover, because Plaintiff's complaint fails to state a claim of municipal liability upon which relief may be granted, Plaintiff's claim against the City of New York is insufficient as matter of law. On these grounds, Defendant City of New York's motion for summary judgment is granted.

### IV. Plaintiff's Claim against NYPD

It is well settled that NYPD, as an agency of the City of New York, lacks independent legal existence and is therefore not a suable entity. *Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007); *see also* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). In his memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiff concedes that NYPD is a non-suable entity and discontinues his claim against NYPD. Accordingly, the claim against NYPD is dismissed.

### CONCLUSION

**\*7** For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 12) is granted. The claims against Defendant Police Officers George Lopez and "John Doe" are dismissed for non-service, the claims against Defendant City of New York for failure to state a claim and insufficiency as a matter of law, and the claims against NYPD because it is not a suable entity.**

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2008 WL 2511734

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.